**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**LIMETREE BAY TERMINALS, LLC,**<br>**WEST INDIES PETROLEUM LIMITED,**<br>**PORT HAMILTON REFINING &**<br>**TRANSPORTATION, LLLP,**<br>**TRANSITION REFINERY ENTITY, LLC,**<br><br>　　　　　　　　　　**Defendants.**<br>_____ | 1:21-cv-00264-WAL-EAH |

**TO:**　　**Myles E. Flint, Esq.**
　　　　　　*For the United States*
　　　　**Carl A. Beckstedt, III, Esq.**
　　　　　　*For Limetree Bay Terminals*
　　　　**Andrew C. Simpson, Esq.**
　　　　　　*For W. Indies Petroleum and*
　　　　　　*Port Hamilton Refining & Transportation*

**ORDER**

**THIS MATTER** comes before the Court on a Motion to Reconsider, filed by Defendants West Indies Petroleum Limited ("WIPL") and Port Hamilton Refining & Transportation, LLLP ("PHRT"). Dkt. No. 26. Defendant Limetree Bay Terminals and Plaintiff United States have opposed the motion, Dkt. Nos. 30 and 32, respectively. WIPL and PHRT have filed separate replies. Dkt. Nos. 33, 37. For the reasons that follow, the motion will be denied.

**BACKGROUND**

In July 2021, the United States filed the Complaint in this action against Limetree Bay Refining, LLC ("LBR") and Limetree Bay Terminals, LLC ("Terminals"), at the request of the

Administrator of the U.S. Environmental Protection Agency ("EPA"). Dkt. No. 1. The United States brought the action due to emissions of hydrogen sulfide, sulfur dioxide, and other air pollutants, in addition to the risk of a catastrophic failure of emissions control systems at the Refinery located at Limetree Bay that posed an imminent and substantial danger to public health and the environment. *Id.* at 1-2. While the Refinery was not operating at that time, it could not be restarted or operated safely without LBR and Terminals complying with environmental and safety audit and compliance plan requirements set forth in a May 2021 EPA administrative order under the Clean Air Act that would remain in force only if aided by an order of the district court. *Id.* at 2. The United States filed the instant action seeking injunctive relief under Section 303 of the Clean Air Act to require compliance with the May 2021 Order, restrain LBR and Terminals from emitting various pollutants, and require them to take additional necessary steps to cease the endangerment to public heath or the environment. *Id.* at 3.

Simultaneously with the filing of the Complaint, the United States filed a Joint Stipulation with LBR and Terminals ensuring that those Defendants would meet the requirements of the May 2021 Order and notify the United States if they intended to restart the Refinery. Dkt. No. 2. Also on the day it filed the Complaint, the United States filed an Unopposed Motion to Stay All Deadlines, given the then-Defendants' changed circumstances—the Refinery was idle and the Defendants did not intend to restart it except to bring it to a state of indefinite shutdown. Dkt. No. 3. The Court granted the motion. Dkt.

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 3

No. 4. Subsequently, the United States moved multiple times to extend the stay, which the Court granted. Dkt. Nos. 7, 10, 12, 17. In August 2022, the United States filed another Joint Motion to Stay All Deadlines and Proceedings until December 1, 2022, except that it noted that it expected to file a motion under Federal Rule of Civil Procedure 25. Dkt. No. 20. The Court granted the extension motion. Dkt. No. 21.

On November 15, 2022, the United States filed a Motion to Substitute Party pursuant to Fed. R. Civ. P. 25(c), seeking to substitute WIPL, PHRT, and the Transition Refinery Entity, LLC ("TRE") for Defendant LBR. Dkt. No. 23. In the accompanying memorandum in support of its motion, Dkt. No. 23-1, the declaration of Attorney Myles E. Flint, II, Dkt. No. 23-2, and attached exhibits, the United States showed that WIPL and PHRT purchased all or substantially all of LBR's assets following LBR's filing for Chapter 11 bankruptcy relief in late 2021-early 2022, and that the TRE became the reorganized Limetree Bay Refining, LLC in mid-2022. *See* Dkt. No. 23-1 at 2-9.

In describing the background of the sale of LBR's assets in Bankruptcy Court, the motion described a requirement in the sale order that WIPL and PHRT "must become a party to . . . the Joint Stipulation." Dkt. No. 24 at 6. The United States argued, inter alia, that WIPL's and PHRT's acquisition of LBR's assets and the sale order's requirement that WIPL and PHRT become parties to the Joint Stipulation satisfied the transfer of interest requirement of Rule 25(c) and, in order to become parties to the Joint Stipulation, they had to become parties to the case. In addition, the Plan Order required the TRE to be bound by the joint stipulation

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 4

and cooperate in its substitution in this case. Since WIPL and PHRT were in possession and control of the Refinery; the TRE had an alleged interest in permits relating to the Refinery operation; and WIPL expressed its intent to restart the Refinery, substitution was essential to the conduct of the case. *Id*. at 11-12. It argued in the alternative that the three entities could be joined as parties if the Court was not convinced that substitution would best facilitate the conduct of the litigation. *Id*. at 13.

The Notice of Motion provided, inter alia, that the United States served its motion on the resident agent for PHRT on November 15, 2022, pursuant to Fed. R. Civ. P. 25(c) and (a)(3), and would serve its known counsel by electronic mail, and personally served WIPL on November 3, 2022, in accordance with Fed. R. Civ. P. 25(c) and 4(f)(2). Dkt. No. 23 at 4-7.

On November 17, 2022, the Court granted the Motion to Substitute. Dkt. No. 25. It held that WIPL's and PHRT's acquisition of Defendant Limetree Bay Refining's assets, the sale order's requirement that these entities become parties to the Joint Stipulation (which in turn led to the conclusion that they become parties to this case), and WIPL's and PHRT's exercising their option in the bankruptcy sale documents to reorganize Limetree Bay Refining as TRE, with the requirement that TRE also be fully bound by the Joint Stipulation and cooperate in its substitution as a defendant in this case, satisfied the transfer of interest requirement in Fed. R. Civ. P. 25(c). *Id.* at 3. In addition, substituting these entities as

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 5

Defendants would "facilitate the conduct of this case." *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993). [1]

WIPL and PHRT filed a Motion for Reconsideration to correct clear error or prevent manifest injustice, arguing that: (1) the Court overlooked all non-assumption of liability language in the bankruptcy sale order which "required joinder to the Joint Stipulation but with a carve-out for non-liability for any obligation other than air monitoring obligations, under the Joint Stipulation. . ." and therefore joinder was appropriate rather than substitution; (2) in the alternative, they should be provided with an opportunity to be heard (a briefing schedule and hearing) on the inapplicability of Rule 25(c) concerning whether they were transferees of interest to trigger substitution under the Rule; and (3) the United States did not comply with its service obligation under the Rule, which violated WIPL's and PHRT's due process rights. Dkt. No. 27.

In its Response, Limetree Bay Terminals d/b/a/ Ocean Point Terminals asserted that WIPL and PHRT had not met their burden for reconsideration and had not demonstrated the need for further briefing. Dkt. No. 30. It contended that: (1) the reconsideration motion was premised on the position that the Court should make WIPL and PHRT partial, but not full, parties to the action based on alleged limitations on liability—confusing substantive liability with procedural issues—as the non-assumption of liability language was irrelevant to

---

[1] The Court observes that, for reasons unexplained in the documents, WIPL and PHRT have not become parties to the Joint Stipulation, as agreed in the December 2021 sale order.

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 6

substitution; (2) WIPL and PHRT were transferees of interest in the Refinery (noting that a transfer of interest includes a transfer of real property), they did not seriously dispute that they acquired the Refinery or that they were required to become parties to this action under the Joint Stipulation, and they were properly substituted and did not meet the burden for reconsideration[2]; (3) their request for joinder was meritless given that any dispute over limitations of liability was irrelevant to substitution versus joinder; and (4) they were given proper notice under Rule 25 and their argument that they should have had more time to respond to the motion had no bearing on whether substitution was proper. *Id.*

In its Opposition, the United States pointed out that WIPL and PHRT conceded the relief sought by the motion (that they must be parties in order to be bound by the Joint Stipulation); as owners and operators of the property, they were subject to the same compliance obligations as any other owner of property; the scope of successor liability was not at issue or decided by the substitution order, and thus the Order did not raise any clear error or manifest injustice; and WIPL and PHRT were properly served as non-parties under Rules 4 and 25. Dkt. No. 32.

In their Reply to Terminals, WIPL and PHRT contend that reconsideration was warranted because substitution under Rule 25 was dependent on an "interest" being transferred and "dispositive" factual matters in the bankruptcy documents were not

---

[2] Terminals's Response outlines the obligations that the Joint Stipulation places on the Refinery's operations, contending that they could only be fulfilled by a *party* with ownership and control over the Refinery. Dkt. No. 30 at 4-5.

considered by the Court to determine the "scope" of the alleged transfer of interest, and they were not permitted an opportunity to respond to the United States's motion. Dkt. No. 33 at 2. They claim that where there is "uncertainty" regarding the nature and extent of the alleged transfers of interest, joinder is proper. *Id.* at 3-4. They further argue, for the first time, that had the United States conferred with them concerning the logistics of PHRT joining the Joint Stipulation prior to filing its motion, WIPL and PHRT would have discussed the possibility of intervening "for the limited purpose of becoming parties to the Joint Stipulation." *Id.* at 33.

In their Reply to the United States, WIPL and PHRT assert that a significant question exists as to which entity/entities were successors: TRE was recognized as the successor to LBR in bankruptcy court, but substitution of WIPL and PHRT was improper because there was uncertainty regarding the nature and extent of the alleged transfers of interest. Dkt. No. 37 at 3. They argue that they were only required to become party to the Joint Stipulation, not to become defendants in this action. *Id*. They repeat the intervention argument raised in their Reply to Terminals, and also assert that they should have been served with a summons and complaint, in addition to the substitution motion, and thus service was improper. *Id*. at 4-5.

## DISCUSSION

I. **Motions for Reconsideration**

Pursuant to Local Rule of Civil Procedure 7.3, a motion for reconsideration "shall be based on: (1) an intervening change in controlling law; (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." LRCi 7.3(a). Motions for

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 8

reconsideration "are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *United States v. Matthias*, No. 3:19-cr-0069, 2022 WL 2157111, at *3 (D.V.I. June 15, 2022). With regard to the correcting clear error or preventing manifest injustice prong,

> clear error exists if, "'after reviewing the evidence,' [the reviewing court is] 'left with a definite and firm conviction that a mistake has been committed.'" *Norristown Area Sch. Dist. v. F.C.*, 636 F. App'x 857, 861 n.8 (3d Cir. 2016) (quoting *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1220 (3d Cir. 1993)). In the context of a motion to reconsider, manifest injustice "[g]enerally [ ] means that the Court overlooked some dispositive factual or legal matter that was presented to it." *Greene v. Virgin Islands Water & Power Auth.*, 2012 WL 4755061, at *2 (D.V.I. Oct. 5, 2012) (quoting *In re Rose*, 2007 U.S. Dist. LEXIS 64622, at *3, 2007 WL 2533894 (D.N.J. Aug. 30, 2007)). "Manifest injustice has also been defined as an 'error in the trial court that is direct, obvious, and observable.'" *Id.* (quoting *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004)).
>
> Reconsideration is an extraordinary remedy and "should be granted sparingly" in accordance with its "stringent" standard. *Chesapeake Appalachia, L.L.C. v. Scout Petroleum, LLC*, 73 F. Supp. 3d 488, 491 (M.D. Pa. 2014), *aff'd sub nom. Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746 (3d Cir. 2016) (citation omitted); *see Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733 (D.V.I. 2004).

*Simon v. Mullgrav*, No. CV 2017-0007, 2021 WL 4005585, at *3 (D.V.I. Sept. 1, 2021).

## II.     Analysis

WIPL's and PHRT's primary argument for reconsideration is that, because this Court "likely overlooked" and "failed to note" the limitations on liability set forth in the Bankruptcy Court documents concerning their purchase of LBR's assets, their "blanket substitution" for LBR is clear error resulting in manifest injustice. Dkt. No. 27 at 6. In other words, because

their liability is limited, they should not have been substituted but should have been joined, "limited to their becoming parties to the Joint Stipulation[.]" *Id*. at 8.

This liability argument is merits-based. The extent of WIPL's and PHRT's liability, based on the various provisions in the Bankruptcy Court documents limiting their liability as purchasers of LBR's assets, was not at issue in the substitution motion. As both the United States and Terminals point out, the substitution order did not make (and could not have made) any dispositive finding concerning WIPL's/PHRT's liability. Substitution under Rule 25(c) "ordinarily does not alter the substantive rights of the parties but is merely a *procedural* device designed to facilitate the conduct of a case," *Luxliner*, 13 F.3d at 71-72 (emphasis added); *see also Rodriguez-Miranda v. Benin*, 829 F.3d 29, 40 (1st Cir. 2016) ("In other words, the rule serves as a procedural mechanism to bring a successor in interest into court when it has come to own the property in issue.") (internal quotation marks omitted); *In re Bernal*, 207 F.3d 595, 598 (9th Cir. 2000) ("'Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.'") (quoting *In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981)). As a result, the fact that the Court did not consider the substantive issue of the quantum of interest transferred when granting the motion to substitute cannot constitute clear error or manifest injustice in the context of exercising its discretion to substitute parties. In addition, WIPL and PHRT provide no support for their position that the Federal Rules allow some kind of *partial* substitution, based on the alleged

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 10

amount of interest transferred. *Cf. Rodriguez-Miranda*, 829 F.3d at 42 ("[A]ppellants cite no cases, in this circuit or otherwise, that expressly limit Rule 25(c) joinder to the amount of the transferred assets.").

What this Court found relevant to the substitution motion, which WIPL and PHRT acknowledge (as they must), is that in purchasing LBR's assets, they were required to become parties to the Joint Stipulation and to be fully bound by it. *See* Dkt. No. 25. It follows that, in order to become parties to and bound by the Joint Stipulation, WIPL and PHRT had to become parties to this case.[3] The Bankruptcy Court documents contain no caveat that premised their becoming parties to the Joint Stipulation on the amount of liability they assumed. And as the United States points out, other provisions in the Bankruptcy Court documents—in particular, Paragraph 10 of the sale order providing that nothing in the sale order releases WIPL and PHRT from any regulatory liability to which they would be subject as the post-sale owner or operator of the refinery property—serve to bind them to the environmental strictures that are at issue in this case. *See* Dkt. No. 32 at 4-5. WIPL and PHRT acknowledge this fact. *See* Dkt. No. 27 at 3 ("[W]hile the Sale Order requires WIPL and PHRT

---

[3] In their reply brief to the United States's opposition, WIPL and PHRT argue, for the first time, that they were required to become parties only to the Joint Stipulation, not to become defendants in this action, and in fact the sale order prohibits them (as purchaser) from being placed in the position of defendant prior to Closing. Dkt. No. 37 at 3. The Court will not consider this argument, raised for the first time in a reply brief. *United States v. Cruz,* 757 F.3d 372, 387–88 (3d Cir. 2014). In any event, they do not explain how they could be parties to the Joint Stipulation without being subject to the jurisdiction of the Court that would enforce the terms of the Joint Stipulation.

to become a party to the Joint Stipulation, it expressly limits that obligation to the air monitoring obligations and *prospectively to the property or units purchased or to be operated.*") (emphasis added). The Court rejects their argument that a mistake has been committed and that it clearly erred by not considering the limitations of liability surrounding their purchase of assets when it decided the substitution motion.

WIPL and PHRT next advance an argument that they should have been joined, not substituted. They note in passing that the United States suggested joinder in the alternative. Dkt. No. 27 at 8. They then cite cases stating that where "questions remain as to the extent of the transfer of an ownership interest . . . the court in its discretion may choose to join a party pursuant to Rule 25(c) rather than substitute one party for another." Dkt. No. 27 at 8 (quoting *Purdue Pharma L.P. v. Amneal Pharms., LLC*, 2018 WL 3725772, at * 3 (D. Del. July 25, 2018) and citing *Mars, Inc. v. JCM Am. Corp.,* Civil No. 05–3165(RBK), 2007 WL 776786, at *2 (D.N.J. Mar. 9, 2007) (where "the record [was] insufficient to determine exactly what rights and obligations were transferred," the court would exercise its discretion to join an entity rather than substitute it)).

Although they assert that the record is "insufficient" to determine whether WIPL and PHRT were transferees of interest, and a more thorough analysis would be required for the Court to determine which entities were transferees, they simply cite case law for these propositions which leads back to their premise that the Court erred by not considering their non-assumption of successor liability. Dkt. No. 27 at 14. They do not explain why the record,

which contains the documents they rely on to make their argument, is insufficient. The Court has rejected the quantum of successor liability argument as a basis for reconsideration, does not view this contention as compelling a different result, and rejects it as a basis for showing clear error or manifest injustice.

WIPL's and PHRT's final argument is not directed to the alleged clear error or manifest injustice of the substitution order, but rather seeks a briefing schedule in order for them to "fully respond" to the United States's substitution motion so as "to be heard regarding the inapplicability of Rule 25(c)." Dkt. No. 27 at 8. However, their 15-page motion for reconsideration and 5 and 6-page replies have clearly set forth their arguments against substitution such that this Court can assess them. The Court has done so, and found them wanting. Consequently, further briefing would not be helpful.

As to their request for an adversarial hearing, which they claim would afford them their due process rights to notice and an opportunity to be heard, the case they cite in support—*Luxliner*, 13 F.3d at 72—is inapposite. In that case, the Third Circuit opined that, "[b]efore a party may be *deprived of a property interest*, due process requires, at a minimum, notice and an opportunity to be heard." *Id*. (emphasis added). But there, a judgment had already been entered before the party was substituted, and that party had no opportunity to develop relevant facts (which were disputed) before being held liable for the original party's actions—warranting a hearing on whether the substitution motion should have been

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 13

granted. *Id.* at 72-73. Here, no liability has been determined, there is no "property interest" at issue, there are no factual issues in dispute[4], and thus a hearing is not necessary.

WIPL and PHRT offer another due process argument—that Rule 25 requires service on them in accordance with Rule 4—i.e., they should have been served with not only the motion to substitute, but also a copy of the summons and complaint, and a notice of hearing. Dkt. No. 27 at 10-13. They assert that, since Rule 4 deals with summonses, and summonses are necessary for jurisdiction, a court would not have jurisdiction over a party and service is constitutionally infirm if a summons is not served with the motion. And without a notice of hearing, service was "statutorily" infirm under Rule 25(a)(3),[5] because they had no notice as to when they had to respond to the motion. WIPL and PHRT acknowledge that a circuit court and several district courts have held that a summons did not need to be served with a motion to substitute, but insist that their own reading of the rule is correct. *Id.* at 12. The Court rejects that argument.

---

[4] Even if WIPL and PHRT did not have sufficient time to develop affidavits indicating that material facts were in dispute, nowhere in their filings did they hint at what material facts may actually be in dispute. Their motion simply declares that they were not afforded an opportunity to file affidavits to "raise a material issue on the question of substitution," and that "a genuine issue exists" as to whether they are transferees—not that a genuine issue of material fact exists. Dkt. No. 27 at 13.

[5] Rule 25(c) provides that a motion for substitution must be served on the new party in interest "as provided in Rule 25(a)(3)." Fed. R. Civ. P. 25(c). Rule 25(a)(3) provides that "[a] motion to substitute together with a notice of hearing, must be served . . . on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3).

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 14

The only case WIPL and PHRT cite in support is *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), which discussed whether a district court had jurisdiction over the defendants under the Commodities Exchange Act. The case involved service under Rule 4, not under Rule 25. However, in *Benacquisto v. American Express Financial Corp.*, 44 F.4th 741 (8th Cir. 2022), the Eighth Circuit explicitly discussed service under Rules 4 and 25 where the plaintiffs had not served a copy of the summons and complaint but had served a personal representative of an estate in the manner provided in Rule 4. The *Benacquisto* Court held that service of a summons and complaint was not required by Rule 25(a) and not serving those documents with the substitution motion did not cause service to be deficient. *Id.* at 745. District courts addressing this issue have come to the same conclusion. *See Brahm Indus. Inc. v. Wildwood Indus., Inc.*, No. 05-cv-1381, 2008 WL 3286597, at *1 (C.D. Ill. Aug. 7, 2008) ("Fed. R. Civ. P. requires summons to be served with a Complaint, but the present motion is not a Complaint. Rule 25(a)(3) requires service in the manner that a summons is served, not service of a summons itself."); *see also Waypoint Consulting, Inc. v. Krone*, No. 19-cv-2988, 2022 WL 861412, at *10-11 (D. Md. Mar. 22, 2022) (substitution motion "'must be served on persons who are not already parties in the fashion provided in Rule 4 for service of process,'" quoting 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1958 (3d ed. 2021), noting that service of the motion on a corporation may be effected under Rule 4(h), and that the Rules "require service for the purpose of ensuring that an entity to be joined to a suit is afforded the effective notice of the action.");

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 15

*Zest IP Holdings LLC v. Implant Direct Mfg., LLC*, No. 10-cv-541, 2013 WL 12064538, at *3 (S.D. Cal. Jan. 23, 2013). WIPL and PHRT offer no contrary authority.[6]

Moreover, WIPL and PHRT knew about this action, as they agreed to be subject to the Joint Stipulation in the December 2021 sale order. The United States served them with status reports in this case in April and July 2022, Dkt. Nos. 14, 19, which included the fact that the two entities were identified as the purchaser in the asset purchase agreement and sale order, and were required to become parties to the Joint Stipulation. WIPL was served with the substitution motion two weeks before it was filed. With this extensive notice, no due process violation occurred. *See United States v. Harold*, 423 F. Supp. 3d 410, 419 (E.D. Mich. 2019), *aff'd* 847 F. App'x 296 (6th Cir. 2021) (additional corrective measures unnecessary where the substituted party had some notice of the ongoing proceeding).

To the extent that WIPL and PHRT raise an argument that they should have been allowed to intervene, rather than be substituted, this contention is raised for the first time in their reply briefs. Consequently, the Court will not consider it. *See United States v. Cruz,* 757

---

[6] WIPL and PHRT note that while cases hold that service under Rule 25 must be "in the manner of" service under Rule 4, Rule 25(a)(3) does not contain the "in the manner of" language. Dkt. No. 27 at 12. As the district court explained in *Brahm Industries*, the version of Rule 25(a)(1) in effect before December 1, 2007 contained that explicit language. 2008 WL 3286597, at *1. The court went on to state that "[t]he revised version omits that phrase because it is unnecessary-'service as provided in Rule 4' plainly means the manner of service. *Commentary on 2007 Amendment to Rule 25* ("The language of Rule 25 has been amended as part of the general restyling ... to make them more easily understood.... These changes are intended to be stylistic only."). A motion under Rule 25(a)(3) must be served *like* a summons, not *with* a summons." *Id.* The Court agrees with that analysis.

*United States v. Limetree Bay Terminals, LLC*
1:21-cv-00264-WAL-EAH
Order
Page 16

F.3d 372, 387–88 (3d Cir. 2014) ("[B]ecause Cruz raises this argument for the first time in the Reply Brief, we will not consider it. Instead, we will deem it, like the other arguments that were raised for the first time in the Reply Brief, to be waived."); *see also Lett v. Se. Pennsylvania Transportation Auth.*, No. CV 19-3170-KSM, 2020 WL 12702548, at *2 (E.D. Pa. June 11, 2020).

Accordingly, based on the foregoing, it is hereby **ORDERED** that WIPL's and PHRT's Motion to Reconsider, Dkt. No. 26, is **DENIED**.

ENTER:

Dated: January 12, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE