# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>LIMETREE BAY TERMINALS, LLC, WEST INDIES PETROLEUM LIMITED, PORT HAMILTON REFINING AND TRANSPORTATION, LLLP, and the TRANSITION REFINERY ENTITY, INC.<br><br>Defendants. | Civ. A. No. 1:21-cv-00264(WAL/EAH) |

## UNITED STATES' MEMORANDUM IN SUPPORT OF ITS MOTION TO DIRECT DEFENDANTS TO ABIDE BY THE JOINT STIPULATION IN ACCORDANCE WITH THE BANKRUPTCY SALE ORDER

In early 2021, the Limetree Bay Refinery showered oil on nearby neighborhoods and blanketed downwind communities with noxious air pollution, prompting numerous public health advisories and school closures. Ultimately, the Refinery was shutdown in May of 2021 following a large fire that engulfed the top of its only operating flare, and it remains shutdown today.

Without the proper protective measures and controls, further operation of the Refinery poses a threat to public health and welfare. To guard against such reckless operations and further endangerment of the public and the environment, the United States and the Refinery's former owners and operators executed a Joint Stipulation, which was filed with this Court alongside the Complaint. (ECF 2). Among other things, the Joint Stipulation prohibits a restart of the Refinery without notice, inspection, and the equipment retrofits necessary to protect the public.

When the Refinery was later purchased by its current owners—Defendants West Indies Petroleum Limited ("West Indies") and Port Hamilton Refining and Transportation, LLLP ("Port

1

Hamilton")—the Bankruptcy Court approved language that recognized the threat posed by a restart at the Refinery as well. That court's Sale Order included a requirement that the Purchasers "must become a party" to the Joint Stipulation and therefore be subject to its requirements. (Flint Dec. Ex. 1 [Bankr. Doc. 977] ¶ 11).

However, despite persistent efforts by the United States to engage them in the 18 months since the Sale Order was issued, Defendants West Indies and Port Hamilton have yet to perform as required by the Bankruptcy Court's Order. Both Defendants have conceded they are required to do so; neither have done it. Meanwhile, the Defendants have proclaimed their intent to restart Refinery operations. As such, the United States asks that this Court order Defendants West Indies and Port Hamilton to abide by the terms of the Joint Stipulation, thereby ensuring the facility will restart operations only once it has been carefully evaluated and the necessary public health protections have been implemented.

## I. BACKGROUND

### A. The Joint Stipulation Imposed Necessary Public Health And Welfare Protections.

As set forth in the Complaint, between December 2020 and May 2021, the Limetree Bay Refinery suffered a series of accidents, process upsets, malfunctions, or operational errors that led to several serious air pollution events. Hydrogen sulfide ($H_2S$), sulfur dioxide ($SO_2$), or uncombusted oil droplets called "flare rainout" were emitted at levels that had immediate and significant adverse impacts on local residents. These emissions events forced the temporary closure of local schools, businesses, and government offices. Then, on May 12, 2021, a large fire engulfed the top of the only operating flare at the Refinery. (ECF 1). The Refinery has been shutdown ever since.

The United States brought this action against Limetree Bay Refining, LLC ("LBR") and Limetree Bay Terminals, LLC ("Terminals")—then owners and operators of the facility—to address, among other things, the imminent and substantial endangerment posed by the Refinery's operations.

(ECF 1). Concurrent with the Complaint, the United States filed a Joint Stipulation with LBR and Terminals. (ECF 2). The Joint Stipulation does not resolve the United States' causes of action against the Defendants. Rather, the Joint Stipulation specifically addresses the threats posed by restarting the dilapidated facility, and imposes conditions on resuming operations to protect the community from an imminent and substantial threat. Those conditions include:

- Notification to the United States and this Court at least 90 days prior restarting the Refinery, or any Refinery Process Unit, for any purpose (¶ 2);

- Submission of a plan that assesses the condition of the Refinery, sets forth a schedule for implementing corrective measures, and specifically identifies those measures that must be completed prior to the restart of the Refinery or any Refinery Process Unit (¶4);

- Completion of all measures "necessary to eliminate any imminent and substantial endangerment to public health or welfare or the environment posed by the Refinery or Refinery Process Unit" (¶ 6);

- Submission of an ambient air monitoring plan at least 90 days before any restart (¶7), and installation and operation of the monitors at least 30 days before a restart (¶8).

The Refinery has a history of "spew[ing] oil and sulfur dioxide"[1] into the air, and a long string of operational failures that resulted in public health advisories. To guard against the recurrence of such threats, the Joint Stipulation requires the owner and operator of the Refinery to engage both EPA and this Court, and establishes critical prerequisites for restarting the facility.

### B. The Bankruptcy Court's Sale Order Required the Purchasers—Now Defendants— To Become A Party To The Joint Stipulation.

On the same day the United States lodged the Joint Stipulation with this Court, LBR and related entities[2] filed for relief under chapter 11 of title 11 of the United States Code in the United

---

[1] Juliet Eilperin, "St. Croix refinery halts operations after raining oil on local residents once again." WASHINGTON POST (May 13, 2021) [https://www.washingtonpost.com/climate-environment/2021/05/12/limetree-bay-refinery/]. *See also* Complaint (ECF 1) ¶¶ 1-3, 26-29, 40, 44, 50, and 52; 303 Order (ECF 2-1).

[2] Collectively known as "Debtors" in the bankruptcy proceeding, this group did not include Defendant Terminals. Defendant LBR was reorganized as Defendant Transition Refinery Entity, Inc.

3

States Bankruptcy Court for the Southern District of Texas (Case No. 21-32354, jointly administered with Case No. 21-32351). In due course, West Indies and Port Hamilton purchased the Refinery from LBR. (Flint Dec. Ex. 2 [Bankr. Doc. 1112]).

With its Sale Order (Flint Dec. Ex. 1 [Bankr. Doc. 977]), the Bankruptcy Court approved language that sought to ensure this new ownership would not renew risks to public health and welfare posed by unscrupulous operation of the Refinery.[3] To that end, the Sale Order specifically requires West Indies and Port Hamilton—together described as the "Purchaser"[4]—to become party to the Joint Stipulation. Paragraph 11 of the Sale Order provides, in pertinent part:

> 11. Furthermore, notwithstanding anything in this Order or in the APA to the contrary, **the Purchaser must become a party to . . . the Joint Stipulation** in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-002641 (as each may be amended with the mutual consent of the parties); *provided*, that Purchaser shall not become liable for any obligations, other than air monitoring obligations, under [the] Joint Stipulation that do not relate to property or units purchased or to be operated by Purchaser pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation. Nothing in this Order or the Sale Agreement (a) prevents the U.S. Environmental Protection Agency or other agency from issuing any order or taking other action under applicable nonbankruptcy law, or (b) modifies . . . the Joint Stipulation, or any other applicable environmental, health and safety, or police and regulatory law.

(Emphases added). The Bankruptcy Court entered the Sale Order on December 21, 2021, and the sale was finalized on January 21, 2022 (Flint Dec. Ex. 2 [Bankr. Doc. 1112]). Thus, while West

---

("TRE"). Terminals still exists and is running the marine terminal and storage facility that is adjacent to the Refinery.

[3] Prior to the bankruptcy sale hearing, the United States filed a Limited Objection to the Sale (Flint Dec. Ex. 3 [Bankr. Doc. 950]), which requested that the Bankruptcy Court ensure any obligations in the Joint Stipulation would not be adversely impacted by a Sale Order. The United States and the Purchaser(s) reached agreement on the Sale Order language which was subsequently adopted by the Bankruptcy Court.

[4] *See, e.g., id.* at .pdf p. 2/38 (describing the "designation of West Indies Petroleum Limited and Port Hamilton Refining and Transportation, LLLP (together, the 'Purchaser') as Winning Bidder"); and 977-1 at .pdf pp. 2/, 6/ and 55/103 (similar).

4

Indies and Port Hamilton do not inherit any *derivative* liabilities by merely signing onto the Joint Stipulation, they "must" become Parties to that agreement and abide by its terms.

### C. West Indies And Port Hamilton Have Failed To Comply With The Bankruptcy Court's Requirement To Become Parties To The Joint Stipulation.

Immediately following the Bankruptcy Sale in January 2022, the United States began discussions with counsel for Port Hamilton and then-counsel for West Indies about the Paragraph 11 requirement that the Purchasers become parties to the Joint Stipulation. On February 19, 2022, counsel for Port Hamilton sent an email proclaiming that, having spoken with counsel for West Indies, the Purchasers had concluded "there is no need for any entity other than Port Hamilton to become a signatory on any document or filing." (Flint Dec. Ex. 4). The United States disagreed.

Defendants' February 2022 representation that there would be "no need" for all Purchasers to become party to the Joint Stipulation sparked a dispute among the Parties. For several months, the United States, West Indies, and Port Hamilton had conference calls and exchanged correspondence. (*See* Flint Dec. Ex. 5). On April 15, 2022, in the midst of the dispute, the United States circulated a proposed First Amended Joint Stipulation to counsel for LBR, Terminals, West Indies, and Port Hamilton. (Flint Dec. Ex. 6) West Indies and Port Hamilton never provided written comments on the proposed draft.

On May 17, 2022, then-counsel for West Indies and Port Hamilton sent a letter to the United States that incorrectly framed the dispute as one over the post-closing ownership. (Flint Dec. Ex. 7). On July 27, 2022, the United States responded with a letter detailing why both West Indies and Port Hamilton must become parties to the Joint Stipulation, and providing them an opportunity to respond. (Flint Dec. Ex. 8). West Indies and Port Hamilton never responded.

In mid-November, given the lack of progress resolving the dispute, the United States filed a motion to substitute Port Hamilton, West Indies, and the Transition Refinery Entity, Inc. ("TRE") as Defendants under Federal Rule of Civil Procedure 25(c). (ECF 23). Two days later, this Court

5

granted the Motion for Substitution and ordered the substitution of West Indies, Port Hamilton, and the TRE for Defendant LBR. (ECF 25). West Indies and Port Hamilton filed a motion for reconsideration. (ECF 26). In January of 2023, once briefing was concluded, the Court denied that motion for reconsideration and confirmed them to be Defendants in this case. (ECF 39).

Six weeks later, the United States again sent a revised draft of the First Amended Joint Stipulation to the parties. (Flint Dec. Ex. 9) The revised draft included the substitution of West Indies, Port Hamilton, and the TRE for Defendant LBR in this action, and changes to reflect that LBR has been reorganized as the TRE. On March 17, 2023, the United States sent a follow-up email to counsel for West Indies, Port Hamilton, and the TRE requesting comments by March 31, 2023. (Flint Dec. Ex. 10). On March 31, 2023, Port Hamilton provided written comments to the First Amended Joint Stipulation. (Flint Dec. Ex. 11). Counsel for Port Hamilton subsequently confirmed that those written comments were also submitted on behalf of the TRE. West Indies has not provided any comments to the First Amended Joint Stipulation.

On April 27, 2023, the United States circulated a revised draft of the First Amended Joint Stipulation that included responses to the comments received from LBT, Port Hamilton, and the TRE. (Flint Dec. Ex. 12). On May 11, 2023, the United States sent a follow up email. (Flint Dec. Ex. 13). Port Hamilton, West Indies, and the TRE remain unresponsive.

## II. ARGUMENT

The Bankruptcy Court's Sale Order demands that West Indies and Port Hamilton become parties to the Joint Stipulation, and the Defendants have conceded as much. (ECF 26-1 at 1; ECF 27 at 3). But—though the Defendants have announced their intent to resume refining operations in the near future—they have dragged their heels when it comes to complying with the court order that aimed to protect the public during that restart process. After 18-months of the Defendants'

dithering and delay, the United States here requests this Court issue the attached proposed order directing that the Defendants abide by the substantive terms of the Joint Stipulation.

A. **Defendants Have Not Committed To The The Joint Stipulation's Preconditions For Resuming Operations, But They Apparently Plan To Restart The Facility.**

There is no question that the Bankruptcy Court's Sale Order required West Indies and Port Hamilton to become parties to the Joint Stipulation. The language of the order is clear on that front, and both Defendants have conceded as much.

First, Paragraph 11 of the Bankruptcy Court's Sale Order dictates that West Indies and Port Hamilton, as named "Purchaser[s]," "must become a party to" the Joint Stipulation, which "may be amended with the mutual consent of the parties." (Flint Dec. Ex. 1 [Bankr. Doc. 977] ¶ 11). Nothing in Paragraph 11 or the rest of the Sale Order suggests any reason why Port Hamilton and West Indies should be treated differently under this requirement. (*Id.*)

Moreover, though they have yet to comply with it, Defendants do not meaningfully dispute the plain requirement of Paragraph 11. Or at least: they do not dispute it in in court filings. To be sure, while the ink was still drying on the Asset Purchase Agreement, Defendants proclaimed that there was "no need" for West Indies to become a party to the Joint Stipulation (Flint Dec. Ex. 4.)— and so, apparently, "no need" for West Indies to comply with the Bankruptcy Court's Order. And the dispute as to whether *only* Port Hamilton need become a party to the Joint Stipulation sparked months of calls, letters, and negotiated drafts—interrupted by Defendants' intermittent refusals to communicate on the matter at all. (*Supra* pp. 6). Indeed, that issue remains a central obstacle to finalizing an Amended Joint Stipulation. However, when the matter is presented in court proceedings (as opposed to during negotiations), the Defendants are quick to recognize the Bankruptcy Court's requirement they become parties to the Joint Stipulation.

For example, throughout the briefing on the Rule 25 substitution reconsideration order, Port Hamilton and West Indies argued that the parties should be joined (rather than substituted) to the

7

case, an argument they lost. But their filings also *conceded* that both should be joined as parties to the Joint Stipulation. The Defendants' brief admitted the Bankruptcy Sale Order required "that [they] must become a party to the Joint Stipulation."[5] (ECF 27 at 3). And the proposed order filed jointly on behalf of both Port Hamilton and West Indies during that briefing included a provision that would have joined them as parties to the Joint Stipulation by way of an order from this Court:

> [West Indies and Port Hamilton] are hereby joined . . . as parties to the Joint Stipulation (ECF No. 2) such that they will be bound by any obligations under the Joint Stipulation that are outstanding or prospective as of December 21, 2021, the date of entry of the relevant Sale Order by the… Bankruptcy Court."

(ECF 26-1).[6] So—when pressed in court—Defendants concede that they must become parties to the Joint Stipulation. But Defendants' erstwhile concessions have not coalesced into compliance.

Meanwhile, Defendants have proclaimed their intent to restart the operations at the Refinery, potentially before the end of 2023. In fact, Port Hamilton highlighted that plan when insisting on expedited briefing of a parallel matter to the Third Circuit. (Case No. 23-1094, Doc. 9-1 ¶¶ 7–9). Their planning process is opaque, though, and Defendants have yet to so much as gesture toward compliance with the Joint Stipulation's restart prerequisites.

Defendants' conduct has left the United States—and the public—in an untenable position. They claim they need to move quickly to restart the Refinery, but they drag their feet on compliance with an order that would ensure the restart is performed safely. Defendants recognize their responsibility to comply with Paragraph 11 of the Sale Order in court filings, but they refuse to

---

[5] Defendants insisted that the Sale Order "expressly limits that obligation to the air monitoring obligations and prospectively to the property or units purchased or to be operated" (ECF 27 at 3), but they fail to explain how these 'limitations' excuse them from becoming parties to the Joint Stipulation or carrying out prospective obligations related to Refinery operations.

[6] Port Hamilton acknowledged to the Third Circuit that it is required "at EPA's insistence—as a condition of its purchase of the refinery in the Bankruptcy matter to become a party to . . . the Joint Stipulation" and that "Port Hamilton remains ready to become" a party to the Joint Stipulation. (Case No. 23-1094, Doc. 62, NF 14, p. 33).

answer emails and apparently continue to see "no need" to comply with the Bankruptcy Court's order. Indeed, to this day, Defendant West Indies has yet to have counsel enter an appearance before the Court despite a direct order to do so. (*See* 3/23/2023 Notice of Corrected Docket Entry.) These inconsistencies—this gamesmanship—is worrisome, and leaves a cloud of uncertainty over whether Defendants will abide by what should be an uncontroversial and straightforward mandate: assess the Refinery, report on its status, and implement all measures necessary to protect the public before resuming operations.

Judicial intervention is warranted here to bring certainty to the proceedings and ensure the public is protected as the Defendants endeavor to resume operations.

**B. The Proposed Order Continues the Public Protections Crafted In The Joint Stipulation Consistent With The Bankruptcy Court's Mandate.**

The Joint Stipulation in this case was established to protect the downwind community from the threats posed by the Refinery and its operations. That Joint Stipulation was preserved through the bankruptcy sale to ensure new ownership did not give rise to new threats. But Defendants' perpetual failure to join the Joint Stipulation or abide by the terms of the Sale Order has injected uncertainty into these proceedings and endangers the community. By requiring the Purchaser[s] to become parties to the Joint Stipulation in this case, the Bankruptcy Court's Sale Order anticipated Purchasers would be obligated to comply with its terms (absent a mutually agreed-to amendment). Defendants' failure to comply with Paragraph 11 of the Sale Order frustrates protections established on behalf of the public health and welfare in this case—a failure this Court can address. *See In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011) (district courts enjoy concurrent jurisdiction to interpret and implement a Bankruptcy Court's Sale Orders); *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66-67 (1st Cir. 2002) (same). To that end, the United States' Proposed Order filed concurrently with this motion would, if issued, adopt the substantive terms of the Joint Stipulation as a Court Order commanding compliance.

The United States' repeated efforts to obtain the mutual consent of all parties to an Amended Joint Stipulation were generally met with silence. And, absent consent of all requisite parties, Paragraph 11 of the Bankruptcy Court's Sale Order dictates that the terms of the existing Joint Stipulation should bind the Defendants. As such, the United States' Proposed Order tracks the language of the original Joint Stipulation, merely substituting West Indies, Port Hamilton, and the TRE[7] for former owner Limetree Bay Refining throughout. Defendant TRE is included in the Proposed Order here to streamline and organize the obligations of the Parties into one Court Order, but TRE is already a party to the Joint Stipulation and bound by all its terms by operation of the Bankruptcy Court's Order approving the Combined Disclosure Statement and Proposed Plan ("Plan Order"). (Flint Dec. Ex. 15 [Bankr. Doc. 1454]). Specifically, Paragraph 31 of the Plan Order states, in relevant part, "[t]he [TRE] shall be fully bound by all provisions of the… the Joint Stipulation." (*Id.* at .pdf 48–50/190.) Therefore, the United States' Proposed Order memorializes the TRE's existing duties under the Joint Stipulation and does not place any alternative or additional obligations on the entity.

Beyond the mere substitution of the Defendants into the terms of the Joint Stipulation, the Proposed Order makes two minor adjustments necessary to reflect the current posture of the case. First, the Order includes three additional "whereas" clauses that refer to the Bankruptcy Sale of the Refinery and the Bankruptcy Court's Sale Order. Second, the Proposed Order omits Paragraph 14 from the original Joint Stipulation—a paragraph regarding the stay of deadlines in this case—as it has been long since superseded.

---

[7] Purchaser, West Indies and Port Hamilton, exercised its option to reorganize Limetree Bay Refining, LLC as the TRE in mid-2022 pursuant to Article VIII.B of the Combined Disclosure Statement and Proposed Plan. (Flint Dec. Ex. 14 [Bankr. Doc. 1413-1] at .pdf 54 of 93).

## VI. CONCLUSION

For the foregoing reasons, the United States asks this Court for entry of an order imposing on Defendants West Indies and Port Hamilton the substantive requirements of the Joint Stipulation.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/*Myles E. Flint, II*
MYLES E. FLINT, II, Senior Counsel
KATHERINE M. ROMERO, Trial Attorney
ELIAS L. QUINN, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 307-1859

OF COUNSEL:
TERESA DYKES
Senior Attorney
U.S. Environmental Protection
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Ave. NW (2242A)
Washington, DC 20460

SARA FROIKIN
SARA AMRI
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, NY 10007