<u>Appendix E</u>

Memorandum of Understanding with UVI

MEMORANDUM OF UNDERSTANDING
BETWEEN HOVENSA L.L.C. AND
THE UNIVERSITY OF THE VIRGIN ISLANDS

**EXPLANATORY STATEMENT:**

A.            HOVENSA L.L.C. (hereinafter referred to as HOVENSA) has long envisioned creating employment opportunities in the petrochemical industry for residents of the Virgin Islands by assisting in providing the training required

B.    The University of the Virgin Islands (hereinafter referred to as UVI) and HOVENSA have collaborated in the development of a program leading to an Associate in Applied Science degree with a major in Process Technology

C.    The then Division of Science and Mathematics (now College of Science and Mathematics) at UVI and technical experts from HOVENSA designed the required curriculum which was approved by UVI's Curriculum Committee, the faculty body and the Board of Trustees.

D.    On March 28, 2002, HOVENSA and UVI signed a Memorandum of Understanding (MOU) initializing the program. This MOU, which covered a term of three years, expired on March 28, 2005. A second MOU which covered an additional term of three years expired on October 13th, 2008 and a third MOU which covered an additional term of three years expires in December, 2011

E.    This new MOU reaffirms the continued collaboration for the success of the program by both parties. It will cover a term of three years and will expire in December, 2014.

F.    The Associate of Applied Science degree in Process Technology was first offered to incoming UVI students in the fall 2002 semester.

G.    HOVENSA has pledged to support this degree program by assisting UVI's faculty with contributions of time and resources. These include making available HOVENSA's personnel to assist in the development of the curriculum and to teach, consult, and mentor as well as financial resources

**NOW THEREFORE**, UVI and HOVENSA have developed a new Memorandum of Understanding (hereinafter referred to as "the MOU") to apportion their continued responsibilities for the success of the program, as follows:

SCOPE OF UNDERSTANDING:

1) The term of the MOU shall be for a period of three years from the effective date of the MOU.

2) Prior to the end of the term, the Parties will meet to review the program, assess its progress, effectiveness and the future viability with a view to determining whether to continue the collaboration.

3) HOVENSA will maintain and fully administer a scholarship fund dedicated to rendering financial assistance to qualified students who have been admitted into the program. HOVENSA will review the current criteria for awarding scholarships to determine the effective methods for encouraging students to take advantage of the scholarships offered.

Scholarships are awarded based on academic performance. Each scholarship is awarded on a per semester basis. The granting of each scholarship is determined after considering the academic performance for that semester.

The scholarship will be prorated based on the semester grade point average and credit hours. The maximum annual value of the scholarship is $4594 (tuition and fees for academic year 2011-2012) for an individual student.

4) In the event the incumbent Director of Process Technology vacates this position, HOVENSA will, if necessary, assist UVI in the recruitment for a new faculty member in an area of Process Technology, who will serve as the Director of the Program, who will be an employee of UVI and who will:

   a) Teach appropriate process technology courses;

   b) Coordinate with part-time instructors;

   c) Provide student academic counseling for this program;

   d) Lead recruitment for the program; and

   e) Liaise with UVI's Dean of the College of Science and Mathematics regarding the program.

5) HOVENSA will underwrite the salary and benefits of the Director of Process Technology until such time as such funding is fully replaced by grants or other contracts. Refer to Appendix A.

6) UVI will, where appropriate, pursue the preparation of grant applications to various foundations, for partially underwriting the cost of the program.

7) HOVENSA will underwrite the cost of the services of designated technical personnel with expertise in the various core subjects, to teach specific technical courses throughout the term of this Agreement. These part time instructors will be recommended by the Director of the Process Technology program, and will have the qualifications required for teaching in the Associates in Applied Science program. Final approval will follow UVI procedure. These personnel will be compensated at UVI's rates for part-time faculty, but compensation will not be prorated based on class size.

8) HOVENSA will collaborate with UVI in the development of formal recognition of the efforts of the part-time instructors in the program in order to encourage and sustain their participation. Such recognition should include, but not necessarily be limited to letters of commendation and other appropriate methods for recognizing their individual contributions towards the development of a successful program.

9) HOVENSA will allow the program to use the following facilities:

    a)    Specialized classrooms at the HOVENSA Training School

    b)    Training School laboratories and necessary equipment;

10) UVI must develop a marketing program to publicize the program among the general public and in area high schools. This marketing effort of the Process Technology program could extend throughout the Caribbean region, particularly in islands such as Trinidad, Curacao and Aruba where oil refineries exist.

11) UVI will carry out all requisite steps to manage the degree program within the College of Science and Mathematics, including but not limited to establishing all requirements for admissions, testing and placement, preparation and acquisition of materials, coordination with all faculty, and other foreseeable administrative steps incidental to maintaining the program, and processing of incoming students.

12) UVI will provide faculty from appropriate College or School, to teach non-technical courses and electives required for graduation from the program.

13) UVI will facilitate coordination between its faculty and the HOVENSA-provided instructors, including orientations and dissemination of all requisite academic and administrative materials and procedures and providing them with administrative support to facilitate the HOVENSA-provided instructors' participation in the program.

14) UVI will treat all part-time instructors with the same professionalism, courtesy, and respect, accorded UVI faculty, including, but not limited to granting them access to student records and information, providing them assistance with and access to university facilities and processes.

15) UVI will provide an office for the Director of Process Technology. This office will include all necessary and customary office equipment and supplies, and access to support staff of the College of Science and Mathematics.

16) UVI will provide all necessary classrooms for the non-technical courses and electives required for graduation from the program

17) As an extension to the provisions for this degree program, UVI and HOVENSA will work collaboratively to explore feasibility of and develop offerings of online courses.

18) Officials of UVI and HOVENSA will work together in a spirit of cooperation and professionalism, through frequent communication and attendance at meetings, to address all questions and concerns that surface regarding the program, the collaboration and any obstacles in order to make this a successful program.

## GENERAL PROVISIONS:

A. Any contract to carry out the terms or processes of the MOU, and which is intended to bind a Party, must be executed by that Party.

B. The modification of any term of the MOU must be in writing.

C. In consideration for the contributions being pledged by HOVENSA, UVI will defend, indemnify and release HOVENSA, its members, parents, affiliates, subsidiaries, and the parents, as well as their employees, agents, shareholders, board of directors, officers, successors and assigns, specifically including but not limited to Hess Oil Virgin Islands Corp., PDVSA V.I., Inc., St. Croix Petrochemical Corp., Hess Corporation and Petroleos de Venezuela, S.A.("PDVSA"), and their parents, affiliates, successors and assigns (Collectively "HOVENSA"), as well as HOVENSA's employees who will serve UVI as instructors and technical experts, from any and all claims, damages, (including personal injury or death, property or consequential), liability and causes of action, whether due in whole or in part to any act, omission or negligence of HOVENSA resulting from negligence, or dangers known or unknown, or reasonable foreseeable, or from breach of contract or warranty, strict liability, or otherwise, arising out of or in any way related to the services to be provided by UVI, its agents and employees or the UVI facilities and equipment to be utilized. UVI further agrees that if a claim is made against HOVENSA or any other person covered by this clause, whether as a result of negligence, fault, or voluntary act of UVI, its agents and employees, that UVI will defend HOVENSA from any such claims and that it will either settle the claim or pay any judgment entered against HOVENSA, including attorney's fees and costs.

D. In return for the commitments being made by UVI, HOVENSA will defend, indemnify and release UVI, its employees, agents, board of directors, officers, successors and assigns, specifically including but not limited to UVI's employees who will serve UVI as instructors and technical experts, from any and all claims,

Appendix E-4

damages, (including personal injury or death, property or consequential), liability and causes of action, whether due in whole or in part to any act, omission or negligence of HOVENSA resulting from negligence, or dangers known or unknown, or reasonable foreseeable, or from breach of contract or warranty, strict liability, or otherwise, arising out of or in any way related to the services to be provided by HOVENSA, its agents and employees or the HOVENSA facilities and equipment to be utilized. UVI further agrees that if a claim is made against UVI or any other person covered by this clause, whether as a result of negligence, fault, or voluntary act of HOVENSA, its agents and employees, that HOVENSA will defend UVI from any such claims and that it will either settle the claim or pay any judgment entered against UVI, including attorney's fees and costs.

E.   The MOU shall be interpreted in accordance with the laws of the United States Virgin Islands. If any portion of this Agreement is against the public policy of the Virgin Islands, it will be construed to provide the greatest possible release of liability permitted by Virgin Islands law. Likewise, if any provision of the MOU is deemed invalid or inoperative to any extent, such validity will not invalidate the MOU, but the MOU will be construed without the provision(s) deemed invalid or inoperative, with a view toward affecting the purpose of the MOU, and the validity and enforceability of the remaining provisions will not be impaired.

F.   All disputes or claims arising from HOVENSA's participation or financial contributions to the program will be submitted to confidential and binding arbitration in the U S. Virgin Islands, in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction. The arbitrators in entering a decision will have the authority to select either the amount or remedy proposed by HOVENSA, or that proposed by UVI, and none other. The losing party will bear the cost of arbitration. Other than arbitration feed and expenses, each party will bear its own costs and expenses, including attorney's fees. If any matter is deemed non-arbitral by the arbitrator or by a court of competent jurisdiction. UVI hereby expressly waives trial by jury with respect to such claim or controversy. UVI understands that in such event, any decision regarding such claim or controversy will be made by the court as finder of fact and not by jury

G    This document constitutes the entire understanding between the Parties hereto and all prior communication understanding with respect to the subject matter of the MOU, integrated herein.

### Appendix F

#### Form of Special Warranty Deed

Form of
#### SPECIAL WARRANTY DEED
[For Property Acquired for Closing Payment]

THIS DEED is made this _____, 2018, by and between the GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS acting through its Commissioner of the Department of Property and Procurement, whose mailing address is Building No. 1, 3ʳᵈ Floor, Subbase, St Thomas , U.S Virgin Islands 00802, as the grantor ("Grantor" or "Government") and [LIMETREE BAY TERMINALS, LLC], a U.S Virgin Islands limited liability company, whose address in 1 Estate Hope, Christiansted, VI 00822, as the grantee ("Grantee" or "LB Terminals").

#### WITNESSETH

WHEREAS, the Government and LB Terminals entered into that certain Amended and Restated Terminal Operating Agreement, dated _____, 2018 and approved by the Legislature of the Virgin Islands on _____, 2018 as Bill No _____ ("Terminal Operating Agreement"); and

WHEREAS, pursuant to the provisions of the Terminal Operating Agreement, the Government agreed to sell and convey the Property described herein to LB Terminals and to grant the easements contained herein to LB Terminals and the LB Terminals Parties (as defined herein),

Pursuant to the Terminal Operating Agreement and in consideration of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Grantor, Grantor does hereby sell, grant, transfer and convey to the Grantee, and to its successors and assigns, the real property described in **Schedule A** attached hereto and by reference incorporated herein, together with all the tenements, hereditaments, and appurtenances thereunto belonging, and any and all improvements located thereon and the Easement described in **Schedule B** attached hereto and by reference incorporated herein (collectively "Property").

TO HAVE AND TO HOLD the Property conveyed hereby unto the Grantee, and to its successors and assigns, in fee simple absolute forever.

Grantor warrants that it has and is conveying good and marketable fee simple title to the Property free and clear of any Liens, Claims and Liabilities of any kind whatsoever except Permitted Encumbrances (as such terms are defined in **Schedule C** attached hereto and by reference incorporated herein).

Grantor will warrant and defend the right and title to the Property unto Grantee against the claims of any persons owning, holding or claiming by, through or under Grantor, except for claims arising under or by virtue of the Permitted Encumbrances.

IN WITNESS WHEREOF, the Grantor has duly executed this deed effective the day and year first above written.

GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS
Department of Property and Procurement

BY _____          Date _____

    Commissioner

**APPROVED AS TO LEGAL SUFFICIENCY**

BY _____          Date _____

    Claude Earl Walker, Esq
    Attorney General

**APPROVED**

                                      Date _____
_____
    Kenneth E Mapp
    Governor of the Virgin Islands

As to the execution of this deed by the Commissioner of Department of Property and Procurement

_____
Witness 1 (Print name and sign)          _____

_____
Witness 2 (Print name and sign)          _____

ACKNOWLEDGEMENT

TERRITORY OF U S  VIRGIN ISLANDS   )
DISTRICT OF ST  CROIX                        )

The foregoing instrument was acknowledged before me this _____, 2018, by _____, as Commissioner of the Department of Property and Procurement, Government of the United States Virgin Islands, on behalf of the Government of the United States Virgin Islands

_____
Notary Public
My commission expires
(Notary Seal)

Appendix F-2

## CERTIFICATE OF VALUE

IT IS HEREBY CERTIFIED that the value of the property described in the foregoing deed, for recording and transfer stamp tax purposes, does not exceed $ _____ and that the transfer herein is exempt from recording fees pursuant to 28 V I C §134(3) and stamp taxes pursuant to 33 V I C §128(a)(1)

_____
Grantor's Authorized Agent


## CERTIFICATE OF PUBLIC SURVEYOR

It is hereby certified that according to the records in the Public Surveyor's Office, the Property described in the foregoing instrument has not undergone any change in regard to boundary and area

Office of the Public Surveyor, Christiansted, St Croix, U S Virgin Islands

Dated _____

_____

Schedule A

Special Warranty Deed
From
Government of the United States Virgin Islands
To
Limetree Bay Terminals, LLC

Real Property Description

**Estate Castle Coakley, including all improvements thereupon**

1.   **Plot No. 29, Estate Castle Coakley**, Queen Quarter, St. Croix, U.S. Virgin Islands,
consisting of 1.840 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A
dated June 07, 1991

2.   **Plot No. 45, Estate Castle Coakley**, Queen Quarter, St. Croix, U.S. Virgin Islands,
consisting of 1.790 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A
dated June 07, 1991

3.   **Plot No. 52, Estate Castle Coakley**, Queen Quarter, St. Croix, U.S. Virgin Islands,
consisting of 4.070 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A
dated June 07, 1991·

4.   **Plot No. 53, Estate Castle Coakley**, Queen Quarter, St. Croix, U.S. Virgin Islands,
consisting of 22.137 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A
dated June 07, 1991

5.   **Plot No. 53-C, Estate Castle Coakley**, Queen Quarter, St. Croix, U.S. Virgin Islands,
consisting of 0.734 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A
dated June 07, 1991

**Estate Caldwell, including all improvements thereupon**

6.   **Plot No. 5, Estate Caldwall**, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of
46.111 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June
07, 1991

**Estate Cottage, including all improvements thereupon**

7.   **Plot No. 3-A, Estate Cottage**, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting
of 12.837 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated
June 7, 1991

8.   **Plot No. 4 Estate Cottage**, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of
70.000 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 7,
1991

**Estate Blessing, including all improvements thereupon**

9       **Remainder Plot No. 4-B, Estate Blessing,** King Quarter, St Croix, U.S Virgin Islands, consisting of 35.82 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-131-C018, dated June 26, 2018

**Estate Hope, including all improvements thereupon**

10.     **Plot No. 2-A, Estate Hope,** Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 4 475 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-113-C016, dated May 12, 2016

11.     **Plot No. 6-D Estate Hope,** Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 26 332 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-113-C016, dated May 12, 2016

Schedule B

**Special Warranty Deed**
**From**
**Government of the United States Virgin Islands**
**To**
**Limetree Bay Terminals, LLC**

## EASEMENT

1.  The Government of the U.S. Virgin Islands ("Government") hereby grants to Limetree Bay Terminals, LLC, a U.S. Virgin Islands limited liability company ("LB Terminals") the following Easement and by acceptance of this Special Warranty Deed, Limetree Bay Terminals, LLC accepts the Easement, under the terms and conditions of this Easement (sometimes referred to herein as this "Easement").

## WITNESSETH:

2.  **WHEREAS,** the Government and LB Terminals entered into that certain Amended and Restated Terminal Operating Agreement, dated _____, 2018 and approved by the Legislature of the Virgin Islands on _____, 2018 as Bill No _____ ("Terminal Operating Agreement").

3.  **WHEREAS,** pursuant to the provisions of the Terminal Operating Agreement, the Government agreed to grant the easements contained herein to LB Terminals and LB Terminals Parties (as defined herein).

4.  **WHEREAS,** this Easement is being granted and recorded for the purpose of notifying all current and future fee owners of the Government Roads, and any other Person claiming, acquiring, or taking an interest in or part of the Government Roads, that all such owners and Persons take title or an interest in the Government Roads subject to easements granted in favor of LB Terminals Parties as stated herein.

5.  **Definitions**:  Any capitalized terms used herein that are not defined herein shall have the meaning ascribed thereto in the Terminal Operating Agreement  As used herein,

    a)  "**Affiliate**" of any Person shall mean any other Person directly or indirectly controlling, controlled by, or under common control with, such Person, provided, that, for the purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by Contract or otherwise.

b) "**Business Day**" shall mean any day except a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close in New York, New York or the U.S. Virgin Islands.

c) "**Closing Date**" shall be as defined in the Terminal Operating Agreement and shall be the effective date of this Easement Agreement.

d) "**Contract**" shall mean any note, bond, mortgage, indenture, guaranty, license, franchise, permit, agreement, contract, commitment, lease, purchase order, or other instrument or obligation, and any amendments thereto.

e) "**Easement Purposes**" shall mean the purposes for which this the Easement is granted as set forth in Section 7 hereof.

f) "**Governmental Entity**" shall mean any multinational, United States or non-United States, federal, state, territory, provincial or local court (including, for the avoidance of doubt, the Bankruptcy Court), arbitral tribunal, departments, agencies (autonomous and semiautonomous), administrative agency, legislature or commission or other governmental, quasi-governmental or regulatory agency or authority (including any bureau, division or department thereof) or any securities exchange with jurisdiction over the Property.

g) "**Government Roads**" shall mean all roads, bridges, road plots, plots of land, and rights-of-way adjacent to the Terminal Site or the Refinery Site which are owned or managed by the Government or that are public roads or rights-of-way, including without limitation those roads, bridges, road plots, plots of land, and rights-of-way shown on the map attached hereto as **Schedule D** and by reference incorporated herein.

h) "**GVI Parties**" shall mean the Government and its Affiliates and any and all of their respective successors, successors-in-interest, assigns, members, managers, shareholders, partners, directors, officers, agents, employees, contractors, subcontractors, licensees, invitees and representatives of, or acting on behalf of, the Government or any of its Affiliates.

i) "**Law**" shall mean any statute, law, ordinance, ruling, policy, rule or regulation of any Governmental Entity and all judicial or administrative interpretations thereof and any common law doctrine.

j) "**LB Terminals Parties**" shall mean LB Terminals, Limetree Bay Refining, LLC and their respective Affiliates, and any and all of their respective successors, successors-in-interest, assigns, members, managers, partners, directors, officers, agents, employees, contractors, subcontractors, licensees, invitees and representatives of, or acting on behalf of, LB Terminals, Limetree Bay Refining, LLC and their respective Affiliates in connection with the use of the Government Roads for Easement Purposes.

k) "**Liabilities**" shall mean any and all indebtedness, taxes, losses, charges, debts, damages, obligations, payments, costs and expenses, bonds, indemnities, liabilities and obligations,

whether accrued or fixed, known or unknown, absolute or contingent, matured or unmatured or determined or determinable.

l) **"Loss"** or **"Losses"** shall mean, without duplication, any and all Liabilities, judgments, awards, losses, costs or damages, including reasonable fees and expenses of attorneys, accountants and other professional advisors

m) **"Person"** shall mean and include an individual, a partnership, a limited partnership, a limited liability partnership, a joint venture, a corporation, a limited liability company, an association, a trust, an unincorporated organization, a group and a Governmental Entity.

n) **"Refinery Site"** shall mean the real property on which the Refinery and various Shared Services Systems are now or hereafter located as further described in Appendix A attached to the Refinery Operating Agreement, together with all other real property now or hereafter owned, occupied, or leased by Refinery Operator at the Site and used in connection with the Refinery, including Refinery Submerged Lands and excluding the Excluded Lands.

o) **"Terminal Site"** shall mean the real property on which the Terminal and certain Shared Services Systems are now located as further described in Appendix A attached to the Terminal Operating Agreement, together with all other real property at the Site now or hereafter owned, occupied, or leased by Terminal Operator and used in connection with the Terminal, including Terminal Submerged Lands (as defined in the Terminal Operating Agreement) and Option Parcels, but excluding the Excluded Lands.

6. It is the purpose of this Easement to grant to LB Terminals Parties real property rights, which will run with the land, to facilitate any Easement Purposes by or on behalf of one or more LB Terminals Parties, in each case, which may be required to be performed or may be performed at the option of the LB Terminals Parties.

7. **Grant of Easement.**

The Government hereby establishes and grants to LB Terminals and the LB Terminals Parties a non-exclusive perpetual easement and right-of-way upon, over, in, under, across and through Government Roads for the following purposes: (i) for vehicular and pedestrian access, ingress and egress to and from the Refinery Site and the Terminal Site; and (ii) to construct, install, improve, replace, repair, inspect and/or maintain pipes, lines, conduit, hook-ups and/or connections, facilities and systems for the provision of utility services and other services or systems related to the Terminal or Refinery, including any required equipment appurtenant thereto, and including without limitation, to connect the Refinery or the Terminal to any power plants, waste water treatment facilities, water treatment facilities, storage tanks, Refinery or Terminal lines, pipes or other conduit, any public utility or other improvements or services necessary or desirable for the operation of the Terminal or the Refinery in any LB Terminals Party's discretion (collectively "Easement Purposes").

LB Terminals Party will utilize the easements granted hereunder subject to its commercially reasonable efforts to do so without unreasonably interfering with the rights of the Government Parties to use the Government Roads.

8. **Applicable Laws**. By acceptance of this Special Warranty Deed, LB Terminals agrees that it shall, and shall cause each other LB Terminals Party to, comply with all applicable Laws in connection with the use of the Government Roads for Easement Purposes under this Easement

9. **No Barriers**: From and after the date hereof, no barriers, fences or other obstructions shall be erected by any Government Party so as to unreasonably interfere with LB Terminals Parties use of the Government Roads for Easement Purposes as contemplated by this Easement.

10. **Insurance**:  LB Terminals Parties shall maintain commercial general liability insurance (the "CGL Insurance") to cover its activities on the Government Roads in customary and reasonable amounts, but in no event less than $1,000,000.00 per occurrence and $2,000,000.00 in the aggregate and with insurers licensed to do business in the U.S. Virgin Islands, and each such insurance policy shall name Government as additional insured as its interests may appear and shall designate the Government as a certificate holder under the CGL Insurance. LB Terminals or its insurer will provide the Government thirty (30) calendar days advance written notice (or 10 calendar days' notice in the case of cancellation due to non-payment of premiums) in the event of any material change to, nonrenewal of or cancellation of the required CGL Insurance. Prior to entering upon the Government Roads pursuant to this Easement, LB Terminals will provide the Government with proof of CGL Insurance in compliance herewith. If at any time during the term of this Easement the CGL Insurance is not in effect, LB Terminals Parties shall not perform any work on the Government Roads until the CGL Insurance is reinstated.

11. **Covenant Running With the Land:**  This Easement is intended and shall be a covenant running with the land, and shall burden, benefit and run with the Government Roads, the Refinery Site and the Terminal Site and be binding on the Government Roads, the Refinery Site and the Terminal Site and on all present and future owners and occupants of the Government Roads, the Refinery Site and/or the Terminal Site and other Persons having any right, title, interest or estate in the Government Roads, the Refinery Site and/or the Terminal Site.

12. **Enforcement:**  Each GVI Party and each LB Terminals Party shall be entitled to enforce the terms of this Easement by resort to specific performance or legal process. Enforcement of the terms of this Easement shall be at the discretion of such GVI Party or LB Terminals Party, as applicable, and any forbearance, delay, or omission to exercise its rights under this Easement in the event of a breach of any term of this Easement shall not be deemed to be a waiver by any GVI Party or LB Terminals Party, as applicable, of such term or of any subsequent breach of the same or any other term, or of any of the rights of any GVI Party or LB Terminals Party, as applicable, under this Easement. If any GVI Party or LB Terminals Party prevails in an action to enforce the terms of this Easement, such GVI Party or LB Terminals Party, as applicable, shall be entitled to an award of its reasonable attorneys' fees.

13. **Damages**:  Each GVI Party and LB Terminals Party shall be entitled to recover damages for violations of the terms of this Easement, other than damages caused by such party's own gross negligence or willful misconduct; provided, that no party hereto shall be entitled to receive consequential, special or punitive damages.

14. **Indemnification**:  From and after the Closing Date, LB Terminals shall indemnify, defend, (or, where applicable, pay the defense costs for) and hold harmless the Government from, against and in respect of any Losses incurred or sustained by, or imposed on, the Government to the extent arising from or in connection with LB Terminals' and/or any LB Terminal Party's use of the Government Roads pursuant to the easements granted pursuant to this Easement; excluding only any Loss caused by or that arises from any grossly negligent act or omission (including strict liability) or willful misconduct of any GVI Party.

15. **Notices**:  All notices, requests, claims, demands, waivers and other communications hereunder shall be in writing and shall be delivered by hand or express courier service, mailed by certified mail to the respective parties hereto as follows (or, in each case, as otherwise notified by any of the parties hereto) and shall be effective and deemed to have been given (a) immediately upon sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, or other written acknowledgment) and (b) when received by the addressee if delivered by hand on any Business Day:

If to LB Terminals, to:

Limetree Bay Terminals, LLC
1 Estate Hope
Christiansted, St. Croix 00820
Attention: Darius Sweet, CEO

with a copy to

Latham & Watkins LLP
885 Third Avenue
New York, New York 20022
Attention:    Christopher G. Cross
             Warren H. Lilien
Fax:          (212) 751-4864

and

Nichols, Newman, Logan, Grey & Lockwood, P.C.
1131 King Street, Christiansted, St. Croix
U.S. Virgin Islands 00820-4971
Attention:    G. Hunter Logan, Jr.
             Todd H. Newman
Fax:          (340) 773-3409

if to Government, to:

The Government of the U.S. Virgin Islands
Government House
Christiansted
St. Croix, U.S. Virgin Islands
Attention: Office of the Governor

Appendix F-10

with a copy (which shall not constitute notice or service of process) to:

Office of the Attorney General
U.S. Virgin Islands Department of Justice
34-38 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, U.S. Virgin Islands 00802

16. **General Provisions**:

a)   **Controlling Law:** The interpretation and performance of this Easement shall be governed by the Laws of the U.S. Virgin Islands.

b)   **Severability**:  If any term, provision, agreement, covenant or restriction of this Easement, or the application of it to any Person or circumstance, is found to be invalid, void or unenforceable, the remainder of the terms, provisions, agreements, covenants and restrictions of this Easement, or the application of such terms, provisions, agreements, covenants and restrictions to Persons or circumstances other than those to which it is found to be invalid, as the case may be, shall not be affected thereby.

c)   **No Forfeiture**:   Nothing contained herein · will result in a forfeiture of Government's title to the Government Roads in any respect.

d)   **Successors**:  The covenants, terms, conditions, and restrictions of this Easement shall be binding upon, and inure to the benefit of the GVI Parties and LB Terminals Parties and shall continue as a servitude running with the Government Roads, the Refinery Site and the Terminal Site.  The terms "Government" and "GVI Parties" wherever used herein, and any pronouns used in place thereof, shall include the persons and/or entities named in this document and identified as "Government" and "GVI Parties" and their personal representatives, heirs, successors, and assigns   The terms "LB Terminals" and "LB Terminals Parties," wherever used herein, and any pronouns used in place thereof, shall include the persons and/or entities named in this document and identified as "LB Terminals" and "LB Terminals Parties" and their personal representatives, heirs, successors, and assigns.

e)   **Modification:**  This Easement may only be modified in a writing signed by LB Terminals and Government hereto and recorded in the office of the Recorder of Deeds for the District of St. Croix, U S  Virgin Islands.

f)   **Compliance Certificate:**  Within ten (10) Business Days after the written request of the other party hereto, a party shall provide an executed certificate in form and substance as reasonably approved by each party hereto with respect to the performance and compliance by the other party with the requirements of this Easement.

Schedule C

**Special Warranty Deed**
**From**
**Government of the United States Virgin Islands**
**To**
**Limetree Bay Terminals, LLC**

## Definitions

"**Claim**" shall have the meaning assigned to such term under section 101(5) of the Bankruptcy Code.

"**Liabilities**" shall mean any and all indebtedness, taxes, losses, charges, debts, damages, obligations, payments, costs and expenses, bonds, indemnities, liabilities and obligations of any nature, including any unknown, undisclosed, unmatured, unaccrued, unasserted, contingent, indirect, conditional, implied, vicarious, derivative, joint, several or secondary liability, regardless of whether such claim, debt, obligation, duty or liability would be required to be disclosed on a balance sheet prepared in accordance with GAAP and regardless of whether such claim, debt, obligation, duty or liability is immediately due and payable.

"**Liens**" shall mean any liens (as defined in Section 101(37) of the Bankruptcy Code), debts (as defined in Section 101(12) of the Bankruptcy Code), security interests, claims, easements, mortgages, charges, indentures, deeds of trust, rights of way, encroachments, or any other encumbrances and other restrictions or limitations on ownership or use of real or personal property or irregularities in title thereto.

"**Permitted Encumbrances**" shall mean (a) easements, covenants, rights of way and restrictions of record encumbering the Property as of the Closing Date, (b) liens for real property taxes not yet due and payable, (c) zoning, building code or planning restrictions or regulations, and (d) encroachments and other matters that would be shown in an accurate survey or physical inspection of such Property.

Schedule D

Special Warranty Deed
From
Government of the United States Virgin Islands
To
Limetree Bay Terminals, LLC

## Map of Government Roads

[Insert Map]

## AFFIDAVIT OF TAX STAMP EXEMPTION

I, _____, the undersigned, being first duly sworn upon oath, depose and state that:

1)   I am an adult over the age of twenty one years

2)   I am the Authorized Person of the Grantor of the Property described herein.

3)   The transfer of title of the Property described herein is from Grantor, Government of the United States Virgin Islands, to the Grantee.

4)   This sworn certification is made for the purposes of complying with 33 V.I.C §128(b) that requires an affidavit in support of Grantor's claim that the transfer of the Property as herein described is exempt from the payment of a Stamp Tax under Section 128(a)(1) of Title 33 of the Virgin Islands Code.

5)   As the Grantor is the Government of the United States Virgin Islands, the transfer herein is exempt from recording fees pursuant to 28 V.I.C. §134(3).

_____
_____, Authorized Person

TERRITORY OF U.S. VIRGIN ISLANDS   )
DISTRICT OF ST. CROIX                          )

The foregoing instrument was acknowledged before me this _____, by _____, as Authorized Person of Government of the United States Virgin Islands.

_____
Notary Public

My commission expires

# EXHIBIT 5

United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 18, 2022

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LIMETREE BAY SERVICES, LLC, *et al.*,[1] | CASE NO.: 21-32351 (DRJ) |
| Debtors. | (Jointly Administered) |

### ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY AND (II) APPROVING <u>ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT</u>
(Docket No. 1414)

Upon motion ("**Motion**")[2] of the debtors and debtors in possession herein (collectively, the "**Debtors**") for entry of an order (this "**Order**") granting the USVI limited relief from the automatic stay, (ii) approving the assumption by the Debtors and assignment to the Port Hamilton Refining and Transportation, LLLP (the "**Purchaser**") of that certain Refinery Operating Agreement dated July 2, 2018 by and between Limetree Bay Refining, LLC and the United States Virgin Islands (the "**USVI Operating Agreement**"), a copy of which is attached to the Motion as <u>Exhibit B</u>, and (iii) granting related relief set forth herein; and the Court having jurisdiction to consider the Motion and the and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to all required parties and it appearing that no further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

00714501.DOCX 7
G:\share\LVanderWeide\Limetree Motion to Assume and Assign LBR Operating Agreement 5.17.2020 - conforming change.docx

20

having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay of section 362 of the Bankruptcy Code is hereby modified to allow USVI to issue default notices for the September Payment and December Payment under the USVI Operating Agreement.  Based on the foregoing modification of the automatic stay, the USVI may issue the Proposed Certificates seeking to draw on the Letter of Credit for the Operating Agreement Payments, including, without limitation, certificates in the form attached to the Motion as <u>Exhibit E</u>.

3.      The USVI Operating Agreement shall be assumed and assigned from the Debtors, as applicable to the Purchaser, or any other USVI entity as identified by Purchaser to act as assignee, effective as of receipt by the USVI of funds from the first draw on the Letter of Credit, pursuant to Section 365 of the Bankruptcy Code; *provided, however*, upon the filing of a Notice of Nonpayment, the assumption and assignment of the USVI Operating Agreement shall be deemed void *ab initio* and the USVI Operating Agreement shall be deemed rejected as of the effective date of any confirmed chapter 11 plan; *provided, further*, that any Notice of Nonpayment must be served by December 31, 2022; *provided, however*, that a Notice of Nonpayment will not be served until the earlier of (i) December 15, 2022 or (ii) the exhaustion of all good faith efforts by the USVI to draw on the Letter of Credit, including litigation to receive payment in full of the Cure Amount.  In no event shall the Debtors, their bankruptcy estates, or any liquidating trust established by the Debtors (the "**Liquidating Trust**") be obligated to pay or be subject to any

00714501.DOCX 7
G:\share\LVanderWeide\Limetree Motion to Assume and Assign LBR Operating Agreement 5.17.2020 - conforming change.docx

21

litigation seeking to recover or compel payment of any "cure" payments associated with the assumption or assignment of the USVI Operating Agreement.

4.      The USVI acknowledges and agrees that the right to seek payment from the Letter of Credit is the sole recourse for any "cure" payments due in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.  The Debtors, the Purchaser, and West Indies Petroleum Limited are not and shall not be deemed to have guaranteed payment of any "cure" amounts or the ability, if any, for the USVI to draw on the Letter of Credit in satisfaction of any Cure Amount or other obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.  The Debtors are not assuming any responsibility for the payment of any Cure Amount or other obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement; *provided, further,* that Purchaser and West Indies Petroleum Limited are not committing to pay any such "cure" obligations.  The Purchaser, West Indies Petroleum Limited, and the Debtors shall not assume any liability for the Payment Defaults, the Cure Amount, or any amounts required to cure existing defaults under the USVI Operating Agreement.

5.      Upon entry of this Order, the USVI shall be deemed to have waived any and all administrative or secured claims against the Debtors and their respective estates arising under or related to the USVI Operating Agreement or any of the obligations thereunder, including, without limitation, any claim for payment of the Operating Agreement Payments or associated obligations, any claim(s) asserted under proof of claim number 1535 filed by the USVI in the Chapter 11 Cases, and any administrative priority claims against the Debtors or their respective estates.  USVI's waiver of administrative and secured claims against the Debtors and their respective estates shall

be binding and irrevocable regardless of whether the USVI Operating Agreement is ultimately assumed and assigned to Purchaser or rejected.

6.    Upon Refinery Restart, the Purchaser must obtain new Financial Assurance in accordance with Section 8.5(B) of the USVI Operating Agreement.

7.    The Debtors are authorized and empowered to enter into and take any and all actions necessary to carry out and effectuate the terms, conditions and provisions of this Order.

8.    The fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) is hereby waived and the relief granted herein shall take effect immediately upon entry of this Order.

9.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Signed:  May 18, 2022.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC, *et al.*,**[1] | **CASE NO.: 21-32351 (DRJ)** |
| **Debtors.** | **(Jointly Administered)** |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF ORDER
## (I) GRANTING RELIEF FROM THE AUTOMATIC STAY AND (II) APPROVING
## ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT

**A hearing will be conducted on this matter on May 18, 2022, at 11:00 a.m. (prevailing Central Time) in Courtroom 400, 4th floor, 515 Rusk St., Houston, Texas 77002. You may participate in the hearing by audio/video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at (832) 917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691.**

**You may view video via GoToMeeting. To use GoToMeeting, the Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeJones" in the GoToMeeting app or click the link on Judge Jones's home page on the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of the hearing. To make your electronic appearance, go to the Southern District of Texas website and select "Bankruptcy Court" from the top menu. Select "Judges' Procedures," then "View Home Page" for Judge Jones. Under "Electronic Appearance" select "Click here to submit Electronic Appearance". Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**If you object to the relief requested, you must either appear at the hearing or file a written response prior to the hearing. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**Relief is requested not later than May 18, 2022.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.

Limetree Bay Services, LLC and its debtor affiliates (collectively, the "**Debtors**"), as debtors and debtors-in-possession in the above-captioned, jointly administered chapter 11 cases (the "**Chapter 11 Cases**"), with the support and agreement of the Government of the United States Virgin Islands (the "**USVI**") and Port Hamilton Refining and Transportation, LLLP (the "**Purchaser**"), respectfully represent as follows in support of this motion (the "**Motion**").

## Relief Requested

1.      By this Motion, the Debtors respectfully request entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), (i) granting the USVI limited relief from the automatic stay pursuant to section 365 of the Bankruptcy Code (defined below), (ii) approving and authorizing the Debtors to assume and assign to Purchaser the USVI Operating Agreement (defined below), and (iii) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for the relief requested in the Motion are Sections 105, 362 and 365 of the Bankruptcy Code (defined below), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 9013-1(b) of the Bankruptcy Local Rules for the Southern District of Texas.

## Background

4.      On July 12, 2021 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**")—thereby commencing the above-captioned, jointly

administered chapter 11 cases (the "**Chapter 11 Cases**"). On July 13, 2021, the Court entered an order jointly administering the Chapter 11 Cases under *In re Limetree Bay Services, LLC, et al.*, case no. 21-32351 (DRJ) (Doc. 20). On or about July 26, 2021, an Official Committee of Unsecured Creditors was appointed (Doc. 189). The Debtors continue to manage their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Prior to the Petition Date, in conjunction with the restart and anticipated operation of the refinery (the "**Refinery**"), Limetree Bay Refining, LLC ("**LBR**") and the USVI entered into that certain Refinery Operating Agreement dated July 2, 2018 (the "**USVI Operating Agreement**"). A copy of the USVI Operating Agreement is attached hereto as <u>Exhibit B</u>.

6.      On December 21, 2021, the Court entered its *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform under the Asset Purchase Agreement, (III) Approving Procedures for the assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 977] (the "**Sale Order**"), pursuant to which the Debtors sold and conveyed to Purchaser substantially all assets of the Debtors' estates.

7.      The Purchaser desires to obtain LBR's rights under the USVI Operating Agreement through the assumption and assignment of the USVI Operating Agreement pursuant to and in accordance with the Sale Order and that certain Asset Purchase Agreement entered into as of December 2021, a copy of which is attached to the Sale Order as Exhibit 1 (the "**APA**").  As such, in accordance with paragraph 14.a of the Sale Order, on December 24, 2021, the Debtors filed the *Notice of Designation of Assumption and Assignment of Executory Contracts* [Docket No. 984] (the "**Notice of Designated Contracts**"), pursuant to which the Debtors designated for assumption and assignment to the Purchaser the USVI Operating Agreement.

8.     On December 30, 2021, the Debtors, Purchaser, and USVI (together, the "Parties") filed the *Stipulation and Agreed Order to Extend the Deadline to Object to the Assumption and Assignment of Designated Contract* [Docket No. 1002] to, among other things, extend the Designated Contract Objection Deadline with respect to the USVI Operating Agreement from January 4, 2022, through and including January 11, 2022.  While the Parties worked towards an amicable resolution of issues pertaining to the assumption and assignment to Purchaser of the USVI Operating Agreement, the Parties required additional time.  Thus, on January 11, 2021, USVI filed its *Limited Objection and Reservation of Rights of the Government of the U.S. Virgin Islands with Respect to the Debtors' Notice of Designation of Assumption and Assignment of Executory Contract* [Docket No. 1052] (the "**Reservation of Rights**").  Thereafter, by a series of stipulations between the Parties, the Designated Contract Objection Deadline with respect to the USVI Operating Agreement was extended through and including May 21, 2022.  *See* Docket Nos. 1115, 1179, 1242, 1324.

      **A.     *Financial Assurance***

9.     The USVI Operating Agreement and that certain Operating Agreement with Limetree Bay Terminals, LLC ("**LBT**") dated December 1, 2015 ("**Terminal Operating Agreement**"), which pertains to the operation of the terminal facilities, contain provisions relating to financial assurances in favor of the USVI.  In particular, section 8.5(A) of the USVI Operating Agreement notes that the Terminal Operating Agreement required LBT to provide "financial assurance … in the amount of fifty million Dollars ($50,000,000)" ("**Financial Assurance**").  *See* Ex. B at § 8.5(A).

10.     The Financial Assurance came in the form of a letter of credit issued by Citibank N.A. ("**Citibank**") on January 11, 2016 (the "**Letter of Credit**").  A copy of the Letter of Credit

is attached hereto as <u>Exhibit C</u>.  The Letter of Credit names the government of the USVI as beneficiary and allows the beneficiary to draw on it by presenting a signed certificate establishing the cause for the draw (the "**Certificate**").  The form of Certificate required is attached hereto as <u>Exhibit D</u>.  The USVI Operating Agreement entitles LBR to benefit from the Letter of Credit to support the Financial Assurance obligations LBR has under the USVI Operating Agreement. *See* Ex. B at § 8.5(A).

11.     The USVI Operating Agreement further requires new Financial Assurance upon refinery restart (as defined in the agreement):

> Refinery Operator shall provide evidence of financial assurance (the "Financial Assurance") in an amount (the "Guaranteed Amount") equal to the lesser of (i) twenty five million Dollars ($25,000,000) and (ii) the net present value of the Minimum Payment for the balance of the Initial Term, discounted at ten percent (10%); provided, that notwithstanding the foregoing, the Financial Assurance will never be less than fifteen million Dollars ($15,000,000). The Financial Assurance will be available to support Refinery Operator's obligations under the Agreement with respect to Refinery Site Restoration and Payment Default. The Financial Assurance shall be in the form of (x) an irrevocable stand-by letter of credit covering the Guaranteed Amount to be issued by an international bank reasonably acceptable to the Government or (y) a guaranty from a parent company of Refinery Operator to the extent such parent company has an investment grade credit rating, in each case, in form and substance consistent with the terms of this Section 8.5.

Ex. B at § 8.5(B).

12.     Throughout its tenure, LBR relied upon the Letter of Credit to support its Financial Assurance obligations under the USVI Operating Agreement.

**B.     *Payment Default***

13.     The USVI Operating Agreement requires LBR to make quarterly payments based upon operation throughput, with a minimum annual payment that ranges between $0 to $14 million.  Payments are considered immediately due and payable at the end of each calendar quarter.

*See* Ex. B § 8.2(D).  Notwithstanding, a "Payment Default" under the USVI Operating Agreement

does not occur until an appropriate notice is issued:

> In the event that Refinery Operator [LBR] fails to make any payments due and owing to the Government [the USVI] under this Agreement, then the Government shall have the right to give written notice to Refinery Operator of such failure, and in the event that such payment is not cured within ninety (90) days of such written notice (such failure being a "Payment Default"), then:
>
> (A) the Government shall have the right to recover any outstanding payments from the issuer of the Financial Assurance …

("**Payment Default**").  *See* Ex. B at § 16.1(A).

14.     Payments under the USVI Operating Agreement vary depending on production. During a typical year, the minimum payment is $14 million. Concessions are made for years in which production volume is below eighty-five thousand (85,000) barrels per day (a "**Turn-down Year**") and years in which production volume is below ten thousand (10,000) barrels per day (a "**Severe Turn-down Year**").  During a Turn-down Year, the minimum payment drops to $10 million and, during a Severe Turn-down Year, the minimum payment decreases to $0.

15.     Due to the cessation of operations in May 2021, the Debtors did not meet projected production amounts under the USVI Operating Agreement and, as such, were not obligated to pay the minimum amounts owing thereunder; however, the USVI asserts that 2021 qualified as a Turn-down Year (as opposed to a Severe Turn-down Year) and, as such, the Debtors were obligated to pay the associated fees under the USVI Operating Agreement.  Prior to the cessation of operations, on March 30, 2021, LBR timely made its first quarterly payment under the USVI Operating Agreement in the amount of $2,263,013 (the "**March Payment**").

16.     LBR's next quarterly payment was due on June 30, 2021 (the "**June Payment**"). LBR; however, LBR was unable to remit the June Payment and, on July 12, 2021, the Debtors commenced the Chapter 11 Cases.  On the same date, in accordance with section 16.1 of the USVI

Operating Agreement, the USVI provided LBR with a notice of deficiency (the "**June Payment Deficiency Notice**") due to non-payment of the June Payment. If not invalidated by the automatic stay, the June Payment entered Payment Default under the USVI Operating Agreement on October 12, 2021—90 days after issuance of the June Payment Deficiency Notice. The USVI asserts that the Debtors missed two additional payments under the USVI Operating Agreement—namely, minimum installment payments for a Turn-down Year ($2,520,548 each) for the quarters ending September 30, 2021 (the "**September Payment**") and December 31, 2021 (the "**December Payment**").

17.     Due to the automatic stay, the USVI has not served deficiency notices with respect to the September Payment and December Payment. Without the notices being issued, the 90-day cure period was not triggered, and thus, the September Payment and December Payment are not in Payment Default; although, the USVI asserts that such payments are technically due and owing.

### C.     *Sale and Assumption and Assignment of USVI Operating Agreement*

18.     As discussed above, the Purchaser wishes to acquire LBR's rights under the USVI Operating Agreement. Per the terms of the APA, the Purchaser is responsible for the payment of any "amount[s] of cash required to be paid … to cure all defaults … to the extent required by Section 365 of the Bankruptcy Code and to otherwise satisfy all requirements imposed by Section 365 of the Bankruptcy Code" to effectuate the assumption and/or assignment of any executory contracts and unexpired leases, including the USVI Operating Agreement. APA at ¶ 3, Appendix 1. After extensive negotiations, the Parties have agreed to the assumption and assignment of the USVI Operating Agreement on the following terms:

     a.     The USVI consents to the assumption and assignment to Purchaser of the USVI Operating Agreement; *provided, however*, that such consent and the assumption and assignment to Purchaser of the USVI Operating Agreement is subject to the USVI recovering the Cure Amount (defined below) from the Letter of Credit, as

provided herein, and does not become effective until after the USVI has received payment on the first draw on the Letter of Credit for the June Payment.

b.  In the event the USVI is unable to recover the Cure Amount from the Letter of Credit, and Purchaser does not agree to fund any unpaid portion of the Cure Amount, the USVI may file a notice of nonpayment with respect to the Cure Amount in the Court (the "**Notice of Nonpayment**").  Upon the filing of the Notice of Nonpayment, the assumption and assignment of the USVI Operating Agreement shall be deemed void *ab initio* and the USVI Operating Agreement shall be deemed rejected as of the effective date of any confirmed chapter 11 plan.  Any Notice of Nonpayment must be served by December 31, 2022; *provided, however*, that a Notice of Nonpayment will not be served until the earlier of (i) December 15, 2022 or (ii) the exhaustion of all good faith efforts by the USVI to draw on the Letter of Credit, including litigation to receive payment in full of the Cure Amount; *provided, however*, that in no event shall the Debtors, their bankruptcy estates, or any liquidating trust established by the Debtors (the "**Liquidating Trust**") be obligated to pay or be subject to any litigation seeking to recover or compel payment of any "cure" payments.

c.  The Debtors shall stipulate to relief from the automatic stay under section 362 to permit the USVI (i) to serve LBR with deficiency notices with respect to the asserted non-payment of the September Payment and December Payment and (ii) draw on the Letter of Credit to satisfy the June Payment, September Payment and/or December Payment (collectively, the "**Operating Agreement Payments**").

d.  The USVI acknowledges and agrees that the right to seek payment from the Letter of Credit is the sole recourse for any "cure" payments due in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.

e.  The Debtors, the Purchaser, and West Indies Petroleum Limited are not guaranteeing payment of any "cure" amount or the ability to draw on the Letter of Credit in satisfaction of any "cure" obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement, nor are the Debtors assuming any responsibility for the payment of any "cure" obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.  Further, the Purchaser and West Indies Petroleum Limited are not committing to pay any such "cure" obligations.

f.  The USVI waives any and all administrative and secured claims against the Debtors and their respective estates arising under or related to the USVI Operating Agreement or any of the obligations thereunder, including, without limitation, any claim for payment of the Payments or associated obligations, any claim(s) asserted under proof of claim number 1535 filed by the USVI, and any administrative priority claims the USVI may have or seek to assert against the Debtors or their respective estates.  USVI's waiver of administrative and secured claims against the Debtors and their respective estates shall be binding and irrevocable regardless of

whether the USVI Operating Agreement is ultimately assumed and assigned to Purchaser or rejected.

19.     The USVI would like to move forward with the assumption and assignment to Purchaser of the USVI Operating Agreement on the terms proposed herein as the refinery represents a significant source of jobs and income for the USVI and its people. At the same time, the USVI desires to protect its bargained for rights under the USVI Operating Agreement, including the Financial Assurance. The Purchaser would like to realize the benefit of its purchase of LBR's assets, not the least of which is the ability to operate the Refinery, without subjecting itself to roughly $7.5 million in cure liability. The Debtors support the proposed resolution and assumption and the assignment of the USVI Operating Agreement consistent with the Sale Order and APA and subject to the terms discussed herein.

## Argument

20.     By this Motion, the Parties request entry of an agreed order, substantially in the form of the Proposed Order, granting limited relief from the automatic stay, approving the assumption and assignment by the Purchaser of the USVI Operating Agreement (and the execution of an assignment agreement in connection therewith), and authorizing the USVI to seek to draw on the Letter of Credit. The assumption and assignment of the USVI Operating Agreement is contingent solely upon the Court entering the Proposed Order.

### A.     *Limited Relief from the Automatic Stay is Warranted*

21.     The Parties respectfully ask the Court to lift the automatic stay as it pertains to the USVI in order to permit the USVI to serve the Debtors with deficiency notices with respect to the Operating Agreement Payments and, to the extent such relief is necessary, seek to draw on the Letter of Credit in payment of such amounts. Relief from the automatic stay may be granted "for cause …." 11 U.S.C. § 362(d)(1). Cause is not defined under the Bankruptcy Code, giving courts

the ability to define cause in a particular case.  *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citing *In re Murray Industries, Inc.*, 121 B.R. 635 (Bankr. M.D. Fla. 1990)); *see also Little Creek Dev. Co. v. Commonwealth Mtg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986). The Parties respectfully submit that "cause" exists to grant limited relief from the automatic stay to permit the parties to effectuate the assumption and assignment to Purchaser of the USVI Operating Agreement as proposed herein.  The relief requested permits the Debtors and Purchaser to cure any and all purported defaults under the USVI Operating Agreement and facilitate the assumption and assignment of the same to Purchaser, which facilitates the continued operation of the Refinery and availability of the associated employment opportunities.  Further, the relief requested does not impair or affect the Debtors' estates or increase the obligations thereof.  Rather, upon the lifting of the automatic stay, the USVI will issue deficiency notices for the September and December Payments and, to the extent deemed necessary, re-issue the June Payment Deficiency Notice. The issuance of these notices will trigger a 90-day cure period, after which all of the Operating Agreement Payments will appropriately be in Payment Default, which will enable the USVI to seek to draw on the Letter of Credit in satisfaction thereof.

**B.**     ***Assumption and Assignment of the USVI Operating Agreement should be Approved***

22.     Pursuant to Section 365, the Debtors may assume and assign to the Purchaser the USVI Operating Agreement in accordance with the Sale Order and APA, subject to the terms and conditions set forth herein.  11 U.S.C. § 365.  Such right, however, is subject to the Debtors promptly "curing" all defaults under the USVI Operating Agreement and compensating the USVI for any losses.  *See* 11 U.S.C. § 365(b)(1)(A), (b)(1)(B).  It is well-settled that an executory contract cannot be assumed in part and rejected in part. *Stewart Title Guar Co. v. Old Republic*

00714501.DOCX 7

*Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). If a debtor assumes a contract, it must do so *cum onere*, with all the benefits as well as the burdens. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000).

23.     Per the terms of the APA, the Debtors designated the USVI Operating Agreement for assumption and assignment to Purchaser to permit the Purchaser to acquire and exercise the rights of LBR thereunder in connection with the ownership and operation of the Refinery, as provided in and subject to the terms of the APA. The Debtors believe the assumption and assignment to the Purchaser of the USVI Operating Agreement serves the best interests of the Debtors and their respective estates in conjunction with the sale to Purchaser. The sale transaction conferred a substantial benefit on the Debtors' estates and creditors—facilitating the administration of substantially all assets of the Debtors' estates for $62 million. The sale of the Debtors' interests under executory contracts and unexpired leases designated for assumption and assignment were essential assets to the sale transaction. Further, the Debtors' estates no longer require and derive no benefit from the rights under the USVI Operating Agreement following the sale transaction.

24.     Further, the assumption and assignment to Purchaser of the USVI Operating Agreement resolves potentially liability of the Debtors' estates. More precisely, the USVI asserts that the Debtors currently owe **$7,534,247** (the "**Cure Amount**") under the USVI Operating Agreement, which is purportedly comprised of the following:

June Payment:          $2,493,151

September Payment:  $2,520,548

December Payment:   $2,520,548

Pursuant to proof of claim number 1535, the USVI contends that the Cure Amount is secured by certain assets of the Debtors. The Parties have agreed that the USVI shall accept in satisfaction of any and all obligations and prerequisites for the assumption and assignment to Purchaser of the USVI Operating Agreement under section 365 of the Bankruptcy Code, including the payment of any portion of the Cure Amount due and owing, the right under the USVI Operating Agreement, or any other document or agreement, to draw on the Letter of Credit in order to satisfy the asserted Cure Amount. The Debtors, the Purchaser, and West Indies Petroleum Limited are not guaranteeing the USVI's ability to draw such sums. Further, the Debtors, the Purchaser, and West Indies Petroleum Limited have not agreed and shall not be deemed obligated to support the USVI in its efforts to recover from the Letter of Credit. Finally, under the APA and Sale Order, Purchaser remains ultimately responsible for the payment of cure amounts, if any, due in association with the assumption and/or assignment to Purchaser of the USVI Operating Agreement, but for the avoidance of doubt, the Purchaser and West Indies Petroleum Limited are not committing to pay any such cure amounts.

25.     Upon entry of the Proposed Order, but in no event later than Three (3) business days thereafter, the USVI shall issue a Certificate for the June Payment (the "**June Certificate**") to draw on the Letter of Credit. After the September and December Payments have appropriately entered Payment Default, the USVI will issue a Certificate for the September and December Payments (the "**September and December Certificate**", and, together with the June Certificate, the "**Proposed Certificates**") to draw such additional amounts on the Letter of Credit. The Proposed Certificates shall be in substantially the same form as the Certificates attached hereto as Exhibit E. The USVI further requests that this Court allow it to issue any further Certificates that may be required to fully cure any other Payment Defaults that may arise. Any future Certificates

issued would be in substantially the same form as the Proposed Certificates, with varying draw amounts.

26.     Further, upon the USVI issuing the June Certificate and successfully drawing on the Letter of Credit for the June Payment, the Parties request that this Court allow the assumption and assignment of the USVI Operating Agreement to the Purchaser and any other USVI entity the Purchaser may establish through the signing of the Assignment and Assumption Agreement attached hereto as Exhibit F.  Additionally, as further assurance of future performance, the Parties request that this Court require the Purchaser, pursuant to the terms of the USVI Operating Agreement, to obtain new Financial Assurance compliant with Section 8.5(B) of the USVI Operating Agreement upon certain refinery equipment becoming operational ("**Refinery Restart**").  Thereafter, any obligations for new Financial Assurance shall be governed by the terms of the USVI Operating Agreement or any applicable agreements by and between the USVI and Purchaser.

27.     Based upon the forgoing, the Debtors respectfully submit that the assumption and assignment to the Purchaser of the USVI Operating Agreement pursuant to the terms discussed herein serves the best interests of the Debtors' estate and their respective creditors.

### Waiver of Bankruptcy Rule 6004(h) Stay

28.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale or, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  To the extent applicable, the Debtors request that the Court waive the 14-day stay under Bankruptcy Rule 6004(h) and order that the relief requested herein take immediate effect.

/ / /

### Request for Emergency Relief

29.     The Debtors respectfully submit that emergency consideration of this Motion is warranted to allow the Debtors to obtain an order approving the assumption and assignment to Purchaser of the USVI Operating Agreement before confirmation of the proposed chapter 11 plan.

### Notice

30.     Notice of this Motion will be provided to the Master Service List, including: (a) the U.S. Trustee; (b) all secured creditors; (c) the Offices of the Attorney General of the State of Texas and the United States Virgin Islands; (d) the thirty (30) largest consolidated unsecured creditors for the Debtors; (e) the Debtors' identified, interested taxing authorities, including the Internal Revenue Service; (f) the Debtors' identified, interested government and regulatory entities; (g) other interested parties as identified by the Debtors; (h) the Committee members and their counsel, if known; (i) counsel to the Committee; (j) Citibank; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The method of service for each party will be described more fully in the certificate of service prepared by the Debtors' claims and noticing agent.  The Debtors submit that no other or further notice is required.

### No Prior Request

31.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder Intentionally Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto, granting the Motion and granting all other relief that is appropriate under the circumstances.

Dated: May 16, 2022

**BAKER & HOSTETLER LLP**

*/s/ Jorian Rose*
**Elizabeth A. Green, Esq.**
Fed ID No.: 903144
SunTrust Center, Suite 2300
200 South Orange Avenue
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
Email: egreen@bakerlaw.com

**Jorian Rose, Esq.**
*Admitted Pro Hac Vice*
N.Y. Reg. No. 2901783
45 Rockefeller Plaza
New York, New York 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
Email: jrose@bakerlaw.com

**Michael T. Delaney, Esq.**
*Admitted Pro Hac Vice*
OH Bar No. 99790
Key Tower, 127 Public Square
Suite 2000
Cleveland, OH 44114
Telephone: 216.621.0200
Facsimile: 216.696.0740
Email: mdelaney@bakerlaw.com

*Counsel for the Debtors and Debtors in Possession*

**HAVING REVIEWED AND CONSENTED:**

Daniel J. McGuire (admitted *pro hac vice*)
Illinois Bar No. 6239526
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
Email: DMcGuire@winston.com

Geoffrey P. Eaton (admitted *pro hac vice*)
DC Bar No. 473927
Winston & Strawn LLP
1901 L Street, N.W.
Washington, D.C. 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: GEaton@winston.com

Katherine A. Preston
Texas State Bar No. 24088255
Winston & Strawn LLP
Southern Dist. of Texas Bar No. 26969884
800 Capitol Street, Suite 2400
Houston, TX 77002
Tel: (713) 651-2600
Fax: (713) 651-2700
Email: KPreston@winston.com

*Counsel for the United States Virgin Islands*

**-AND-**

Jaime B. Leggett (admitted *pro hac vice*)
Fla. Bar No. 1016485
Bast Amron LLP
SunTrust International Center
One Southeast Third Avenue, Ste. 1400
Miami, FL 33131
Tel: (305) 379-7904
Email: jleggett@bastamron.com

Jeffrey P. Bast (admitted *pro hac vice*)
Fla. Bar No. 996343
Bast Amron LLP

SunTrust International Center
One Southeast Third Avenue, Ste. 1400
Miami, FL 33131
Tel: (305) 379-7904
Email: jbast@bastamron.com

*Counsel for Port Hamilton Refining and Transportation, LLLP and West Indies Petroleum Limited*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Jorian Rose*
Jorian Rose

## Certificate of Service

I certify that on May 16, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Jorian Rose*
Jorian Rose

## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| IN RE: | **CHAPTER 11** |
| **LIMETREE BAY SERVICES, LLC**, *et al.*,[1] | **CASE NO.: 21-32351 (DRJ)** |
| Debtors. | **(Jointly Administered)** |

**ORDER GRANTING DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF ORDER
(I) GRANTING RELIEF FROM THE AUTOMATIC STAY AND (II) APPROVING
<u>ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACT</u>**

Upon motion ("**Motion**")[2] of the debtors and debtors in possession herein (collectively, the "**Debtors**") for entry of an order (this "**Order**") granting the USVI limited relief from the automatic stay, (ii) approving the assumption by the Debtors and assignment to the Port Hamilton Refining and Transportation, LLLP (the "**Purchaser**") of that certain Refinery Operating Agreement dated July 2, 2018 by and between Limetree Bay Refining, LLC and the United States Virgin Islands (the "**USVI Operating Agreement**"), a copy of which is attached to the Motion as <u>Exhibit B</u>, and (iii) granting related relief set forth herein; and the Court having jurisdiction to consider the Motion and the and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to all required parties and it appearing that no further notice need be provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors and their estates; and the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Limetree Bay Services, LLC (1866); Limetree Bay Refining Holdings, LLC (1776); Limetree Bay Refining Holdings II, LLC (1815); Limetree Bay Refining, LLC (8671); Limetree Bay Refining Operating, LLC (9067); Limetree Bay Refining Marketing, LLC (9222). The Debtors' mailing address is Limetree Bay Services, LLC, 11100 Brittmoore Park Drive, Houston, TX 77041.
[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay of section 362 of the Bankruptcy Code is hereby modified to allow USVI to issue default notices for the September Payment and December Payment under the USVI Operating Agreement.  Based on the foregoing modification of the automatic stay, the USVI may issue the Proposed Certificates seeking to draw on the Letter of Credit for the Operating Agreement Payments, including, without limitation, certificates in the form attached to the Motion as Exhibit E.

3.      The USVI Operating Agreement shall be assumed and assigned from the Debtors, as applicable to the Purchaser, or any other USVI entity as identified by Purchaser to act as assignee, effective as of receipt by the USVI of funds from the first draw on the Letter of Credit, pursuant to Section 365 of the Bankruptcy Code; *provided, however*, upon the filing of a Notice of Nonpayment, the assumption and assignment of the USVI Operating Agreement shall be deemed void *ab initio* and the USVI Operating Agreement shall be deemed rejected as of the effective date of any confirmed chapter 11 plan; *provided, further*, that any Notice of Nonpayment must be served by December 31, 2022; *provided, however*, that a Notice of Nonpayment will not be served until the earlier of (i) December 15, 2022 or (ii) the exhaustion of all good faith efforts by the USVI to draw on the Letter of Credit, including litigation to receive payment in full of the Cure Amount.  In no event shall the Debtors, their bankruptcy estates, or any liquidating trust established by the Debtors (the "**Liquidating Trust**") be obligated to pay or be subject to any

litigation seeking to recover or compel payment of any "cure" payments associated with the assumption or assignment of the USVI Operating Agreement.

4.      The USVI acknowledges and agrees that the right to seek payment from the Letter of Credit is the sole recourse for any "cure" payments due in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.  The Debtors, the Purchaser, and West Indies Petroleum Limited are not and shall not be deemed to have guaranteed payment of any "cure" amounts or the ability, if any, for the USVI to draw on the Letter of Credit in satisfaction of any Cure Amount or other obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement.  The Debtors are not assuming any responsibility for the payment of any Cure Amount or other obligations in connection with the assumption and assignment to Purchaser of the USVI Operating Agreement; *provided, further,* that Purchaser and West Indies Petroleum Limited are not committing to pay any such "cure" obligations.  The Purchaser, West Indies Petroleum Limited, and the Debtors shall not assume any liability for the Payment Defaults, the Cure Amount, or any amounts required to cure existing defaults under the USVI Operating Agreement.

5.      Upon entry of this Order, the USVI shall be deemed to have waived any and all administrative or secured claims against the Debtors and their respective estates arising under or related to the USVI Operating Agreement or any of the obligations thereunder, including, without limitation, any claim for payment of the Operating Agreement Payments or associated obligations, any claim(s) asserted under proof of claim number 1535 filed by the USVI in the Chapter 11 Cases, and any administrative priority claims against the Debtors or their respective estates.  USVI's waiver of administrative and secured claims against the Debtors and their respective estates shall

00714501.DOCX 7
G:\share\LVanderWeide\Limetree Motion to Assume and Assign LBR Operating Agreement 5.17.2020 - conforming change.docx

22

be binding and irrevocable regardless of whether the USVI Operating Agreement is ultimately assumed and assigned to Purchaser or rejected.

6.       Upon Refinery Restart, the Purchaser must obtain new Financial Assurance in accordance with Section 8.5(B) of the USVI Operating Agreement.

7.       The Debtors are authorized and empowered to enter into and take any and all actions necessary to carry out and effectuate the terms, conditions and provisions of this Order.

8.       The fourteen (14) day stay of effectiveness imposed by Bankruptcy Rule 6004(h) is hereby waived and the relief granted herein shall take effect immediately upon entry of this Order.

9.       This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and interpretation of this Order.

Dated: _____, 2022
          Houston, Texas

                                        _____
                                        THE HONORABLE DAVID R. JONES
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE

00714501.DOCX 7
G:\share\LVanderWeide\Limetree Motion to Assume and Assign LBR Operating Agreement 5.17.2020 - conforming change.docx

23

**EXHIBIT B**

**USVI Operating Agreement**

# APPENDIX B

**Refinery Operating Agreement by and Among the Government of the Virgin Islands and Limetree Bay Refining, LLC**

*Execution Copy*

# REFINERY OPERATING AGREEMENT

## BY AND AMONG

## THE GOVERNMENT OF THE U.S. VIRGIN ISLANDS

## AND

## LIMETREE BAY REFINING, LLC

July 2, 2018

# TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS AND CONSTRUCTION ........................................................... 9

 Section 1.1. Definitions ...................................................................... 9

 Section 1.2. Agreement Components ................................................ 21

 Section 1.3. Agreement Interpretation ............................................. 21

ARTICLE 2 TERM OF AGREEMENT ............................................................................ 22

 Section 2.1. Effective Date ............................................................... 22

 Section 2.2. Initial Term ................................................................... 22

 Section 2.3. Extension of Term ......................................................... 22

 Section 2.4. End of Term .................................................................. 22

ARTICLE 3 CLOSING; CLOSING CONDITIONS; TERMINATION BEFORE
CLOSING ............................................................................................... 22

 Section 3.1. Time and Place of Closing ............................................. 22

 Section 3.2. Conditions to Closing ................................................... 23

 Section 3.3. Closing Deliveries ......................................................... 24

 Section 3.4. Termination Before Closing .......................................... 25

ARTICLE 4 REFINERY PERMITS ................................................................................ 26

 Section 4.1. Permits ......................................................................... 26

ARTICLE 5 OPERATION OF THE REFINERY .............................................................. 28

 Section 5.1. Independent Operation and Non-Interference ............. 28

 Section 5.2. Refinery Operations ...................................................... 29

ARTICLE 6 ADDITIONAL OPERATING PROVISIONS ................................................. 29

 Section 6.1. [RESERVED] .................................................................. 29

2

Section 6.2.    [RESERVED] ....................................................................... 29

Section 6.3.    Submerged Lands ............................................................... 29

Section 6.4.    Refinery Obligations .......................................................... 31

ARTICLE 7 EMPLOYMENT ........................................................................ 33

Section 7.1.    Minimum Commitment ..................................................... 33

Section 7.2.    Resident Employment ........................................................ 34

Section 7.3.    Hiring Preferences ............................................................. 34

Section 7.4.    Non-Discrimination ........................................................... 34

Section 7.5.    Training and Continuing Education .................................... 35

ARTICLE 8 FINANCIAL OBLIGATIONS OF REFINERY OPERATOR .............. 35

Section 8.1.    Closing Payment and Related Payments ............................. 35

Section 8.2.    Quarterly Refinery Payment ............................................... 35

Section 8.3.    Payment Recalibration ....................................................... 39

Section 8.4.    Charitable Commitments .................................................... 40

Section 8.5.    Financial Assurance ........................................................... 40

Section 8.6.    Government Carried Interest in Refinery Operator ............. 40

Section 8.7.    Fuel Oil Pricing .................................................................. 41

ARTICLE 9 SECURITY INTEREST ............................................................... 41

Section 9.1.    Payments Secured By Lien ................................................. 41

Section 9.2.    All Necessary Actions ........................................................ 43

Section 9.3.    No Encumbrances .............................................................. 43

ARTICLE 10 INSURANCE ........................................................................... 43

Section 10.1.   General Insurance .............................................................. 43

Section 10.2.   Insurance Requirements ..................................................... 44

3

ARTICLE 11 TAX AND FEE EXEMPTIONS ............................................................. 46

    Section 11.1.  Scope of Exemption ............................................................ 46

    Section 11.2.  Exemptions ...................................................................... 46

    Section 11.3.  Limitations on Exemption ................................................. 48

    Section 11.4.  Tax Return Filings ............................................................ 48

    Section 11.5.  No Adverse Actions .......................................................... 48

ARTICLE 12 REPRESENTATIONS AND WARRANTIES ...................................... 49

    Section 12.1.  Government Representations ............................................. 49

    Section 12.2.  Refinery Operator Representations .................................... 50

ARTICLE 13 COVENANTS OF REFINERY OPERATOR ...................................... 51

    Section 13.1.  Environmental .................................................................. 51

    Section 13.2.  Consents and Approvals ................................................... 53

    Section 13.3.  Indemnification ................................................................ 53

    Section 13.4.  Intercompany Agreements ................................................ 54

ARTICLE 14 GOVERNMENT COVENANTS ......................................................... 54

    Section 14.1.  Assistance with Permits ................................................... 54

    Section 14.2.  Consents and Approvals ................................................... 55

    Section 14.3.  Beneficial Use .................................................................. 55

    Section 14.4.  Other Legislation ............................................................. 56

    Section 14.5.  Change in Law ................................................................. 56

    Section 14.6.  Other Benefits .................................................................. 56

    Section 14.7.  No Additional Cost to Refinery Operator ......................... 57

    Section 14.8.  Zoning; Legal Descriptions .............................................. 57

    Section 14.9.  Security ............................................................................ 57

4

ARTICLE 15 REPORTING, AUDIT AND INSPECTION ................................................. 58

    Section 15.1.   Reporting ........................................................................................ 58

    Section 15.2.   Annual Audit ................................................................................. 58

    Section 15.3.   Inspection ..................................................................................... 58

ARTICLE 16 DEFAULT AND TERMINATION ........................................................... 59

    Section 16.1.   Payment Default ........................................................................... 59

    Section 16.2.   RESERVED .................................................................................. 59

    Section 16.3.   Termination ................................................................................... 59

    Section 16.4.   Rights and Remedies Cumulative ................................................ 61

ARTICLE 17 CONFIDENTIALITY ............................................................................... 61

    Section 17.1.   Confidentiality .............................................................................. 61

ARTICLE 18 FORCE MAJEURE .................................................................................. 62

    Section 18.1.   Force Majeure Events ................................................................... 62

    Section 18.2.   Burden of Proof ............................................................................ 63

    Section 18.3.   Excused Performance ................................................................... 63

    Section 18.4.   Applicability ................................................................................. 64

ARTICLE 19 MISCELLANEOUS ................................................................................. 64

    Section 19.1.   Notices, Requests and Communications ...................................... 64

    Section 19.2.   Assignment ................................................................................... 65

    Section 19.3.   Governing Law ............................................................................. 67

    Section 19.4.   Dispute Resolution ....................................................................... 67

    Section 19.5.   Commercial Act ............................................................................ 68

    Section 19.6.   Limitation on Liability ................................................................. 68

    Section 19.7.   Entire Agreement; Subsequent Amendments ............................... 69

Section 19.8.  Severability of Provisions.................................................................. 69

Section 19.9.  Payment Terms and Interest Calculation.............................................. 69

Section 19.10. Public Announcements...................................................................... 69

Section 19.11. Parties in Interest............................................................................. 69

Section 19.12. Waiver............................................................................................ 70

Section 19.13. Performance Extended to Next Business Day...................................... 70

Section 19.14. Negotiation and Preparation Costs.................................................... 70

Section 19.15. Further Assurances........................................................................... 70

Section 19.16. Counterparts.................................................................................... 70

## REFINERY OPERATING AGREEMENT

THIS OPERATING AGREEMENT (the "*Agreement*") is hereby made as of July 2, 2018, by and among the Government of the U.S. Virgin Islands (the "*Government*") and Limetree Bay Refining, LLC, a limited liability company existing under the laws of the U.S. Virgin Islands ("*LB Refining*", and as further defined herein, "*Refinery Operator*"). The Government and Refinery Operator are hereinafter sometimes individually referred to as a "*Party*" and sometimes hereinafter collectively referred to as "*Parties*".

## RECITALS

**WHEREAS**, the Government and Limetree Bay Terminals, LLC ("*Terminal Operator*") have entered into that certain Operating Agreement, dated December 1, 2015 and approved by the Legislature of the U.S. Virgin Islands on December 30, 2015 (as supplemented and clarified by letter agreements dated December 30, 2015 and January 26, 2016, the "*Original Terminal Operating Agreement*");

**WHEREAS**, under the Original Terminal Operating Agreement, Terminal Operator, as inducement to take ownership of, develop, operate, and maintain the Oil Refinery and Related Facilities, located at Limetree Bay, St. Croix, U.S. Virgin Islands, and in order to promote the public interest in the economic growth and development of the U.S. Virgin Islands, was granted rights to conduct the business of the Oil Refinery and Related Facilities and was exempted from certain taxes, duties, and other fees;

**WHEREAS**, Terminal Operator has restarted and is currently operating the Terminal at the Oil Refinery and Related Facilities;

**WHEREAS**, in the Original Terminal Operating Agreement, Terminal Operator committed to devote not fewer than eighteen (18) months to "evaluate the prospects" of a Refinery Restart, and to "take all commercially reasonable efforts to facilitate" such Refinery Restart;

**WHEREAS**, in January 2018, Terminal Operator informed the Government that Terminal Operator had identified and entered into negotiations with one or more large petroleum companies interested in participating in feedstock supply, product offtake and financial participation in a Refinery Restart ;

**WHEREAS**, in order to facilitate a Refinery Restart, Terminal Operator will enter into a transfer and assignment agreement (the "*Refinery Transfer Agreement*") with Refinery Operator, an indirect subsidiary of Limetree Bay Ventures, LLC, and an Affiliate under common ownership with Terminal Operator, pursuant to which Terminal Operator will transfer certain rights granted to it under the Original Terminal Operating Agreement in connection with the Refinery and the Refinery Site to Refinery Operator;

7

WHEREAS, to further facilitate a Refinery Restart, Terminal Operator has asked the Government to enter into a new Refinery Operating Agreement to reflect that the Refinery and the Refinery Site will be acquired, held and operated by Refinery Operator, rather than by Terminal Operator, and to govern the contractual relationship between the Government and Refinery Operator in its capacity as owner of the Refinery and the Refinery Site;

WHEREAS, the Government has determined that the Refinery Restart is critical to the economic well-being of the Territory, and will bring tax revenues, employment, and increased commercial activity that will benefit the Government and the people of the U.S. Virgin Islands;

WHEREAS, Refinery Operator has agreed to evaluate further the prospects of a Refinery Restart and to take all commercially reasonable measures to facilitate such Refinery Restart, and in furtherance of this objective has been engaged in discussions with one or more qualified and experienced international companies for feedstock supply, product offtake and financial participation in a Refinery Restart;

WHEREAS, Refinery Operator has agreed that if no such use for the Refinery can be identified within sixty (60) months following the closing of the transactions contemplated by this Agreement (as such period may be extended pursuant to the terms hereof), it will (at the Government's option) dismantle the Refinery in accordance with this Agreement, and Terminal Operator has agreed to perform such dismantling in the event that Refinery Operator fails to do so for any reason;

WHEREAS, Refinery Operator and Terminal Operator and certain Affiliates thereof shall enter into a shared services agreement with respect to certain facilities, access, use, permits and services to be shared by, or provided by Refinery Operator to, Terminal Operator, or by Terminal Operator to Refinery Operator, as the case may be (either directly or through a third party) in respect of, *inter alia*, the Shared Services Systems, including but not limited to fire control system management, power supply and process and potable water supply (the "*Shared Services Systems Agreement*");

WHEREAS, in order to protect the interests of the Territory, and to reflect the importance of the Government's role in facilitating the successful operation of the Refinery, the Government wishes to take a financial stake in the success of the new venture, which shall be in the form of a fee payable upon a Refinery Change of Control and shall not include any governance or management role; and

NOW, THEREFORE, in consideration of the premises and the mutual promises and covenants contained herein, the receipt and sufficiency of which are hereby acknowledged, and intending hereby to be legally bound, the Government and Refinery Operator hereby agree and stipulate as follows:

8

# ARTICLE 1
## DEFINITIONS AND CONSTRUCTION

Section 1.1.   **Definitions.** As used in this Agreement, the following terms have the respective meanings set forth below or set forth in the Articles referenced below.

"*1998 Letter Agreement*" shall mean that certain Letter Agreement entered into by and between HOVIC and the Government, dated October 14, 1998.

"*Affiliate*" or "*Affiliates*" shall mean, with respect to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, such Person; provided that, for the purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by Contract (including, a shareholders' agreement or a members' agreement between Persons who have an interest in an Affiliate) or otherwise.

"*Agreement*" shall have the meaning set forth in the Preamble.

"*Amended Terminal Operating Agreement*" shall mean that certain Amended and Restated Terminal Operating Agreement, dated as of the date hereof, by and between Terminal Operator, as Terminal Operator, and the Government of the U.S. Virgin Islands, as the Government, as further amended, amended and restated, supplemented or modified from time to time.

"*Annual Audit*" shall have the meaning set forth in Section 15.2(A).

"*Annual Audit Report*" shall have the meaning set forth in Section 15.2(B).

"*Applicable Law*" shall mean any present or future constitution, law, statute, ordinance, order, injunction, administrative and/or judicial order or decree, code, rule, regulation, or Authorization, or any amendments thereto, and any voluntary cleanup program and/or brownfields program of any Governmental Authority (excluding any such legislative, judicial or administrative body or instrumentality acting in any capacity as a lender, guarantor or mortgagee) applicable to a Party or its Affiliate or the subject matter of this Agreement.

"*Applicable Product Price*" shall have the meaning set forth in Section 8.2(F).

"*Argus*" shall have the meaning set forth in Section 8.2(F).

"*Argus Indices*" shall have the meaning set forth in Section 8.2(F).

"*ASCI Price*" shall have the meaning set forth in Section 8.2(C).

9

"*Authorization*" shall mean any licenses, certificates, permits, orders, approvals, consents, determinations, variances, franchises, and authorizations from any Governmental Authority.

"*Base Margin*" shall have the meaning set forth in Section 8.2(C).

"*Business Day*" shall mean Monday through Friday of each week, except that a legal holiday recognized as such by the Government (including, for the avoidance of doubt, any administrative leave day granted by the Government for the entire U.S. Virgin Islands) shall not be regarded as a Business Day, and a "*Day*" shall be any calendar day.

"*Castilla Blend Price*" shall have the meaning set forth in Section 8.2(C).

"*Carried Interest*" shall have the meaning set forth in Section 8.6(A).

"*Change in Law*" shall mean any of the following events occurring after the date of execution of this Agreement:

(a)      a change to, or repeal of, any existing Applicable Law;

(b)      the promulgation of any new Applicable Law; or

(c)      any withdrawal or amendment of any Authorization other than:

    (i)      in accordance with the terms upon which it was originally granted;

    (ii)     as a result of a material failure by Refinery Operator to comply with a material condition of the applicable Authorization; or

    (iii)    as a result of any unlawful act or omission of Refinery Operator.

"*Clean Air Act Consent Decree*" shall mean the Consent Decree entered on June 7, 2011 in *United States of America and The United States Virgin Islands v. HOVENSA, L.L.C.* (Civ. No. 1:11-cv-00006) (D.V.I., St. Croix Div.), as may be amended by the court from time to time.

"*Closing*" shall have the meaning set forth in Section 3.1(A).

"*Closing Date*" shall have the meaning set forth in Section 3.1(B).

"*Closing Payment*" shall have the meaning set forth in Section 8.1

"*Closing Payment Balance*" shall be determined at the end of each calendar quarter and shall be equal to (a) as of the end of the first calendar quarter during which Closing occurs, (i) the product of (x) the Closing Payment and (y) the Closing Payment Interest Rate (prorated for the actual days in that time period relative to a full calendar quarter), *plus* (ii) the Closing Payment and (b) as of the end of each calendar quarter thereafter, (i) the product of (x) the

10