IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LIMETREE BAY TERMINALS, LLC; WEST )<br>INDIES PETROLEUM LIMITED; PORT )<br>HAMILTON REFINING & TRANSPORTATION, )<br>LLLP; and TRANSITION REFINERY ENTITY, )<br>LLC, )<br>)<br>Defendants. ) | CASE NO. 1:21-cv-00264 (EAH) |

## WEST INDIES PETROLEUM LIMITED'S RESPONSE TO PLAINTIFF'S MOTION TO DIRECT DEFENDANTS TO ABIDE BY THE JOINT STIPULATION IN ACCORDANCE WITH THE BANKRUPTCY SALE ORDER

NOW COMES, West Indies Petroleum Limited ("WIPL") and files this response to the United States' August 10, 2023, "Motion to Direct Defendants to Abide by the Joint Stipulation in Accordance with the Bankruptcy Sale Order (ECF Doc. 47).

## INTRODUCTION

This case concerns the United States' attempt to bind purported transferees of the St. Croix oil refinery property and operation to certain environmental obligations, originally established against former owner/operator Limetree Bay Refining and Limetree Bay Terminals (collectively, "Limetree Bay"). Following Limetree Bay Refining's Chapter 11 bankruptcy filing in 2021, Port Hamilton Refining and Transportation, LLLP ("PHRT") took title to the refinery property and

other assets, and is the sole entity in possession and control of that property and other assets. PHRT has admitted to this and other Courts that it alone has possession and control of the property and that it alone is responsible for obligations concerning its operation. WIPL has told the United States repeatedly and has proven by furnishing the property deed, which is not in dispute, that WIPL did not take possession or control of the refinery property. PHRT's exclusive right to take title to the refinery property, and to operate it, was expressly recognized in the Bankruptcy Court's order approving the sale.

As a practical matter, and as a legal matter, WIPL -- a nonowner -- is not in possession or control of the refinery and thus is incapable of carrying out any provision of the Joint Stipulation (ECF Doc. 2). Neither possession nor control were ever transferred to WIPL. As such, the United States' motion should be denied as to WIPL.

## FACTS

The United States' motion hinges on the United States Bankruptcy Court's order approving the sale ("Sale Order") of the assets of Limetree Bay Refining, LLC ("LBR")(see Flint Dec. Ex. 1). The Sale Order refers to WIPL and PHRT as "together, the 'Purchaser,'" and also as "Winning Bidder." *Id* p. 2.

The Sale Order states: "the Purchaser must become party to (i) the Consent Decree as modified by the First Modification and Second Modification in *United States and the United States Virgin Islands v. HOVENSA L.L.C*, Civ. No. 1:11-cv-

00006, in the United States District Court of the Virgin Islands, St. Croix Division (the "Consent Decree"), and (b) the Joint Stipulation in *United States v. Limetree Bay Refining, LLC, and Limetree Bay Terminals, LLC*, Civ. No. 1:21-cv-00264 (as each may be amended with the mutual consent of the parties)[.]" *Id* ¶ 11.

The United States does not discuss the next clause of the same paragraph in the Sale Order, which states: "Purchaser **shall not become liable for any obligations**, other than air monitoring obligations, under such Consent Decree or Joint Stipulation **that do not relate to property or units purchased or to be operated by Purchaser** pursuant to this Sale Order by reason of so becoming a party to such Consent Decree or Joint Stipulation. ..." *Id* (emphasis added).[1]

Despite the pre-closing designation in the Sale Order as one of two "Purchasers," WIPL did not take title to any refinery property, units, or other assets, and has never owned, operated, or controlled the refinery in any respect. That is because the Sale Order required conveyance of refinery assets to PHRT, not WIPL. "The transfer of the Purchased Assets to the Purchaser with Purchaser taking title in PHRT pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing ... ." *Id* ¶ 12 (emphasis added).

---

[1] The Sale Order further states that WIPL is not a successor to LBR. Sale Order at Art. Y ("Neither the Purchaser or any of its affiliates are successors to the Debtors or their estates by reason of any theory of law or equity[.]") The Sale Order prohibits the "Purchaser" from being placed in the position of seller (or the sellers' predecessors) prior to Closing. (Sale Order at XVI, ¶ 25 ("all entities or persons are permanently and forever prohibited...from asserting against the Purchaser ... any Lien, Claim, or Interest of any kind whatsoever arising prior to Closing, including, without limitation, under any theory of successor or transferee liability")).

The Asset Purchase Agreement ("APA"), approved and referenced by the Bankruptcy Court as described immediately above, required a deed at closing. "At the Closing, Sellers shall deliver or cause to be delivered to Purchaser ... a properly executed deed in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property ... ." APA ¶ 3.4(a)(iv) (full copy attached as Stutzman Decl. **Ex. A-1**)(Case 21-32351, ECF Doc. 977-1 filed in the United States Bankruptcy Court of the Southern District of Texas Dec. 21, 2021).

PHRT, and PHRT alone, took title to the refinery property upon closing. See Deed and Bill of Sale, attached as Stutzman Decl. **Ex. A-2**. PHRT is also the sole party to operational contracts and permits, by assignment in the APA. See Stutzman Decl. Ex. A-1, Case 21-32351 Doc. 977-1 (p. 59 of 103)(Assignment and Assumption Agreement incorporated in the APA). "[E]ach Seller hereby sells ... all of such Seller's right, title and interest in and to the Business Contracts and Business Permits ... **with title to the Business Contracts and Business Permits being held in PHRT and PHRT becoming the counterparty** to such Business Contracts and Business Permits." *Id* (emphasis added).

PHRT, a separate and independent entity organized under the laws of the Virgin Islands, has stated in various Virgin Islands court proceedings that it is the sole owner and operator of the refinery. See Stutzman Decl. **Ex. A-3** (copy of V.I. Division of Corporations entity status report). PHRT's statements as to its

ownership of the refinery and autonomy in refinery operations have been numerous, consistent, and without caveat. See e.g. 1:21-cv-00264, ECF Doc. 27 n. 1 ("At closing, WIPL did not take title to any of the assets; only PHRT took title"); PHRT Answer to Second Amended Complaint in Superior Court Case No. SX-22-cv-00227 SAC ¶¶ 10-15, 65-66 (attached as Stutzman Decl. **Ex. A-4**)(wherein PHRT avers that PHRT acts independently in operating the refinery, that PHRT alone is responsible for payment on the certain service agreements with refinery facility neighbor Limetree Bay Terminals, and that PHRT has paid millions on its own prerogative pursuant to said agreements); ECF Doc. 55, n. 16 in 1:11-CV-00006 (PHRT motion for informal status conference)("[t]he 2021 Sale Order defined the "Purchaser" as both Port Hamilton and West Indies Petroleum Limited. … However, West Indies Petroleum Limited never acquired any of the refinery assets"); and ECF Doc. 71 (1:11-CV-00006), p. 3 ("Port Hamilton owns the refinery that is a significant topic of the consent decree. It also owns the air monitors that must be operated under the consent decree"). Additionally, PHRT filed a notice of election for LBR to reorganize as Transition Refinery Entity, LLC ("TRE") (Case No. 21-32351, ECF No. 1276, Stutzman Decl. **Ex. A-5**) and PHRT to receive 100% of the membership interests in TRE. In that same document, PHRT referred to itself (alone) as "Purchaser." *Id.* The Confirmation Order provided that "Limetree Bay Refining, LLC … shall survive as the Transition Refinery Entity" (Confirmation

Order at Art. G.e.6.d., Case No. 21-32351, ECF No. 1454). The confirmed plan became effective on June 10, 2022. (Case No. 21-32351, ECF No. 1511.)

The Joint Stipulation requires the refinery owner/operator to, among other things, certify that the refinery has been idled, notify the United States and the Court before restarting the refinery, submit a plan for corrective measures at the refinery, identify any changed conditions at the refinery, install air monitors and submit an air monitoring plan, and submit a Hydrocarbon Purge Plan. ECF Doc. 2.

In colloquial terms, nonowner/nonoperator WIPL (members of which were early investors in the project) does not have, and never has had, the keys to the refinery. See Danville Walker Affidavit, **Ex. B**. Nor do WIPL or its members control PHRT. *Id.* As such, WIPL's compliance with the Joint Stipulation is impractical if not impossible. WIPL maintains that its substitution into this matter was error because no legally significant interest was transferred to WIPL.

## LEGAL STANDARD

When interpreting another court's order, courts "apply traditional principles of contract law and look to the intent of the issuing court." *In re 1701 Com., LLC*, 2014 WL 4657314, at *9 (Bankr. N.D. Tex. Sept. 17, 2014)(quoting *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 263 (2nd Cir. 2011)). A court must interpret another court's order as a whole and give reasonable meaning and effect to all its parts and provisions. *Id.*

## DISCUSSION

A. The United States' Motion should be denied because WIPL has no control over refinery assets or operations, and thus has no power to abide by the Joint Stipulation.

The United States has an incorrect view of the Sale Order. The Sale Order expressly states that WIPL is not a successor to the prior refinery owner/operator. Thus, the issue is whether WIPL acquired the interest the original corporate party had in the lawsuit – which in this case is the refinery. Under Virgin Islands law, a person or entity may transfer ownership of real property only by a written deed or similar instrument. *Harvey v. Christopher*, 55 V.I. 565, 574 (V.I. 2011)(citing 28 V.I.C. § 241(a)(2)). A deed is required under the Statute of Frauds, which speaks directly to the issue before this Court:

> [N]o estate or **interest in real property** . . . **can be** created, granted, assigned, **transferred**, surrendered, or declared, **otherwise than by** operation of law; or by **a deed of conveyance or other instrument in writing**, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law.

28 V.I.C. § 241(a) (emphasis added). Thus, a deed was required to consummate the transfer of the refinery, and that deed was made to PHRT pursuant to the Sale Order. And, as discussed in the Facts section above, PHRT took title to operational contracts and permits under the Assignment and Assumption Agreement, and received property in the Bill of Sale.

At best, the language in the Sale Order, and the documents that it approves, is ambiguous regarding the meaning of the word "Purchaser." While the introductory

paragraphs to the Sale Order identify PHRT and WIPL "together, as 'Purchaser,'" it also requires title to refinery "Purchased Assets" be transferred to PHRT only. "The transfer of the Purchased Assets to the Purchaser **with Purchaser taking title in PHRT pursuant to the APA** shall constitute a legal, valid, and effective transfer of the Purchased Assets on the Closing ... ." Sale Order ¶ 12 (emphasis added). "At the Closing, Sellers **shall deliver** or cause to be delivered **to Purchaser** ... a properly executed **deed** in recordable and customary form for conveyances of commercial real property in the United States Virgin Islands conveying the Purchased Real Property ... ." APA ¶ 3.4(a)(iv) (Stutzman Decl. Ex. A-1). Despite the language requiring a deed to be delivered "to Purchaser," the deed conveyed the refinery property to PHRT (not WIPL), and nobody objected because the deed was consistent with the Sale Order.

When read as a whole, these documents clearly indicate that neither the bankruptcy parties nor the Bankruptcy Court understood the term "Purchaser" to invariably mean both WIPL and PHRT.

Similarly, the word "Purchaser" as used in the Sale Order phrase "the Purchaser must become party" to the Joint Stipulation is not a clear joint-and-several obligation of WIPL *and* PHRT. As a practical matter, it makes no sense to make WIPL a party to the Joint Stipulation when WIPL has no power to take the actions contemplated in the Joint Stipulation. The Sale Order provides an exception to liability under these circumstances: "Purchaser **shall not become liable for any**

**obligations**, other than air monitoring obligations, **under such** Consent Decree or **Joint Stipulation that do not relate to property or units purchased or to be operated by Purchaser** pursuant to this Sale Order ..." Sale Order ¶ 11. Because WIPL neither owns nor operates the refinery, it has no liability under the Joint Stipulation.[2] Binding WIPL to the Joint Stipulation would not only be inconsistent with the Sale Order[3] (and related, Court-approved documents), it would be an empty exercise. WIPL is not liable under the Sale Order and has no power to take meaningful action under the Joint Stipulation.

WIPL anticipates that the United States will take a position that conflates WIPL with PHRT. WIPL's purported role in the formation of PHRT is immaterial, because PHRT, by its own representations to this Court and the Superior Court, is an autonomous, independent entity. While the United States has not invoked a corporate "veil piercing" theory in this action, the concept of corporate independence underlying that rule of law is instructive here. "The Virgin Islands ... will respect

---

[2] *Id.* The "air monitoring" component of Sale Order ¶ 11 is not properly applied against WIPL. In PHRT's own words, "Port Hamilton owns the refinery that is a significant topic of the consent decree. It also owns the air monitors that must be operated under the consent decree." ECF Doc. 71 (1:11-00006), p. 3.

[3] WIPL anticipates the United States will highlight prior statements by WIPL, such as that the "Sale Order provides that WIPL and PHRT must become party." See 1:21-cv-00264, ECF Doc. 27. The Sale Order actually says "<u>Purchaser</u> must become party" (emphasis added), and the Sale Order also contains caveats (as discussed in this brief) that negate a nonowner's/nonoperator's responsibilities. At closing, the assets were not transferred to WIPL. Because WIPL never became an owner or operator of the refinery, the Sale Order's "must become a party" language was made inoperative as to WIPL. At best for the United States, binding WIPL to the Joint Stipulation would be a meaningless, formalistic exercise because WIPL is in no position to comply with the Joint Stipulation.

**corporate separateness** unless presented with a compelling reason to disregard such a well-entrenched concept. *Id. Donastorg v. Daily News Publ'g Co.*, 63 V.I. 196, 334 (V.I. Super. Ct. 2015)(establishing rule for piercing the corporate veil) (emphasis added). The United States has not put forth any reason, let alone a compelling one, to disregard PHRT's separateness and autonomy.

None of this leaves the United States without a remedy. The actual refinery owner/operator, PHRT, is engaged with the United States and this Court, seeking a determination as to how the Sale Order should be applied to PHRT. See 1:11-cv-00006 ECF Doc. 71 (Consent Decree case)(PHRT Response in Opposition to Motion to Substitute). PHRT does not deny that it should be a party to the Consent Decree or Joint Stipulation, but rather disagrees with the United States on the details of what its status should be, among other details. *Id.* In any event, PHRT's admission that it should be a party, in some form, is logical and proper, because PHRT is the entity with the "keys to the facility" and thus the power to take action under the Joint Stipulation (if any action is required). WIPL's dismissal from this lawsuit would have no substantive effect on the outcome or the refinery's accountability to environmental laws and regulations, because WIPL does not own or control the refinery.

For all of the foregoing reasons, the United States' motion should be denied as to WIPL.

## CONCLUSION

PHRT has admitted to this and other Courts that it alone has ownership, possession and control of the refinery property and that it alone is responsible for obligations concerning its operation. PHRT's exclusive right to take title to the refinery property, and to operate it, was expressly recognized in the Bankruptcy Court's order approving the sale. PHRT perfected those rights at closing. Although PHRT and the United States disagree on certain details regarding the future operation of the refinery and what PHRT's obligations are, PHRT is engaged with the United States and this Court to determine the way forward. Meanwhile, WIPL -- a nonowner and nonoperator -- is not in possession or control of the refinery and thus cannot implement any provision of the Joint Stipulation. As such, the United States' motion should be denied as to WIPL.

Respectfully Submitted,

Dated: August 24, 2023     By:     /s/ Ryan C. Stutzman
Ryan C. Stutzman, Esq. (VI Bar No. R2053)
**CSA ASSOCIATES, P.C.**
1138 King Street, Suite 100
Christiansted, VI 00820
Tel: 773-3681
Attorney for West Indies Petroleum Limited