the payment of the Cure Amounts, there exists no material default or event of default (with or without notice or lapse of time or both) with respect to any Business Contract by a Seller or, to the Knowledge of Sellers, by any other party thereto and no Seller has received or delivered any notice with respect to any alleged material default that has not been rescinded or cured.

4.8   Intellectual Property Rights and Claims.

(a)   Except as set forth in Section 4.8(a) of the Sellers Disclosure Letter, one or more Sellers owns all right, title, and interest to or is licensed to use the Business Intellectual Property, free and clear of any Liens.

(b)   No Seller has, within the last 12 months made any written claim of an infringement or misappropriation by any Third Party of its rights to any Business Intellectual Property, which claim is still pending. To the Knowledge of Sellers, no Third Party is infringing or misappropriating any Business Intellectual Property.

(c)   Except for claims that have since been satisfactorily resolved or for which the statute of limitations has lapsed, no Seller has received any written notice from any Third Party challenging the right of such Seller to use any of the Business Intellectual Property that would reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole.

(d)   There are no pending actions, suits or arbitrations by, or before any Governmental Entity for an infringement or misappropriation by any Seller of any Intellectual Property owned by any Third Party which would reasonably be expected to materially and adversely affect the Business, and the Purchased Assets, taken as a whole.

4.9   Tax Matters. Except as disclosed in Section 4.9 of the Sellers Disclosure Letter:

(a)   Sellers have timely filed or caused to be timely filed, taking into account any applicable extensions, with the appropriate taxing authorities all income Tax Returns and all material non-income Tax Returns with respect to the Business or the Purchased Assets. All such Returns are correct and complete in all material respects. No Seller is currently the beneficiary of any extension of time within which to file any material tax Return with respect to the Business or the Purchased Assets. Since January 1, 2017, no written claim has been made by a Governmental Entity in a jurisdiction in which a Seller does not file Returns that such Seller is or may be subject to taxation by that jurisdiction with respect to Taxes that would be the subject of such Returns.

(b)   All income Tax Liabilities and all material non-income Tax Liabilities of each Seller due and payable with respect to the Business or the Purchased Assets, in each instance for all Pre-Closing Periods, have been timely paid, taking into account any applicable extensions, to the extent the non-payment of such Taxes could reasonably be expected to result in a Lien on the Purchased Assets. There are no pending or, to the Knowledge of Sellers threatened in writing, audits, investigations, disputes, notices of deficiency, claims or other similar actions relating to Property Taxes or any other Taxes that are imposed on a periodic basis (which are not based on income) of a Seller with

respect to the Business or the Purchased Assets. No Seller has waived any statute of limitations in respect of non-income Taxes or agreed to any extension of time with respect to a non-income Tax assessment or deficiency.

(c) The representations and warranties contained in Section 4.9(a) and Section 4.9(b) shall only apply if and to the extent Purchaser would be held liable for the Taxes to which such representations and warranties relate or if the Purchased Assets would become subject to a Lien in respect of such Taxes and, for the avoidance of doubt, such representations and warranties shall not be considered inaccurate or breached to the extent the applicable representation or warranty does not apply as a result of this Section 4.9(c).

4.10 Employee Benefits. Set forth in Section 4.10 of the Sellers Disclosure Letter is, as of [_____,] 2021, a true and complete list of each material employee benefit plan, within the meaning of Section 3(3) of ERISA, and each material fringe benefit, deferred compensation, severance, stock option, stock appreciation rights, incentive and bonus plan maintained or contributed to, or required to be contributed to, by a Seller or its Affiliates, in each case for the benefit of any Sellers' employees as of such date, but excepting any such plan sponsored in whole or in part by any government, Governmental Entity or union or employee organization or any other Person (collectively, the "Employee Benefit Plans").

4.11 Compliance with Laws. Except as set forth in Section 4.11 of the Sellers Disclosure Letter, to the Knowledge of Seller, (a) no Seller is, and no Seller has been in the past three years, in material violation of any Law or Order applicable to the Business, or the Purchased Assets, and (b) no Seller has received any written notice alleging or, to the Knowledge of Seller, been subject to any investigation by any Governmental Entity concerning, any such material violation of a Law or Order.

4.12 Environmental Matters. Except as disclosed in Section 4.12 of the Sellers Disclosure Letter, with respect to the Business:

(a) to the Knowledge of Sellers, each Seller is in material compliance with all applicable Environmental Laws;

(b) there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, against any Seller that alleges any material violation of Environmental Law and no Seller has received from any Governmental Entity any written notice of material violation or alleged material violation of Environmental Law;

(c) Sellers possess and are in material compliance with all Permits required under Environmental Laws to operate the Business as currently operated and as the Business is expected to be operated following the Closing as contemplated by the Transaction Documents ("Environmental Permits"), and there are no Proceedings pending, or to the Knowledge of Sellers threatened in writing, to modify, suspend, revoke or rescind any such Environmental Permits; and

(d) from and after December 1, 2015, to the Knowledge of Sellers, there have been no material releases of any Hazardous Materials (i) at, in, under, on, or from any

Seller Facilities or (ii) at, in, under, on, or, from any third-party location for which a Seller has any material Liability under Environmental Law.

The representations and warranties in this Section 4.12 are the sole and exclusive representations and warranties of Sellers concerning any Environmental Law, Environmental Permits, Hazardous Material or other environmental matters.

4.13   Permits.   Except for matters that are the subject of the representations and warranties in Section 4.12 (Environmental Matters), which matters are covered solely by Section 4.12, Sellers possess all material Permits that are necessary for the lawful operation of the Business as currently conducted by Sellers in the ordinary course. All such Permits are valid and have not lapsed, been cancelled, terminated or withdrawn. To the Knowledge of Sellers, Sellers are in compliance in all material respects with all such Permits.

4.14   Litigation.   Except as set forth in Section 4.14 of the Sellers Disclosure Letter: (a) there is no Proceeding pending, or to the Knowledge of Sellers, threatened, against any Seller or its Affiliates in respect of the Business or the Purchased Assets that would, if determined adversely, materially and adversely affect the Business, and the Purchased Assets, taken as a whole, or prevent or materially delay beyond the Termination Date Sellers' ability to consummate the transactions contemplated by this Agreement or any Transaction Document and (b) there are no material Orders outstanding applicable to the Business, or the Purchased Assets that have not been fully satisfied.

4.15   Finders; Brokers.   Except for Jefferies LLC and GlassRatner Advisory & Capital LLC, doing business as B. Riley Advisory Services, (whose fees are payable by Sellers), no agent, broker, Person or firm acting on behalf of Sellers is, or shall be, entitled to any broker's fees, finder's fees or commissions from Purchaser in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

4.16   Exclusivity of Representations; Projections, Etc..   The representations and warranties expressly made by Sellers in this Article IV are the exclusive representations and warranties made by Sellers with respect to the Business, and the Purchased Assets. Except for any representations and warranties expressly set forth in this Article IV (as modified by the Sellers Disclosure Letter), (a) the Purchased Assets are sold "AS IS, WHERE IS," and Sellers expressly disclaim (on each of their own behalf and on behalf of each of their respective Affiliates) any other representations or warranties of any kind or nature, express or implied, as to Liabilities, operations of their businesses (as currently or formerly conducted), the title, condition, value or quality of assets of Sellers, or the prospects (financial and otherwise), risks and other incidents of Sellers and their businesses (as currently or formerly conducted), the Purchased Assets, (b) SELLERS SPECIFICALLY DISCLAIM (ON EACH OF THEIR OWN BEHALF AND ON BEHALF OF EACH OF THEIR RESPECTIVE AFFILIATES), AND PURCHASER HEREBY WAIVES, ANY REPRESENTATION OR WARRANTY OF QUALITY, VALUE, DESIGN, OPERATION, MERCHANTABILITY, NON-INFRINGEMENT, FITNESS FOR A PARTICULAR PURPOSE, ELIGIBILITY FOR A PARTICULAR TRADE, CONFORMITY TO SAMPLES, OR CONDITION OF THE ASSETS OF SELLERS (INCLUDING THE PURCHASED ASSETS) OR ANY PART THEREOF, WHETHER LATENT OR PATENT, (c) no material or information provided by or communications made by any Seller or any of its

Affiliates, or by any advisor thereof, whether by use of a "data room," or in any information memorandum, or otherwise, or by any broker or investment banker, will cause or create any warranty, express or implied, as to or in respect of any Seller, any Affiliate of any Seller or the title, condition, value or quality of their businesses (as currently or formerly conducted), or the Purchased Assets, and no other Person shall be deemed to have made, or shall be deemed to make, any other express or implied representation or warranty, either written or oral, on behalf of any Seller or any Affiliate thereof with respect to the subject matter contained herein, and (d) no Seller makes any representation or warranty whatsoever with respect to any estimates, projections and other forecasts and plans (including the reasonableness of the assumptions underlying such estimates, projections and forecasts).

## ARTICLE V
## Representations and Warranties of Purchaser

Purchaser hereby represents and warrants to Sellers as follows as of the date hereof and as of the Closing Date (or as of such other date as may be specified herein):

5.1   Due Organization, Good Standing and Power.   Purchaser is duly organized, validly existing and in good standing under the laws of its jurisdiction of Jamaica. Purchaser has all requisite corporate power and authority to own, lease and operate its assets and properties and conduct its business as now being conducted. Purchaser is in good standing under the laws of each jurisdiction where the character of its assets or properties or the conduct of its business requires such qualification, except where the failure to be in good standing would not reasonably be expected to prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.2   Authorization; Noncontravention.

(a)   Purchaser has the requisite corporate power and authority and has taken all corporate or other action necessary to execute and deliver this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby. The execution, delivery and performance by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby, the consummation by it of the transactions contemplated hereby and thereby and the performance of its obligations hereunder and thereunder have been, and in the case of documents required to be delivered at the Closing will be, duly authorized and approved by the stockholders of Purchaser. This Agreement has been, and the Transaction Documents and all other instruments and agreements to be executed and delivered by Purchaser as contemplated hereby will be, duly executed and delivered by Purchaser. Assuming that this Agreement, the Transaction Documents and all such other instruments and agreements constitute valid and binding obligations of Sellers and each other Person (other than Purchaser) party hereto and thereto, this Agreement and all such other instruments and agreements constitute valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with the terms thereof, except to the extent

that such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar Laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether considered in a proceeding in equity or at law).

(b) Except as a result of the Bankruptcy Cases, the execution and delivery by Purchaser of this Agreement, the Transaction Documents and all other instruments and agreements to be delivered by Purchaser as contemplated hereby do not, and the consummation of the transactions contemplated hereby and thereby will not, (i) conflict with any of the provisions of the certificate of incorporation or by-laws or similar governance documents of Purchaser, in each case, as amended to the date of this Agreement, (ii) conflict with or result in a breach of, or constitute a default under, any Contract or other instrument to which Purchaser is a party or by which Purchaser or any of its properties or assets are bound, or (iii) contravene any Law or any Order applicable to Purchaser or by which any of its properties or assets are bound, except in the case of clauses (ii) and (iii) above, for such conflicts, breaches, defaults, consents, approvals, authorizations, declarations, filings or notices which do not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement.

5.3 Governmental Consents and Approvals. Except as a result of the Bankruptcy Cases, no additional Consent of or filing with any Governmental Entity must be obtained or made by Purchaser in connection with the execution and delivery of this Agreement or any Transaction Document by Purchaser or the consummation by Purchaser of the transactions contemplated by this Agreement or any Transaction Document, except for any Consents which have been obtained or made or, if not made or obtained, do not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.4 Financing. Purchaser has sufficient funds to consummate the transactions contemplated hereby, to perform its obligations hereunder (including all payments to be made by it in connection herewith) and to pay its expenses related to this Agreement and the transactions contemplated hereby. The obligations of Purchaser under this Agreement are not contingent on the availability of any equity or debt financing.

5.5 Solvency of Purchaser. As of Closing, after giving effect to the transactions contemplated by this Agreement, Purchaser will not: (a) be insolvent (either because its financial condition is such that the sum of its debts is greater than the fair market value of its assets or because the fair saleable value of its assets is less than the amount required to pay its probable liabilities on its existing debts as they mature); (b) have unreasonably small capital with which to engage in its business; or (c) have incurred debts beyond its ability to pay as they become due.

5.6 Adequate Assurances. Purchaser is and will be capable of satisfying the conditions contained in Section 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the Business Contracts and Real Property Leases.

5.7     Litigation. There is no Proceeding pending against or affecting Purchaser, or any of its properties or rights, except as have not and would not reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document. Purchaser is not subject to any Order which seeks to or would reasonably be expected to, individually or in the aggregate, prevent, materially delay or impair Purchaser's ability to consummate the transactions contemplated by this Agreement or any Transaction Document.

5.8     Finders; Brokers. No agent, broker, Person or firm acting on behalf of Purchaser or any of its Affiliates is or shall be entitled to any broker's fees, finder's fees or commissions from Sellers or any of their respective Affiliates in connection with this Agreement or any Transaction Document or any of the transactions contemplated hereby or thereby.

5.9     Investigation by Purchaser. Purchaser has conducted its own independent investigation, verification, review and analysis of the Business (as currently or formerly conducted) and results of operations, financial condition, technology and prospects, the Purchased Assets and the Assumed Liabilities, which investigation, review and analysis was conducted by Purchaser and its Affiliates and, to the extent Purchaser deemed appropriate, by Purchaser's Representatives, sufficient to proceed with the transaction(s) memorialized herein or otherwise contemplated this Agreement. In entering into this Agreement, Purchaser acknowledges that it has relied solely upon the aforementioned investigation, review and analysis and not on any factual representations or opinions of Sellers or any of their respective Affiliates (except the representations and warranties of Sellers set forth in Article IV), and Purchaser acknowledges and agrees, to the fullest extent permitted by Law, that:

(a)     none of Sellers or any of their respective Affiliates, Representatives or any other Person makes or has made any oral or written representation or warranty, either express or implied, as to the accuracy or completeness of any information made available or delivered to Purchaser, or its Affiliates and Representatives, including any information, whether oral or written (including cost estimates, financial information and projections and other projections and forward-looking statements) (i) included in management presentations, "break-out" discussions, responses to questions submitted by or on behalf of Purchaser or its Affiliates and Representatives, or any "data room" or (ii) delivered or made available pursuant to this Agreement or otherwise;

(b)     none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person shall have any Liability or responsibility whatsoever to Purchaser or its equity holders, Affiliates or Representatives on any basis (including in contract, tort or equity, under any securities Laws or otherwise) based upon any information described in Section 5.9(a);

(c)     without limiting the generality of the foregoing, none of Sellers or any of their respective equity holders, Affiliates, Representatives or any other Person makes any representation or warranty regarding (and Purchaser disclaims) any Third Party beneficiary rights or other rights which Purchaser might claim under any studies, reports, tests or analyses prepared by any Third Parties for any of Sellers or any of their

respective Affiliates, even if the same were made available for review by Purchaser or its equity holders, Affiliates or Representatives; and

(d) without limiting the generality of the foregoing, Purchaser expressly acknowledges and agrees that (i) none of the documents, information or other materials provided to it at any time or in any format by Sellers or any of their respective equity holders, Affiliates or Representatives constitutes legal advice, and Purchaser waives all rights to assert that it received any legal advice from any of Sellers or any of their respective equity holders, Affiliates, or any of their respective Representatives, or that it had any sort of attorney-client relationship with any of such Persons, (ii) any estimates, forecasts, or projections furnished or made available to it concerning Sellers or the Business or their properties, business or assets have not been prepared in accordance with GAAP or standards applicable under any securities laws, and such estimates, forecasts and projections, including any reflected in financial statements, reflect numerous assumptions, and are subject to material risks and uncertainties, and (iii) actual results may vary, perhaps materially, and Purchaser is not relying on any such estimates, forecasts or projections.

## ARTICLE VI
## Covenants

6.1  Intentionally deleted.

6.2  Conduct Prior to the Closing Date.

(a) Except (i) as set forth on Schedule 6.2(a), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Closing Date and the termination of this Agreement pursuant to Article IX, Sellers shall use commercially reasonable efforts (x) to comply in all material respects with all Laws, Orders, Contracts, Permits and Environmental Permits applicable thereto and (y) to preserve, maintain and protect in all material respects the Purchased Assets, the current goodwill of the Business and Sellers' present relationships with Governmental Entities and other Persons having significant relationships with Sellers in connection with the Business (as currently conducted).

(b) Except (i) as set forth Schedule 6.2(b), (ii) as may be expressly required by this Agreement, (iii) as required by Law or Order or by a Governmental Entity, (iv) as required or approved by the Bankruptcy Court, or (v) as a consequence of the commencement and continuation of the Bankruptcy Cases, during the period commencing on the date hereof and ending on the earlier of the Closing Date and the termination of this Agreement pursuant to Article IX, Sellers shall not effect any of the following (as each pertains to or is related to the Business, or the Purchased Assets) without the prior written consent of Purchaser (such consent not to be unreasonably withheld, conditioned or delayed):

(i) sell, transfer, lease, license or otherwise dispose of any of its assets or properties that would be Purchased Assets if not sold;

(ii) except as required by GAAP, make any change in any method of accounting or auditing practice with respect to the Business;

(iii) Intentionally deleted;

(iv) create, permit, subject or allow to exist any Lien on any of the Purchased Assets and other than any Lien that will be extinguished at or prior to Closing;

(v) extend, materially amend or terminate or grant any material waiver under any Business Contract or Real Property Lease or enter into any Contract that would be categorized as a Material Contract if in effect on the date hereof;

(vi) abandon any rights under, request the rejection under Section 365 of the Bankruptcy Code of, or amend, modify or supplement the terms of, any of the Business Contracts or Real Property Leases;

(vii) fail to take any reasonable action that would prevent the expiration, lapse, termination or abandonment of any Permit or Environmental Permit, in each case that is material to the Business;

(viii) settle or compromise any Proceeding, or enter into any consent decree or settlement agreement with any Third Party, against or affecting the Business that, in each case, would constitute an Assumed Liability;

(ix) waive any material claims or rights of material value that are included in the Purchased Assets;

(x) incur, assume, or guarantee any Indebtedness or make any material capital expenditures that, in each case, would constitute an Assumed Liability; or

(xi) authorize any of the foregoing or commit or agree to do any of the foregoing.

6.3 <u>Efforts to Close</u>.

(a) Except as otherwise provided in this <u>Section 6.3</u>, the Sellers shall, and shall cause their respective controlled Affiliates and Representatives to, and shall use commercially reasonable efforts to direct their respective equity holders to, cooperate and use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate actions, and to make, or cause to be made, all filings necessary, proper or advisable under applicable Laws and to consummate and make effective the transactions contemplated by this Agreement, including their respective commercially reasonable efforts to obtain, prior to the Closing Date, all Permits, Consents and Orders of Governmental Entities as are necessary for consummation of the transactions contemplated by this Agreement and to fulfill the conditions to consummation of the

transactions set forth in Article VII; *provided*, that, except as set forth in Section 6.3(e), (w) no Party or its Affiliates shall be required to make any concessions that would adversely affect its business or be materially more burdensome to such Party (including to amend any Contract to increase the amount payable thereunder, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party or Governmental Entity, pay any amount or bear any other incremental economic burden to obtain any such Permit, Consent or Order), (x) no Party or its Affiliates shall incur any expense that would be payable or otherwise borne by the other Party or such other Party's Affiliates without the consent of such other Party, (y) Sellers shall not make any concessions that would purport to bind the Business from and after the Closing, and (z) Purchaser shall not make any concessions that would purport to bind any Seller or any of its Affiliates.

(b)   Notwithstanding anything to the contrary contained in this Agreement, no Seller nor any of its Affiliates or Representatives shall be required to repay any Indebtedness, amend or enter into any Contract or other arrangement, commence any litigation, settle or compromise any matter, offer or grant any accommodation (financial or otherwise) to any Third Party, pay any amount or bear any other incremental economic burden to procure any amendments, modification or termination of any Contract.

6.4   Public Announcements. Each Party shall (a) consult with each other Party before issuing any press release or otherwise making any public statement with respect to the transactions contemplated by this Agreement or any Transaction Document, (b) provide to the other Parties for review a copy of any such press release or public statement and (c) not issue any such press release or make any such public statement prior to such consultation and review and the receipt of the prior consent of the other Parties, unless required by Laws or regulations applicable to such Party or its Affiliates, regulations of any stock exchange applicable to such Party or its Affiliates, or the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Agreement, in which case, the Party required to issue the press release or make the public statement or filing shall, prior to issuing such press release or making such public statement or filing, use its commercially reasonable efforts to allow the other Parties reasonable time to comment on such release, statement or filing to the extent practicable and permitted by Law. Notwithstanding anything to the contrary contained in this Agreement, each of the Parties and its legal counsel and other Representatives shall be permitted to make filings on the docket of, or statements on the record before, the Bankruptcy Court relating to this Agreement and the transactions contemplated hereby without prior approval or consultation.

6.5   Notification of Certain Matters. Sellers, on the one hand, and Purchaser, on the other hand, shall use their respective commercially reasonable efforts to promptly notify each other of any material Proceedings in connection with the transactions contemplated by this Agreement or the Transaction Documents commenced or, to the knowledge of Purchaser or the Knowledge of Sellers, threatened, against Sellers or Purchaser, as the case may be, or any of their respective Affiliates.