Auction if Purchaser is not declared the Winning Bidder of Back-up Bidder upon completion of the Auction; and

(g) automatically upon consummation of an Alternative Transaction.

9.2   Effect of Termination. In the event of the termination of this Agreement pursuant to Section 9.1 by Purchaser, on the one hand, or Sellers, on the other hand, written notice thereof shall forthwith be given to the other specifying the provision hereof pursuant to which such termination is made, and this Agreement shall be terminated and become void and have no effect and there shall be no Liability hereunder on the part of any Party, except that Section 3.2 (Good Faith Escrow Deposit), Section 6.14 (Expense), this Section 9.2 and Article XI (Miscellaneous) and the defined terms and rules of construction used therein and set forth on Appendix I shall survive any termination of this Agreement; *provided, however*, that (a) subject to the terms and conditions of Section 3.2(c), no Party shall be relieved of or released from any Liability arising from any material breach by such Party of any provision of this Agreement, and (b) the Confidentiality Agreement shall remain in full force and effect.

## ARTICLE X
## Survival and Release

10.1   Survival; Certain Post-Closing Matters. Purchaser and Sellers acknowledge and agree that: (a) Sellers' representations and warranties set forth in this Agreement and in the documents and instruments delivered or entered into by Sellers in connection with this Agreement shall not survive the Closing and shall expire immediately upon the Closing; and (b) the covenants and agreements of Sellers set forth in this Agreement and in any documents and instruments delivered or entered into by Sellers in connection with this Agreement, in each case that do not by their terms extend beyond the Closing, shall not survive the Closing and shall expire immediately upon the Closing. Accordingly, for clarification purposes, it is acknowledged, understood and agreed by the Parties that Sellers shall not have any liability or other obligation following the Closing with respect to any breach by Sellers or claimed breach by Sellers of (x) any representations or warranties contained in this Agreement or any of the documents or instruments delivered or entered into by Sellers in connection with this Agreement or (y) any of Sellers' covenants and agreements contained in this Agreement or any of the documents or instruments delivered or entered into by Sellers in connection with this Agreement that do not by their terms extend beyond the Closing. Notwithstanding anything expressed or implied herein to the contrary, the Parties acknowledge and agree that (1) Purchaser shall be solely responsible for the ownership of the Purchased Assets from and after the Closing Date, the operation of the Business from and after the Closing Date, and acts or omissions of Purchaser with respect thereto, and (2) Sellers shall have no responsibility or obligation with respect to, or arising out of, any of the foregoing.

10.2   Intentionally deleted.

## ARTICLE XI
## Miscellaneous

11.1 Notices. All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (a) on the day of service if served personally on the party to whom notice is to be given; (b) on the day of transmission if delivered by electronic mail during regular business hours on a Business Day and, if not, then on the following Business Day; or (c) on the day of delivery (if a Business Day, and if not a Business Day, on the next Business Day) if sent by Federal Express or similar overnight courier or United States mail:

If to Sellers:

Addressed to:

Limetree Bay Services, LLC et al.
c/o B. Riley Advisory Services
3500 Maple Avenue, Suite 420
Dallas, Texas 75219
Attn: Mark Shapiro
Email: mshapiro@brileyfin.com

with a copy to:

Baker & Hostetler LLP
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801
Attn: Elizabeth A. Green
Email: egreen@bakerlaw.com

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10011
Attn: Jorian L. Rose
Email: jrose@bakerlaw.com

If to Purchaser or Parent:

Addressed to:

St. Croix Refining and Transportation, LLLP
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attn: Thomas V. Eagan
Email: teagan@rascoklock.com

with a copy to:

Rasco Klock
2555 Ponce de Leon Boulevard, Suite 600
Coral Gables, Florida 33134
Attn: Thomas V. Eagan
Email: teagan@rascoklock.com

Any Party may change its address for the purpose of this Section 10.2 by giving the other Party written notice of its new address in the manner set forth above.

11.2   Entire Agreement. This Agreement, the agreements, documents and instruments to be delivered by the Parties pursuant to the provisions hereof, and the Confidentiality Agreement, each as may be amended or supplemented, constitute the entire agreement between the Parties and shall be binding upon and inure to the benefit of the Parties hereto and their respective legal representatives, successors and permitted assigns. Each Appendix, Exhibit, Schedule and the Sellers Disclosure Letter, each as may be amended or supplemented, shall be considered incorporated into this Agreement. The inclusion of any item in the Sellers Disclosure Letter is not evidence of the materiality of such item for the purposes of this Agreement. Purchaser acknowledges that any estimates, forecasts, or projections furnished or made available to it concerning Sellers or the Business or their properties, business or assets have not been prepared in accordance with GAAP or standards applicable under any securities laws, and such estimates, forecasts and projections, including any reflected in financial statements, reflect numerous assumptions, and are subject to material risks and uncertainties. Purchaser acknowledges that actual results may vary, perhaps materially, and Purchaser is not relying on any such estimates, forecasts or projections.

11.3   Severability. Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or any other jurisdiction, and, for purposes of such jurisdiction, such provision or portion thereof shall be struck from the remainder of this Agreement, which shall remain in full force and effect. This Agreement shall be reformed, construed and enforced in such jurisdiction so as to best give effect to the intent of the Parties under this Agreement. Purchaser acknowledges that any estimates, forecasts, or projections furnished or made available to it concerning Sellers or the Business or their properties, business or assets have not been prepared in accordance with GAAP or standards applicable under any securities laws, and such estimates, forecasts and projections, including any reflected in financial statements, reflect numerous assumptions, and are subject to material risks and uncertainties. Purchaser acknowledges that actual results may vary, perhaps materially, and Purchaser is not relying on any such estimates, forecasts or projections.

11.4   Binding Effect; Benefit. This Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their successors and permitted assigns. Nothing in this Agreement, express or implied, shall confer on any Person other than the Parties hereto, and their respective successors and permitted assigns any rights, remedies, obligations or liabilities under

or by reason of this Agreement, including, without limitation, third party beneficiary rights. Nothing in this Agreement is intended to relieve or discharge the obligations or liability of any third Persons to Sellers or Purchaser. No provision of this Agreement shall give any third Persons any right of subrogation or action over or against Sellers or Purchaser.

11.5 Assignability. This Agreement and the various rights and obligations arising hereunder inure to the benefit of and are binding upon Sellers and their respective successors and permitted assigns, and Purchaser and its successors and permitted assigns. Neither this Agreement nor any of the rights, interests or obligations hereunder may be transferred or assigned (including by operation of law in connection with a merger or sale of stock, or sale of substantially all the assets, of a Person) by any of the Parties hereto without the prior written consent of the other Party or Parties (not to be unreasonably withheld, conditioned or delayed); provided, however, the Purchaser may assign its rights hereunder to a wholly-owned entity and take title in such entity at time of Closing. No assignment shall relieve a Party of its liability or obligations hereunder. Notwithstanding anything expressed or implied herein to the contrary, following the Closing, Sellers (or any of them) may assign to any successor in the Bankruptcy Cases all or any portion of their rights hereunder in accordance with an Order of the Bankruptcy Court; provided, however, that any such assignment shall not assign any Purchased Assets.

11.6 Amendments. Except as otherwise authorized herein with respect to the Schedules and disclosures to this Agreement, this Agreement shall not be modified or amended except pursuant to an instrument in writing executed and delivered on behalf of each of the Parties hereto.

11.7 Non-Waiver. Except as otherwise contemplated herein, the failure in any one or more instances of a Party to insist upon performance of any of the terms, covenants or conditions of this Agreement, to exercise any right or privilege in this Agreement conferred, or the waiver by such Party of any breach of any of the terms, covenants or conditions of this Agreement, shall not be construed as a subsequent waiver of any such terms, covenants, conditions, rights or privileges, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

11.8 Applicable Law. This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Texas applicable to contracts made in that state and the applicable provisions of the Bankruptcy Code, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.

11.9 Consent to Jurisdiction. Purchaser and Sellers agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens*, which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby. Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders, decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

11.10 **WAIVER OF TRIAL BY JURY. EACH OF THE PARTIES HERETO WAIVES THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING SEEKING ENFORCEMENT OF SUCH PARTY'S RIGHTS UNDER THIS AGREEMENT.**

11.11 Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. This Agreement may be executed through the exchange of scanned .pdf signature pages, which shall have the same legal effect as original signatures.

11.12 Headings. The headings contained in this Agreement are for convenience of reference only and shall not affect the meaning or interpretation of this Agreement.

11.13 Time of the Essence. Time is of the essence of this Agreement. When calculating the period of time before which, within which or following which, any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

11.14 Rules of Construction. The Parties acknowledge and agree that each has negotiated and reviewed the terms of this Agreement, assisted by such legal and tax counsel as they desired, and has contributed to its revisions, and, as such, each of the Parties shall be deemed drafters of this Agreement and equally responsible for any ambiguities contained herein. The Parties further agree that the rule of construction that any ambiguities are resolved against the drafting party will be subordinated to the principle that the terms and provisions of this Agreement will be construed fairly as to all Parties and not in favor of or against any Party. The word "including" means "including, without limitation." The phrase "ordinary course of business" or words of similar import shall mean the ordinary course of business consistent with past custom and practice, subject, in the case of Sellers or the Business, to changes in the business, operations or custom or practice of Sellers to the extent resulting from matters arising as a result of, or in connection with, Sellers' status as filers under Chapter 11 of the Bankruptcy Code.

*[SIGNATURE PAGES FOLLOW]*

IN WITNESS WHEREOF, the Parties have executed this Asset Purchase Agreement as of the date first above written.

**SELLERS:**

**Limetree Bay Services, LLC**

By: _____
Name: _____
Title: _____

**Limetree Bay Refining Holdings, LLC**

By: _____
Name: _____
Title: _____

**Limetree Bay Refining Holdings II, LLC**

By: _____
Name: _____
Title: _____

**Limetree Bay Refining, LLC**

By: _____
Name: _____
Title: _____

**Limetree Bay Refining Operating, LLC**

By:_____
Name:_____
Title:_____

**Limetree Bay Refining Marketing, LLC**

By:_____
Name:_____
Title:_____

**PURCHASER:**

**West Indies Petroleum Limited, a Jamaican corporation**

By:_____
Name:
Title:

**Port Hamilton Refining and Transportation LLLP, a Virgin Islands limited liability limited partnership**

By: Virgin Islands Refining Company, LLC, a Florida limited liability company

By:_____
                  Manager
Name:
Title:

## APPENDIX 1

## DEFINED TERMS

As used in this Agreement, the following terms shall have the following meanings:

"Affiliate" with respect to any Person means any other Person who directly or indirectly Controls, is Controlled by, or is under common Control with such Person including in the case of any Person who is an individual, his or her spouse, any of his or her descendants (lineal or adopted) or ancestors, and any of their spouses.

"Agreement" is defined in the Introduction to this Agreement.

"Alternative Transaction" means one or more sales, assignments, leases, transfers, or other dispositions of all or any material portion of the Purchased Assets to any Person (or group of Persons), whether in one transaction or a series of transactions, whether by merger, asset purchase, equity purchase or other similar transaction, in each case other than to Purchaser or its Affiliates.

"Antitrust Authorities" means the Federal Trade Commission, the Antitrust Division of the United States Department of Justice, the attorneys general of the several states of the United States and any other Governmental Entity having jurisdiction with respect to the transactions contemplated hereby pursuant to applicable Antitrust Laws.

"Antitrust Laws" means the Sherman Act, 15 U.S.C. §§ 1-7, as amended, the Clayton Act, 15 U.S.C. §§ 12-27, 29 U.S.C. §§ 52-53, as amended, the Hart-Scott-Rodino Antitrust Improvements Act of 1976, 15 U.S.C. § 18a et seq., as amended, the Federal Trade Commission Act, 15 U.S.C. § 41-58, as amended, and all other Laws and Orders that are designed or intended to prohibit, restrict or regulate actions having the purpose or effect of monopolization, restraint of trade, or lessening of competition through merger or acquisition.

"Auction" means a sale in which the Purchased Assets shall be offered for sale to a bidder or bidders making the highest or best offer, which will be scheduled by the Bankruptcy Court in the Bankruptcy Cases.

"Avoidance Actions" means any and all claims and causes of action of a Seller arising under the Bankruptcy Code, including, without limitation, Sections 544, 545, 547, 548, 549 and 550 thereof.

"Back-up Bid" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Back-up Bidder" shall have the meaning ascribed to such term in the Bid Procedures Order.

"Bankruptcy Cases" means, individually and collectively, the following chapter 11 bankruptcy cases pending in the Bankruptcy Court: (i) *In re Limetree Bay Services, LLC*, case no. 21-32351; (ii) *In re Limetree Bay Refining Holdings, LLC*, case no. 21-32352; (iii) *In re Limetree Bay Refining Holdings II, LLC*, case no. 21-32353; (iv) *In re Limetree Bay Refining, LLC*, case