# IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>             Plaintiff,<br><br>             v.<br><br>LIMETREE BAY TERMINALS, LLC, WEST INDIES PETROLEUM LIMITED, PORT HAMILTON REFINING AND TRANSPORTATION, LLLP, and the TRANSITION REFINERY ENTITY, INC.<br><br>             Defendants. | Civ. A. No. 1:21-cv-00264(WAL/EAH) |

**UNITED STATES' REPLY TO WEST INDIES' RESPONSE
TO UNITED STATES' MOTION TO DIRECT DEFENDANTS
TO ABIDE BY THE JOINT STIPULATION IN ACCORDANCE
WITH THE BANKRUPTCY SALE ORDER**

As it relates to the Joint Stipulation, the terms of the Bankruptcy Court's Sale Order are straightforward. (Flint Dec. Ex. 1 [Bankr. Doc. 977). As a "Purchaser," West Indies "must" become a "party to the Joint Stipulation." This Court need not entertain West Indies' attempts to unwind that obligation; West Indies can and should take steps to ensure that the assets it purchased are operated in a manner that protects public health and safety. As such, the United States requests this Court grant its proposed order imposing the substantive requirements of the Joint Stipulation on both West Indies and Port Hamilton (ECF 46-1).

## I. BACKGROUND

The relevant history and background relating to this Motion (ECF 46) have already been laid out in the United States' Memorandum in Support (ECF 47 and 47-1). The United States incorporates those facts by reference here.

1

## II. ARGUMENT

The terms of the Bankruptcy Sale Order are clear—West Indies is a "Purchaser" and "must" become a party to the Joint Stipulation. Despite having recognized this obligation in previous filings, West Indies now urges this Court to rewrite the clear language of the Bankruptcy Court's Sale Order. Requiring *both* West Indies and Port Hamilton to abide by the terms of the Joint Stipulation best protects public health and safety and ensures that any Purchaser that might stand to benefit from non-compliance can be held accountable for it.

### A. West Indies Errs in Asking this Court to Unwind the Obligations Imposed on it by the Sale Order.

West Indies' Response (ECF 51) asks this Court to look beyond the plain meaning of the words in the Sale Order to divine a reason why it should not have to do what the Sale Order requires it to do. Nothing about the Sale Order requires such linguistic gymnastics.

The Bankruptcy Court's Sale Order uses the term "Purchaser" to refer simultaneously to Port Hamilton *and* West Indies over,[1] and over,[2] and over again.[3] So does the Bankruptcy Court's APA.[4] And the plain language of the Sale Order proclaims the "Purchaser must become party to… the Joint Stipulation." Even West Indies admits that the language suggests both Port Hamilton and West Indies must be parties to the Joint Stipulation filed with this Court. But West Indies asks this Court to "interpret" the Bankruptcy Court's order in a way that would excuse it of that requirement.

---

[1] *See e.g,* Flint Dec. Ex. 1 [Bankr. Doc. 977] p. 2 of 38.

[2] *See e.g, id.* at ¶ 7.

[3] *See e.g, Id.* at ¶ 11.

[4] *See e.g.*, Flint Dec. Ex. 1 [Bankr. Doc. 977-1] pp. 2, 6; *id.* at ¶ 6.11; *id.* at p. 42 of 103; *id.* at p. 51 of 103.

District Courts have the authority to interpret bankruptcy court orders. *See In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011) (state courts enjoy concurrent jurisdiction to interpret and implement a Bankruptcy Court's Sale Orders); *In re Middlesex Power Equip. & Marine, Inc.*, 292 F.3d 61, 66-67 (1st Cir. 2002) (same). This authority, however, should not be misused to exonerate parties of their court-imposed obligations to help protect public health and safety. West Indies has not cited to any legal authority to suggest otherwise, but nevertheless looks to this Court to read out and around Paragraph 11 of the Sale Order, which requires the Purchaser—defined jointly as West Indies and Port Hamilton—to become a party to the Joint Stipulation.

For example, West Indies points to Paragraph 12 of Sale Order, which discusses "[t]he transfer of the Purchased Assets to the Purchaser with Purchaser taking title in [Port Hamilton] pursuant to the APA… ." (Flint Dec. Ex. 1 [Bankr. Doc. 977] ¶ 12). But that provision does not help West Indies. The clause at the end of the sentence does not change the definition of "Purchaser." Rather, this language merely recognizes the Purchaser's plans for West Indies to be a parent or affiliated entity in or of Port Hamilton on this project. Purchasers can decide how they want to structure a purchase and transfer of title, and Paragraph 12 recognizes as much. But the language in Paragraph 12 that specifies *one* entity would take title does not conflict with—and it certainly does not change—the fact that *both* West Indies and Port Hamilton are considered within the term "Purchaser." Indeed, there would be no reason to use the language "with Purchaser taking title in [Port Hamilton]" if "Purchaser" already meant "Port Hamilton" and nothing more. Put simply, "Purchaser" includes West Indies even as used in Paragraph 12. In any event, the language of Paragraph 11, which unambiguously imposes the obligation to become a party to the Joint Stipulation, is directed to the "Purchaser."

Regardless of the language in Paragraph 12, the Sale Order simply does not condition becoming a party to the Joint Stipulation on taking title or control of the assets. To the contrary, Paragraph 11 expressly states, "**notwithstanding anything in this Order or in the APA to the contrary**, the Purchaser must become party to . . . the Joint Stipulation." (Flint Dec. Ex. 1 [Bankr. Doc. 977] ¶ 11) (emphasis added).

With its fleeting references to contract law and veil-piercing, West Indies seems intent not on *interpreting* the Sales Order, but rewriting it. The company cites to nothing in the Sale Order, the APA, or the precedent to suggest that its name on the deed was a necessary condition of Paragraph 11's requirement to become a party to the Stipulation. Ultimately, the interpretive question presented here is an easy one: The Bankruptcy Court's Sale Order says what it meant, and it meant what it says. West Indies is a "Purchaser," and was required to become a "party to the joint stipulation." Its failure to do so—and its inconsistency before this court as to the scope of its obligation—warrants judicial intervention and an Order from this Court imposing the substantive terms of the Stipulation on the Purchasers that were supposed to abide by it.

The Sale Order and the term "Purchaser" are unambiguous as they relate to the Joint Stipulation. Therefore, try as it may, West Indies should not be permitted to eliminate its obligation to become party to the Joint Stipulation under Paragraph 11 of the Sale Order. The fact that West Indies agreed as much in its previously filed proposed order[5] (ECF 26-1) and now refuses to concur further supports the United States' position.

---

[5] The proposed order filed jointly on behalf of both Port Hamilton and West Indies during the briefing on the Rule 25 substitution reconsideration order included a provision that would have joined them as parties to the Joint Stipulation by way of an order from this Court:

> [West Indies and Port Hamilton] are hereby joined . . . as parties to the Joint Stipulation (ECF No. 2) such that they will be bound by any obligations under the Joint Stipulation

### B. Imposing Compliance Assurance Obligations on Both West Indies and Port Hamilton Best Protects Public Health.

In another effort to evade its obligation under the Sale Order, West Indies argues that "[b]inding [it] to the Joint Stipulation … would be an empty exercise" because it "has no power to take the actions contemplated in the Joint Stipulation." (ECF 51, p. 8 and 9). But West Indies does not provide a citation to support its assertion that a court order can be ignored when the subject of that order believes it to be futile. And West Indies does not provide evidence as to what its relationship and rights versus Port Hamilton are to support its asserted lack of power.[6] West Indies' alleged failure to secure such rights should not prejudice public health and safety or justify its failure to comply with the Sale Order. West Indies asks this Court to hold that enforcing Paragraph 11 of the Bankruptcy Court's Sale Order would be futile without justifying why such a sweeping revision of a judicial decree is appropriate on either the law or the facts. This argument only reinforces the United States' concern—the Sale Order is clear, and this Court need not entertain West Indies' attempts to avoid its obligation to become a party to the Joint Stipulation.

The Sale Order contemplated that *both* West Indies and Port Hamilton would, as parties to the Joint Stipulation, be responsible for ensuring that any restart of the Refinery would be protective of public health and safety. That West Indies chose not to become a party to the deed does not

---

that are outstanding or prospective as of December 21, 2021, the date of entry of the relevant Sale Order by the… Bankruptcy Court."

(ECF 26-1).

[6] West Indies' argument also ignores the fact that it was the one that qualified as viable under the bankruptcy sale process and substantially funded the sale — not Port Hamilton. For example, an emergency motion was filed to reopen the auction and allow West Indies to participate as a qualified bidder (Flint Dec. Ex. 2 [Bankr. Doc. 862] p. 4 of 16), an executed Asset Purchase Agreement was attached as Exhibit B to the emergency motion (Flint Dec. Ex. 2 [Bankr. Doc. 862-4] p. 1 of 20), West Indies CEO signed the Asset Purchase Agreement on behalf of West Indies (Flint Dec. Ex. 2 [Bankr. Doc. 862-5] p. 19 of 19), West Indies formed Port Hamilton (Flint Dec. Ex. 1 [Bankr. Doc. 977-1] p. 6 of 103), and West Indies provided approximately 70% of the total purchase price. (Flint Dec. Ex. 3 [Bankr. Doc. 1050-12] p. 172 of 248). Without West Indies, there is no purchase.

change this legal requirement.  This Court should be able to look to *both* West Indies and Port Hamilton to protect public health and safety as required by the Sale Order.  The Purchasers are free to negotiate which among them will perform under the Joint Stipulation.  But that does not dispose West Indies of the Joint Stipulation's requirements.  Ordering *both* West Indies and Port Hamilton to abide by the Joint Stipulation maximizes this Court's ability to protect public health and safety as contemplated by the Sale Order.

### III.	CONCLUSION

For the reasons stated in the United States' Motion in Support (Doc. 46 and 47) and above, this Court should issue an order imposing on Defendants West Indies and Port Hamilton the substantive requirements of the Joint Stipulation.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

s/*Myles E. Flint, II*
MYLES E. FLINT, II, Senior Counsel
KATHERINE M. ROMERO, Trial Attorney
ELIAS L. QUINN, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 307-1859

OF COUNSEL:
TERESA DYKES
Senior Attorney
U.S. Environmental Protection
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Ave. NW (2242A)
Washington, DC 20460

SARA FROIKIN
SARA AMRI
Assistant Regional Counsels
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, NY 10007

SARA FROIKIN
SARA AMRI
Assistant Regional Counsels
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, NY 10007

CERTIFICATE OF SERVICE

      The undersigned certifies that on August 31, 2023, he filed the *United States' Reply To West Indies' Response To United States; Motion To Direct Defendants To Abide By The Joint Stipulation In Accordance With The Bankruptcy Sale Order* electronically with the Clerk of Court using the CM/ECF system, which will send notifications of this filing to all who have made appearances.

                                                s/*Myles E. Flint, II*