# EXHIBIT A

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CASE NO. 1:21-cv-00264 (WAH/EAH) |
| | ) |
| LIMETREE BAY TERMINALS, LLC, | ) |
| WEST INDIES PETROLEUM LIMITED, | ) |
| PORT HAMILTON REFINING AND | ) |
| TRANSPORTATION, LLLP, and the | ) |
| TRANSITION REFINERY ENTITY, INC. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**LIMETREE BAY TERMINALS, LLC'S SUR-REPLY TO PORT HAMILTON
REFINING AND TRANSPORTATION, LLLP AND WEST INDIES PETROLEUM
LIMITED'S RESPONSES**

Defendant Limetree Bay Terminals, LLC, d/b/a Ocean Point Terminals ("OPT"), files this Sur-Reply to: (1) *West Indies Petroleum Limited's Response to Plaintiff's Motion to Direct Defendants to Abide by the Joint Stipulation in Accordance with the Bankruptcy Sale Order* (ECF Doc. 51); (2) *Port Hamilton Refining and Transportation, LLLP's Response to the United States' "Motion to Direct Defendants to Abide by the Joint Stipulation in Accordance with the Bankruptcy Court Order"* (ECF Doc. 52); (3) *Port Hamilton's Offer of Stipulation* (ECF Doc. 52-1); and (4) *Port Hamilton Refining and Transportation, LLLP's Statement in Response to Limetree Bay Terminals' Response to the United States' Motion to Direct Defendants to Abide by the Joint Stipulation* (ECF Doc. 53).

Port Hamilton Refining and Transportation, LLLP ("PHRT") wants to have (someone else's) cake and eat it too:  They seek to simultaneously assert ownership over OPT's interest in **personal property** never owned by the bankrupt entity from which they purchased the St. Croix

1

oil refinery ("Refinery"), while disavowing responsibility for the environmental obligations associated with that Refinery that they explicitly agreed to assume in the Bankruptcy Sale Order. The responses filed by PHRT and West Indies Petroleum Limited ("WILP") are nothing more than the latest iteration of their collective tactics to shirk their obligations to the U.S. government and avoid paying for services necessary for their operations.  Having again fallen behind on their payments to OPT for services from the assets they now claim to wholly-own, PHRT seeks to embroil this Court in a manufactured ownership dispute under the guise of an alternative proposed amendment to the Joint Stipulation.  As further explained below, PHRT never conferred with OPT (or the U.S.) regarding its alternative language, and OPT would oppose the entry of their proposed stipulation.

OPT respectfully requests that the Court simply enter the U.S.'s proposed Order, (ECF Doc. 46-1).  The Court need not wade into PHRT's newly-asserted property ownership claims in order to do so.[1]

## I.    OPT Opposes PHRT's Proposed Amendments to the Joint Stipulation.

In a "response" to OPT's response, made without leave of Court in violation of LRCi 7.1(a), PHRT asserts for the first time that OPT does not own an undivided interest over certain jointly-owned Shared Services Systems.  (ECF Doc. 53 ¶ 2).  The Court should simply reject PHRT's filing, effectively a sur-reply to OPT's response to the United States' motion, for the stand-alone reason that it does not comply with Local Rule 7.1(a).  *See Helman v. Marriott Int'l, Inc.*, No. CV 2019-36, 2020 WL 4506199, at *4 n.15 (D.V.I. Aug. 5, 2020) (declining to consider parties' sur-replies, which were supplemental to the filings permitted for a motion to dismiss and

---

[1] To the extent this Court believes any resolution of the ownership of the Shared Service Systems is required, those matters should be referred to the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") for resolution consistent with the retention of jurisdiction provision in paragraph 27 of the Sale Order (as defined below).

for which "none of the parties sought leave to file"); *Barefoot Architect, Inc. v. Bunge*, No. CV 2004-99, 2014 WL 12744795, at *4 (D.V.I. Apr. 29, 2014) (finding defendant's motion to strike plaintiff's opposition to defendant's motion to be "an improper sur-sur reply" filed after defendant's reply to the opposition and "without court approval and not authorized by this Court's local rules," citing Local Rule 7.1(a).  In addition to failing to meet the requirements of Local Rule 7.1(a), the Court need not, and should not, adjudicate this new property ownership issue because it is unrelated to the Clean Air Act enforcement matter at issue in this case, not properly before this Court, and is a question over which the Bankruptcy Court retained jurisdiction to resolve.  Leave to file a sur-reply is appropriate only "if it would 'aid the court by addressing relevant issues.'" *See United States v. Brace*, No. 1:17-CV-00006 (BR), 2018 WL 9815248, at *2 (W.D. Pa. Nov. 6, 2018) (quoting *Weer v. Hess Oil Virgin Islands Corp.*, 64 V.I. 107, 122 (V.I. Super. 2016)).  PHRT's filing would not.

The Court should likewise reject PHRT's proposed stipulation, (ECF Doc. 52-1), because PHRT failed to confer with the parties to the Joint Stipulation on its proposed terms.  Presently, only OPT and the U.S. are parties to the Joint Stipulation, and any changes to the language in the Joint Stipulation will directly affect both the U.S. and OPT.  The U.S. engaged with parties, ***including*** OPT ***and*** PHRT on the U.S.'s proposed amendment to the Joint Stipulation.  *See* ECF Doc. 47-1, Flint Decl. Exs. 9, 11, 12.  And the U.S. received both OPT and PHRT's input on the U.S.'s proposed amendment before seeking its entry by the Court.  By contrast, the terms of the stipulation proposed by PHRT were revealed to OPT for the first time in PHRT's court filing. (ECF Doc. 52-1).  *See also* ECF Doc. 47-1, Flint Decl. Ex. 1 ¶ 11 [Bankr. Doc. 977] (noting that the Joint Stipulation may be "amended with the mutual consent of the parties").  Indeed, while

PHRT previously submitted proposed changes to the U.S. regarding the Joint Stipulation, *see* ECF Doc. 47-1, Flint Decl. Ex. 12, those changes did ***not*** include those proposed by PHRT here.

OPT is most specifically concerned with PHRT's proposed addition of language in Paragraph 13, which was previously designed to clarify that ***OPT*** could operate its wholly-owned Terminal and certain jointly-owned Shared Services Systems. PHRT now seeks to improperly give itself the same privileges. *Compare* ECF Doc. 46-1 ¶ 13, *with* ECF Doc. 52-1 ¶ 13. As PHRT's most recent filing makes clear, the true purpose of this change is so that PHRT can later leverage the language in furtherance of its new ownership theory.

## II.   The Bankruptcy Sale Order Could Not and Did Not Transfer OPT's Ownership Interest in the Shared Services Systems.

As noted above, PHRT's new ownership theory is not properly before this Court and OPT is not seeking for this Court to adjudicate its interest in the Shared Services Systems. However, OPT cannot leave PHRT's assertion unanswered, and outlines below why PHRT's newly asserted position is incorrect. As explained by the U.S., the prior Refinery owner (Limetree Bay Refining ("LBR")) and related entities, but ***not*** OPT, filed for relief under chapter 11 of title 11 of the United States Code in the Bankruptcy Court (Case No. 21-32354, jointly administered with Case No. 21-32351). *See* ECF Doc. 47 at 3-4. WILP and PHRT purchased the Refinery from LBR, (ECF Doc. 47-1, Flint Decl. Ex. 2 [Bankr. Doc. 1112]), pursuant to the terms of the Sale Order. (ECF Doc. 47-1, Flint Decl. Ex. 1 [Bankr. Doc. 977]). The Sale Order is the ***only*** source of WILP and PHRT's ownership in any asset relevant to this dispute. The Sale Order is crystal clear that (1) both WILP and PHRT were "Purchasers" of the Refinery, (ECF Doc. 47-1, Flint Decl. Ex. 1 at 2 [Bankr. Doc. 977]), and (2) OPT's undivided ownership interest of Shared Services Systems was not authorized or permitted to be sold to WILP and PHRT. (ECF Doc. 47-1, Flint Decl. Ex. 1 ¶¶ 31, 33, 34 [Bankr. Doc. 977]).

A.      *PHRT and WILP couldn't buy what the bankrupt entities did not own.*

OPT previously owned both the Refinery and the Terminal as part of a single, unified facility.  In 2018, OPT sold the Refinery to LBR[2] and retained a percentage of undivided ownership in certain Shared Services Systems.  (ECF Doc. 49-1, St. Jean Decl. Ex. 3 at Ex. A).  To avoid any confusion, these ownership percentages were clearly spelled out as to each system in an attachment to the Shared Services Agreement that OPT and LBR entered into on the same day as the sale.  (ECF Doc. 49-1, St. Jean Decl. Ex. 1 at 1; *Id.* Ex. 4 at 17 (defining "Refinery"); *id.* Ex. 2 at Ex. D (outlining undivided interests in Shared Services Systems)).  As the parties recognized in the Shared Services Agreement, these Shared Services Systems are ***not*** real property, and thus PHRT's arguments and the case it cites about real property interests is inapposite.  *See id.* Ex. 3 at 1 (defining "Shared Services Systems" as "certain personal property, fixtures, facilities, equipment, and other infrastructure assets (excluding real estate)" and separately defining the certain real property as the "Shared Premises"); *id.* Ex. 3 § 2.3(b) (conveying undivided interest in Shared Services Systems in percentages outlined in Ex. D).

"[I]t is well settled that 'parties may by agreement give to fixtures the legal character of realty or personalty at their option and the law will respect and enforce their understanding whenever the rights of third parties will not be prejudiced.'"  *Daly v. Kier*, 2 V.I. 205, 220 (D.V.I. 1952) (citation omitted).  *See also Leawood Nat'l Bank of Kansas City v. City Nat'l Bank & Tr. Co. of Kansas City*, 474 S.W.2d 641, 644 (Mo. App. 1971) ("[A] landowner may enter into a special agreement with another that, as between themselves, an object which would normally be a fixture shall remain personalty or—as in this case—that an object already affixed to the land shall be deemed permanently severed and reacquire the character of personal property." (citations

---

[2] At this time LBR and OPT were corporate affiliates.

omitted)); *Myers v. Hancock*, 39 S.E.2d 246, 248 (Va. 1946) (land owner "after annexing the chattels and thus giving them the character of real estate, may, at any time before the rights of third parties to the land[,] intervene, sever the connection, and thus restore to the chattels their character of personalty distinct from the land" including through agreement).

LBR and OPT did just that through the Shared Services Agreement, which expressly distinguished between real property (Shared Premises) and the Shared Services Systems.  On the same day as the 2018 sale, LBR and OPT also filed a Memorandum of Shared Services System Agreement in the Office of the Recorder of Deeds, Christiansted, VI. [Ex. A, Akeel St. Jean Decl. Ex. 1].  The Memorandum states that:

> LBT and LBR have executed and entered into that certain Shared Services Systems Agreement . . . . This Memorandum shall inure to the benefit of and be binding upon LBT and LBR, and their respective heirs, executors, administrators, successors and assigns . . . . The covenants, terms, conditions and restrictions of the Agreement shall be binding upon, and inure to the benefit of the Parties thereto and shall ***continue as a servitude running with each of the Terminal Site (as defined therein) and Refinery Site (as defined therein).***

*Id.* (emphasis added).  OPT and LBR thus provided notice to all third parties—including PHRT and WIPL—of the personal nature of the Shared Services Systems and the undivided ownership interest that OPT retained in them.  The Shared Services Agreement, OPT's undivided ownership interest in the Shared Services Systems, and the fact that OPT's ownership interests would not be included in any sale by LBR of its assets to any purchaser were all ***also*** disclosed prior to the bankruptcy auction, including as part of the notice that went out regarding the potential sale, and thus PHRT and WILP had actual notice of these facts prior to their purchase.  *See* Bankr. Docs. 286 (notice of filing Shared Services Agreement), 392 (bidding procedures order), 975 (Asset Purchase Agreement § 4.6 and Schedule 4.6); ECF Doc. 47-1, Flint Decl. Ex. 1 [Bankr. Doc. 977].  PHRT's reliance on *Alexander v. Alexander*, 65 V.I. 372 (V.I. 2016) is therefore misplaced.  *Alexander v. Alexander* concerns the formalities necessary for proper execution of a deed in order

to convey real property.  *See id.*; *see also* 28 V.I.C. § 42(a).  It does not apply to the Shared Services Systems, which were specifically agreed by the parties to be treated as personal property through the Shared Services Agreement.

And while obvious, this point bears emphasizing: anything that was not explicitly sold to LBR in 2018 when the Shared Services Agreement was put into place continued to belong to OPT, the original owner of the entire site.  PHRT and WILP ***could not*** acquire through the bankruptcy sale anything that the bankrupt entity ***did not own***.  Moreover, if PHRT is correct (and they are not) that "[n]either the Shared Services Systems Agreement (Doc. No. 49-1 at 22) nor the Bill of Sale (Doc. No. 49-1 at 9) accomplished any transfer of ownership of real estate improvements," (ECF Doc. 53 ¶ 2), the consequence of that would mean that OPT continues to have a 100% ownership interest in all of the Shared Services—in other words, LBR had nothing to sell to WILP and PHRT.

After the 2018 sale, OPT continued to use these Shared Services Systems to (as the name suggests) provide services to both its Terminal and LBR's neighboring Refinery under the Shared Services Agreement.  *See* ECF Doc. 49-1, St. Jean Decl. Ex. 3 at Ex. A.  It would have indeed been odd for OPT to use (and LBR to pay for) services from these systems if either party had believed they were fully transferred to LBR as part of the 2018 sale.  In other words, a multi-year course of dealing also confirms the fact that OPT had and continues to have a joint undivided ownership interest in the Shared Services Systems.

In 2021, LBR, but not OPT, filed for bankruptcy.  As part of that process, LBR's assets were put up for auction pursuant to court-approved bidding procedures (the "Bidding Procedures").  [Bankr. Doc. 392].  Those Bidding Procedures put all potential buyers on notice that "Any Non-Debtor Assets, including the LBT Entities' Assets, shall not be subject to the

proposed Sale Order or jurisdiction of the Court" and that "the LBT Entities have not consented to any sale of the LBT Entities' Assets.  The LBT Entities must provide prior written consent to a sale of any or all of the LBT Entities' Assets." [Bankr. Doc. 392 Ex. A at A.3(f)].  Ultimately, PHRT and WILP were selected as the Successful Bidders for ***LBR's assets***, but very clearly did not purchase any of OPT's assets as part of that sale.  *See* ECF Doc. 47-1, Flint Decl. Ex. 2.

While it should go without saying that LBR could not sell what it did not own (i.e., OPT's undivided ownership in the Shared Services Systems), to avoid any doubt the Sale Order specifically addressed this very issue, stating that:

Provisions Regarding LBT Entities.

31. <u>Sale of Debtors' Interest in Assets Only</u>. This Order authorizes, permits, and shall be deemed to authorize and permit the Debtors to sell to the Purchaser any undivided interest of shared services systems owned by the Debtors. Notwithstanding anything to the contrary in this Order or the APA, **nothing in this Order authorizes, permits or shall be deemed to authorize or permit, the Debtors to sell, transfer or assign to the Purchaser** or any other party any Non-Debtor Asset (as defined in the Bidding Procedures) **including, for the avoidance of doubt, the LBT Entities' undivided interest of shared services systems, any real property owned by the LBT Entities**, or the rights of the LBT Entities under any Permits.

\* \* \*

34. <u>Rights of Access Are Preserved</u>. Notwithstanding anything to the contrary in this Order, the APA or any applicable transition services agreement, all rights, claims, and defenses of the LBT Entities, the Debtors, and the Purchaser (if any) under or with respect to any agreements benefitting or in favor of the LBT Entities, the Debtors, or the Purchaser (if any), respectively are expressly and fully reserved and preserved, including, without limitation, all easements and rights of use or access to the Debtors' property and **property jointly owned by the Debtors and the LBT Entities' property, including as set forth in the SSSA**, and, for the avoidance of doubt, the LBT Entities and Purchaser may continue to use and benefit from all such easements and rights of use or access after Closing in accordance with the SSSA or any other agreements between the Debtors and the LBT Entities.

(ECF Doc. 47-1, Flint Decl. Ex. 1 ¶¶ 31, 34 [Bankr. Doc. 977]) (emphases added).

This is further confirmed by the fact that PHRT has continued to pay for services received from OPT for the use of these Shared Services Systems, although it has repeatedly fallen in arrears on its payments, and has entered into multiple written agreements with OPT agreeing to pay for such services. Indeed, the PHRT has repeatedly entered into—and subsequently defaulted under—several short-term services agreements with OPT. (Ex. A, St. Jean Decl.¶¶3-4). It would be odd for a company to pay for an allocated share of the services for systems that it believed itself to own outright. Regardless of the reasons for PHRT's new-found assertion, the record here is clear that OPT has always retained an undivided ownership in the Shared Services Systems, making PHRT's proposed stipulation inappropriate.

**IV. Conclusion**

PHRT seeks to needlessly embroil this Court in a manufactured dispute over the ownership of certain assets and to have the Court order a stipulation that was not agreed to or even seen by either party to the existing Joint Stipulation prior to filing. The Court should decline to do so and enter the U.S.'s proposed Order, (ECF Doc. 46-1).[3]

---

[3] Regardless of the validity of WILP's assertions that it is not an owner of the Refinery (ECF Doc. 51), the Sale Order requires "Purchasers" rather than "owners" to become parties to the Joint Stipulation. To the extent the Court decides it must rule on WIPL's arguments in its response to grant this relief, OPT notes that the Sale Order specifies that "the Purchaser must become party to . . . the Joint Stipulation." (ECF Doc. 47-1, Flint Decl. Ex. 1 ¶ 11 [Bankr. Doc. 977]). And the Sale Order defines "Purchaser" as both WILP and PHRT. *Id.* Ex. 1 at 2.

9

Respectfully submitted,

Dated:  August 31, 2023.                              s/ Carl A. Beckstedt III
                                                                   Carl A. Beckstedt III
                                                                   V.I. Bar No. 684
                                                                   **BECKSTEDT & KUCZYNSKI LLP**
                                                                   2162 Church Street
                                                                   Christiansted, VI 00820-4604
                                                                   340-719-8086
                                                                   Fax: 800-886-6831
                                                                   Email: carl@beckstedtlaw.com


                                                                   Corinne V. Snow
                                                                   *Admitted Pro Hac Vice*
                                                                   **VINSON & ELKINS LLP**
                                                                   The Grace Building
                                                                   1114 Avenue of the Americas
                                                                   32nd Floor
                                                                   New York, NY  10036
                                                                   (212) 237-0157
                                                                   Fax:    (212) 237-0100
                                                                   Email: csnow@velaw.com

## CERTIFICATE OF SERVICE

I HEREBY certify that, on August 31, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record, and I served the document upon the following counsel for the Transition Refinery Entity, LLC by electronic mail:

JULIE DOMIKE
Babst Calland, Attorneys at Law
505 9th Street NW, Suite 700
Washington, DC 20004
jdomike@babstcalland.com


MATTHEW W. MORRISON
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036-3006
matthew.morrison@pillsburylaw.com

<u>s/ Carl A. Beckstedt III</u>
Carl A. Beckstedt III

# EXHIBIT A

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:21-cv-00264 (WAH/EAH) |
| ) | |
| LIMETREE BAY TERMINALS, LLC, ) | |
| WEST INDIES PETROLEUM LIMITED, ) | |
| PORT HAMILTON REFINING AND ) | |
| TRANSPORTATION, LLLP, and the ) | |
| TRANSITION REFINERY ENTITY, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DECLARATION OF AKEEL ST. JEAN IN SUPPORT OF LIMETREE BAY
TERMINALS, LLC'S SUR-REPLY TO PORT HAMILTON REFINING AND
TRANSPORTATION, LLLP AND WEST INDIES PETROLEUM LIMITED'S
<u>RESPONSES</u>**

I, Akeel St. Jean, declare as follows:

1.     I am the Associate General Counsel of Defendant Limetree Bay Terminals, LLC, d/b/a

Ocean Point Terminals ("OPT").

2.     Exhibit 1 is a true and correct copy of the Memorandum of Shared Services Systems

Agreement, filed at the Office of the Recorder of Deeds, Christiansted, VI, in Book 1524 at Page

442, as Document No. 2018004647.

3.     Port Hamilton Refining & Transportation, LLLP ("PHRT") has paid for services provided

by OPT from the Shared Service Systems.

4.     On June 22, 2022, OPT filed a suit against PHRT and others for breach of contract, debt,

unjust enrichment, and lien foreclosure seeking to recover monies due for services rendered from

the Shared Service Systems pursuant to an agreement between the parties.

5.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: _8/31/23_

Akeel P. St. Jean

# EXHIBIT 1

DOC # 2018004647
*Execution Version*

## MEMORANDUM OF SHARED SERVICES SYSTEMS AGREEMENT

This Memorandum of Shared Services Systems Agreement (the "***Memorandum***") is made and entered into as of November 30, 2018, by and among (a) LIMETREE BAY TERMINALS, LLC, a U.S. Virgin Islands limited liability company ("***LBT***") and (b) LIMETREE BAY REFINING, LLC, a U.S. Virgin Islands limited liability company ("***LBR***").

1.      LBT owns an interest in certain real property as described in those instruments listed on Annex A hereto, as they may be amended from time to time (the "**LBT Shared Property**").

2.      LBR owns an interest in certain real property as described in those instruments listed on Annex B hereto, as they may be amended from time to time (the "**LBR Shared Property**").

3.      LBT and LBR have executed and entered into that certain Shared Services Systems Agreement, (the "**Agreement**") dated as of the date hereof, pursuant to which the parties thereto have agreed (a) to share in certain costs and expenses of development of the LBT Shared Property and LBR Shared Property and otherwise to cooperate with one another in the development of the Shared Services Systems (as defined therein), all upon the terms and conditions set forth therein and (b) to provide certain limited services to the other parties with respect to the LBT Shared Property and LBR Shared Property as specified therein.

4.      The commencement date of the Agreement is November 30, 2018.  The Agreement shall terminate on the mutual agreement of LBT and LBR or as otherwise provided in the Agreement.

5.      This Memorandum shall inure to the benefit of and be binding upon LBT and LBR, and their respective heirs, executors, administrators, successors and assigns; provided, however, that this Memorandum is not intended to, and shall not, modify, amend, limit or expand any of the terms or provisions of the Agreement or any of the rights granted to LBT and LBR under the Agreement.  The covenants, terms, conditions and restrictions of the Agreement shall be binding upon, and inure to the benefit of the Parties thereto and shall continue as a servitude running with each of the Terminal Site (as defined therein) and Refinery Site (as defined therein).   In the event of any conflict between the terms and provisions of this Memorandum and the terms and provisions of the Agreement, the terms and provisions of the Agreement shall prevail. The terms and provisions of the Agreement are incorporated herein by this reference.

[Next pages are signature pages.]

Executed on the date of acknowledgement to be effective as of the date first set forth hereinabove.

**LIMETREE BAY TERMINALS, LLC,**
a U.S. Virgin Islands limited liability company,

By: _Davis Sweet_

Name: _Darius Sweet_

Title: _CEO_

Witness 1

Witness 2

_Territory of the Virgin Islands_
_District of St. Croix_ )

The foregoing instrument was acknowledged before me this _16th_ day of _November_ 2018 by _Darius Sweet_ as _CEO_ of Limetree Bay Terminals, LLC, a U.S. Virgin Islands limited liability company, on behalf of said limited liability company.

Sara L. Petievich
Notary Public, Territory of the Virgin Islands
No. NP-13-17
Qualified in Judicial District of St. Croix
Commission Expires 02/08/2021

_NOTARY PUBLIC_

Signature Page to Memorandum of Shared Services Systems Agreement

LIMETREE BAY REFINING, LLC,
a U.S. Virgin Islands limited liability company,

By: _____

Name: *BRIAN K. LEVER*

Title: *PRESIDENT*

Witness 1 *Julie Lang*

Witness 2 *PATRICIA R. WINTON*

State of Texas )
County of Harris )

The foregoing instrument was acknowledged before me this 27 day of November 2018 by Brian Lever as President of Limetree Bay Refining, LLC, a U.S. Virgin Islands limited liability company, on behalf of said limited liability company.

_____
NOTARY PUBLIC

JENNIFER MCCOY
Notary ID # 129112299
My Commission Expires
September 5, 2020

Doc # 2018004647
Book: 1524
Page: 442
Filed & Recorded
11/30/2018 09:47 AM
C. PORTIA PIERRE
RECORDER OF DEEDS
ST CROIX
MISC RECORDING FEES        $0.00
ATTACH FEE                 $0.00

C. Portia Pierre
Recorder

Signature Page to Memorandum of Shared Services Systems Agreement

ANNEX A

to

Memorandum of Shared Services Systems Agreement

1. Terminal Plot No. 4 over portions of Estates Blessing, Hope, Jerusalem, and Figtree Hill, consisting of 386.444 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

2. Terminal Plot No. 5 over portions of Estates Figtree Hill and Castle Coakley Land, consisting of 33.773 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

3. Terminal Plot No. 9, Estate Limetree Bay, Reclaimed Land, consisting of 197.4471 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

4. Plot No. 29, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 1.840 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

5. Plot No. 45, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 1.790 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

6. Plot No. 52, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 4.070 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

7. Plot No. 53, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 22.137 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

8. Plot No. 53-C, Estate Castle Coakley, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 0.734 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

9. Plot No. 5, Estate Caldwall, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 46.111 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 07, 1991

10. Plot No. 3-A, Estate Cottage, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 12.837 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 7, 1991

11. Plot No. 4 Estate Cottage, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 70.000 U.S. acres, more or less, as more fully shown on OLG Drawing No. 4028-A dated June 7, 1991

12. Remainder Plot No. 4-B, Estate Blessing, King Quarter, St. Croix, U.S. Virgin Islands, consisting of 35.82 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-131-C018, dated June 26, 2018.

13. Plot No. 2-A, Estate Hope, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 4.475 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-113-C016, dated May 12, 2016

14. Plot No. 6-D Estate Hope, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 26.332 U.S. acres, more or less, as more fully shown on OLG Drawing No. A9-113-C016, dated May 12, 2016

15. Plot No. 13-A, Estate Limetree Bay, Reclaimed Land, consisting of 2.617 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. D9-6551-C017, dated April 26, 2017.

16. Plot No. 8, Estate Limetree Bay, Reclaimed Land (LPG Flare), consisting of 0.030 U.S. acre, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

Doc # 2018004647
Book: 1524
Page: 442
Filed & Recorded
11/30/2018 09:47 AM
C. PORTIA PIERRE
RECORDER OF DEEDS
ST CROIX
MISC RECORDING FEES    $0.00
ATTACH FEE             $0.00

*C. Portia Pierre*

Recorder

ANNEX B
to
Memorandum of Shared Services Systems Agreement

1. **A portion of Refinery Plot No. 1** (see explanation below) over portions of **Estates Blessing and Hope**, consisting of 175.1634 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

2. **A portion of Refinery Plot No. 2** (see explanation below) over portions of **Estates Blessing, Hope, and Jerusalem**, consisting of 36.686 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

3. **A portion of Refinery Plot No. 3** (see explanation below)  over portions of **Estates Jerusalem, Figtree Hill, and Castle Coakley Land**, consisting of 187.8263 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

LBR will acquire those portions of Refinery Plots 1, 2 and 3 shown in "blue" on the attached color coded map, less and except those portions of each plot shown in "white" on the attached color coded map as excluded areas ("Excluded Areas") pursuant to the title remediation process contemplated by LBT and LBR. These Excluded Areas include the areas labeled SCPC and Excluded Refinery Process Areas (excluded from Refinery Plot 1), West Sulfur Recovery, Surface Impoundment No. 1, and Surface Impoundment No. 2 (excluded from Refinery Plot 2), and Surface Impoundment No. 3 (excluded from Refinery Plot 3).

4. Plot No. 214, Estate Ruby, Queen Quarter, St. Croix, U.S. Virgin Islands, consisting of 0.1914 U.S. acre, more or less, as more fully shown on OLG Drawing No. 4413 dated June 5, 1987.

5. Refinery Plot No. 6, Estate Limetree Bay, Reclaimed Land, consisting of 26.7027 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016; excluding Surface Impoundment 3 as defined in the Refinery Operating Agreement.

6. Refinery Plot No. 7, Estate Limetree Bay, Reclaimed Land, consisting of 19.857 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

7. Plot No. 12, Estate Limetree Bay, Reclaimed Land (Flare), consisting of 5.8240 U.S. acres, more or less, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-116-C016, dated June 24, 2016.

Doc # 20180004647
Book: 1524
Page: 442
Filed & Recorded
11/30/2018 09:47 AM
C. PORTIA PIERRE
RECORDER OF DEEDS
ST CROIX
MISC RECORDING FEES   $0.00
RECORDING FEES   $0.00

C. Portia Pierre
Recorder



Refinery Option Parcels
Areas Shown in Blue to Be Purchased

Execution Version

THIS INSTRUMENT PREPARED BY,
AND AFTER RECORDING RETURN TO:

Latham & Watkins LLP
885 Third Ave
New York, New York 10022
Attention: Andrew Maharajh

## CONSENT AND SUBORDINATION

MADE this 30th day of November, 2018, by Goldman Sachs Bank USA, as collateral agent and Mortgagee (as defined in the Mortgage referred to below) ("**Mortgagee**"), for the benefit of Limetree Bay Terminals, LLC, a U.S. Virgin Islands limited liability company ("**LBT**"), and Limetree Bay Refining, LLC, a U.S. Virgin Islands limited liability company ("**LBR**", and together with LBT, the "**Grantees**"):

WHEREAS Mortgagee is the mortgagee under that certain Mortgage and Security Agreement, by LBR, as mortgagor, in favor of Mortgagee, dated as November 30, 2018 (as amended, amended and restated, supplemented or otherwise modified from time to time, the "**Mortgage**").

For and in consideration of the sum of One and 00/100 Dollars ($1.00), at the request of LBR pursuant to Section 15 of the Mortgage, Mortgagee does hereby, as evidenced by its signature below, subordinate the lien of the Mortgage to the provisions of that certain Shared Services Systems Agreement, to be dated on or about the date hereof (the "**Shared Services Systems Agreement**"), by and between the Grantees; the purpose of executing this Consent and Subordination being for Mortgagee to retain the full security interest in the property described in the Mortgage, while making such Mortgage subject and subordinate to the Shared Services Systems Agreement granted herein.

[Signature Page Follows]

#4832-6366-8609

Witness the following signatures:

**MORTGAGEE:**

**GOLDMAN SACHS BANK USA**

By: _____
Name: _____
Title: _____
         Douglas Tansey
         Authorized Signatory

State of _New York_

City/County of _New York_ , to-wit:

I hereby certify that on this _19th_ day of _November_ , 2018, before me, the undersigned Notary Public in and for the _state_ of _New York_, at large, personally appeared _____Douglas Tansey_____ as _____ of Goldman Sachs Bank USA known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument and acknowledged that s/he executed the foregoing instrument for the purposes set forth herein.

Notary Public

My Commission Expires: _01W16124039_
Registration Number _5/24/2021_

ARTRISA Y WILLIAMS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01WI6124039
Qualified in New York County
Commission Expires May 24, 2021

Doc # 2018004647
Book: 1524
Page: 442
Filed & Recorded
11/30/2018 09:47 AM
C. PORTIA PIERRE
RECORDER OF DEEDS
ST CROIX
MISC RECORDING FEES     $0.00
ATTACH FEE              $0.00

C. Portia Pierre
Recorder

[Signature Page to Consent and Subordination]

Execution Version

THIS INSTRUMENT PREPARED BY,
AND AFTER RECORDING RETURN TO:

Latham & Watkins LLP
885 Third Ave
New York, New York 10022
Attention: Andrew Maharajh

## CONSENT AND SUBORDINATION

MADE this 30th day of November, 2018, by Barclays Bank PLC, as collateral agent and Mortgagee (as defined in the Mortgage referred to below) ("**Mortgagee**"), for the benefit of Limetree Bay Terminals, LLC, a U.S. Virgin Islands limited liability company ("**LBT**"), and Limetree Bay Refining, LLC, a U.S. Virgin Islands limited liability company ("**LBR**", and together with LBT, the "**Grantees**"):

WHEREAS Mortgagee is the mortgagee under that certain Mortgage and Security Agreement, by LBT, as mortgagor, in favor of Mortgagee, dated as of February 15, 2017 and recorded in the Office of the Recorder of Deeds, Christiansted, St. Croix, at PC 1461, page 405, Document No. 2017000535, as amended by that certain Mortgage and Security Agreement Modification and Spreader Agreement, by and between LBT and Mortgagee, dated as of February 5, 2018 and recorded on February 6, 2018 in the Office of the Recorder of Deeds, Christiansted, St. Croix, at Book 1490, page 466, Document No. 2018000485 (as further amended, amended and restated, supplemented or otherwise modified from time to time, the "**Mortgage**").

For and in consideration of the sum of One and 00/100 Dollars ($1.00), at the request of LBT pursuant to Section 15 of the Mortgage, Mortgagee does hereby, as evidenced by its signature below, subordinate the lien of the Mortgage to the provisions of that certain Shared Services Systems Agreement, to be dated on or about the date hereof (the "**Shared Services Systems Agreement**"), by and between the Grantees; the purpose of executing this Consent and Subordination being for Mortgagee to retain the full security interest in the property described in the Mortgage, while making such Mortgage subject and subordinate to the Shared Services Systems Agreement granted herein.

[Signature Page Follows]

#4836-5531-3281

Witness the following signatures:

**MORTGAGEE:**

**BARCLAYS BANK PLC**

By: _____
Name: _Kevin Crealese_
Title: _Managing Director_

State of _New York_

City/County of _New York_, to-wit:

I hereby certify that on this _15th_ day of _November_, 2018, before me, the undersigned Notary Public in and for the _County of New York_ of _New York State_ at large, personally appeared _Mr. Kevin Crealese_, as _Managing Director_ of Barclays Bank PLC known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument and acknowledged that s/he executed the foregoing instrument for the purposes set forth herein.

_____
Notary Public

My Commission Expires: _Dec. 1, 2019_
Registration Number _01TA6096954_

```
NOOR TANRITANIR
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01TA6096954
Qualified in New York County
Commission Expires December 1, 2019
```

**Doc # 2018004647**
Book: 1524
Page: 442
Filed & Recorded
11/30/2018 09:47 AM
C. PORTIA PIERRE
RECORDER OF DEEDS
ST CROIX
MISC RECORDING FEES    $0.00
ATTACH FEE             $0.00

_C. Portia Pierre_
Recorder

[Signature Page to Consent and Subordination]